Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
Fax:    (801) 858-0701
Mylar-Law@comcast.net

Attorney for Defendants Weber County and Christopher Allred

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| LELAND KIM McCUBBIN, JR. and DANIEL JOSEPH LUCERO,<br><br>Plaintiff,<br><br>v.<br><br>WEBER COUNTY, OGDEN CITY, and CHRISTOPHER ALLRED, in his official capacity,<br><br>Defendants. | **WEBER COUNTY AND CHRISTOPHER ALLRED'S SECOND MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT AND REQUEST FOR HEARING**<br><br>Case No. 1:15-cv-132-CW<br>Consolidated with Case No. 1:15-cv-133<br><br>District Judge Clark Waddoups |

Defendants, Weber County, and Christopher Allred (hereinafter Weber County Defendants or County Defendants) through their attorney Frank D. Mylar, respectfully submit this Motion and Memorandum to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  County Defendants' motion should be granted based upon the pleadings, and the following arguments:

## TABLE OF CONTENTS

Table of Contents ....................................................................................................... ii

Table of Authorities ................................................................................................... iii

Introduction ............................................................................................................... vii

Grounds for Motion .................................................................................................. viii

Statement of Facts ...................................................................................................... ix

Argument ..................................................................................................................... 1

I.     Weber County Defendants are entitled to Eleventh Amendment Immunity. .................... 1

II.    Weber County Defendants are entitled to prosecutorial immunity. .................................. 3

III.   Quasi-Judicial immunity shields Christopher Allred. ........................................................ 4

IV.    Plaintiffs lack standing to assert claims against the Weber County Defendants. ............... 6

       A.     The Injunction Order was vacated by the Utah Supreme Court. ........................... 6

       B.     Weber County did not serve or arrest Plaintiffs or cause them harm. ................... 7

       C.     Plaintiffs waived all Constitutional claims when pleading guilty. ........................ 7

       D.     Plaintiffs' real claims are against the State court, not Weber County. .................. 8

V.     Plaintiffs fail to allege sufficient facts to support a state or federal claim. ........................ 9

VI.    Plaintiffs' federal claims are not brought under the correct Amendment. ....................... 11

VII.   The federal claims against Weber County Defendants are not cognizable. ...................... 12

       A.     Plaintiffs fail to meet the legal requirements of Section 1983. ............................ 12

       B.     Plaintiffs cannot show a violation of 42 U.S.C. § 1985. ...................................... 15

VIII.  Plaintiffs' state and federal claims are time barred. .......................................................... 16

IX.    Plaintiffs' state law claims are barred by the Utah law. ..................................................... 18

A.    Plaintiffs' Utah State Constitutional claims are not cognizable. .......................... 19

    1.    Plaintiffs did not suffer a "flagrant violation." ......................................... 19

    2.    Existing remedies address Plaintiffs' alleged injuries. ............................. 20

    3.    Plaintiffs exercised injunctive relief remedies. ........................................ 21

B.    Plaintiffs' state law claims are barred by governmental immunity. .................... 22

C.    Plaintiffs' state law claims must be dismissed for failure to plead that they filed a notice of claim as required by Utah law. .................................................... 23

D.    Plaintiffs failed to file an undertaking as required by Utah Code § 63G-7-601 ............................................................................................................................ 24

E.    Plaintiffs failed to file a bond for attorney fees as required by Utah Code § 78B-3-104. .......................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*,
   510 U.S. 266 (1994) .......................................................................................... 11

*Arnold v. Duchesne County*,
   26 F.3d 982 (10th Cir. 1994) ............................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................. 8, 9, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 9, 14

*Board of C'nty Comm'rs v. Brown*,
   520 U.S. 397 (1997) ......................................................................................... 13

*Bott v. DeLand*,
   922 P.2d 732 (Utah 1996) ............................................................................... 20

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993) ........................................................................................ 3, 4

*Cavanaugh v. Woods Cross City*,
   2009 U.S. Dist. LEXIS 116214, 2009 WL 4981591 (D. Utah 2009) ..................... 21

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986) ......................................................................................... 13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................. 6

*Connick v. Thompson*,
    563 U.S. 51 (2011) ............................................................................................... 13

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ............................................................................................... 1

*Ellis ex rel. Estate of Ellis v. Ogden City*,
    589 F.3d 1099 (10th Cir. 2009) ........................................................................... 12

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ............................................................................................. 11

*Glaser v. City & County of Denver*,
    557 Fed. Appx. 689 (10th Cir. 2014) .................................................................... 4

*Graham v. Connor*,
    490 U.S. 386 (1989) ............................................................................................. 11

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971) ............................................................................................... 15

*Guttman v. G.T.S. Khalsa*,
    446 F.3d 1027 (10th Cir. 2006) ............................................................................. 5

*Hafer v. Melo*,
    502 U.S. 25 (1991) ................................................................................................. 1

*Hall v. Utah State Department of Corrections*,
    24 P.3d 958 (Utah 2001) ...................................................................................... 24

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................................. 19

*Hinton v. City of Elwood*,
    997 F.2d 774 (10th Cir. 1993) ............................................................................. 13

*Hoggan v. Wasatch County*,
    2011 U.S. Dist. LEXIS 83068, 2011 WL 3240510 (D. Utah 2011) .................... 21

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) ............................................................................................... 3

*In re Discipline of Sonnenreich*,
    86 P.3d 712 (Utah 2004) ...................................................................................... 20

*In re Worthen*,
    926 P.2d 853 (Utah 1996) .................................................................................... 20

*Jensen v. Reeves*,
    45 F. Supp. 2d 1265 (D. Utah 1999) .................................................................... 24

*Kabwasa v. Univ. of Utah*,
  785 F. Supp. 1445 (D. Utah 1990) ...................................................................... 23

*Kentucky v. Graham*,
  473 U.S. 159 (1978) .................................................................................... 1, 12

*Keyes v. School Dist. No. 1*,
  119 F.3d 1437 (10th Cir. 1997) .......................................................................... 6

*Kiesel v. Dist. Court of Sixth Judicial Dist.*,
  84 P.2d 782 (Utah 1938) ................................................................................. 25

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................................ 6

*Lister v. Utah Valley Comm. College*,
  881 P.2d 933 (Utah Ct. App. 1994) ................................................................... 23

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 6

*McMillian v. Monroe County*,
  520 U.S. 781 (1997) ..................................................................................... 1, 2

*Mismash v. Murray City*,
  730 F.2d 1366 (10th Cir. 1984) ........................................................................ 16

*Monell v. New York City Dept. of Social Servs.*,
  436 U.S. 658 (1978) ....................................................................................... 13

*Moss v. Kopp*,
  559 F.3d 1155 (10th Cir. 2009) ..................................................................... 5, 12

*Nielander v. Bd. of County Comm'rs*,
  582 F.3d 1155 (10th Cir. 2009) ...................................................................... 2, 3

*Nielson v. City of S. Salt Lake*,
  2009 U.S. Dist. LEXIS 98372, 2009 WL 3562081 (D. Utah 2009) ............................... 20, 21

*Nielson v. Gurley*,
  888 P.2d 130 (Utah Ct. App. 1994),
  cert. denied, 899 P.2d 1231 (Utah 1995) ........................................................... 23

*Pahls v. Thomas*,
  718 F.3d 1210 (10th Cir. 2013) ........................................................................ 14

*Peak Alarm Co., Inc. v. Howe*,
  297 P.3d 592 (Utah 2013) ............................................................................... 17

*Rippstein v. City of Provo*,
  929 F.2d 576 (10th Cir. 1991) ......................................................................... 24

*Robbins v. Oklahoma*,
   519 F.3d 1242 (10th Cir. 2008) ............................................................... 4, 9, 10

*Schroeder v. Kochanowski*,
   311 F. Supp.2d 1241 (D. Kan. 2004) ............................................................... 2

*Singer v. Wadman*,
   745 F.2d 606 (10th Cir. 1984 ............................................................... 15

*Skrzypczak v. Kauger*,
   92 F.3d 1050 (10th Cir. 1996) ............................................................... 6

*Snyder v. Cook*,
   688 P.2d 496 (Utah 1984) ............................................................... 25

*Spackman v. Bd. of Educ. of the Box Elder Cty. Sch. Dist.*,
   16 P.3d 533 (Utah 2000) ............................................................... 19, 20

*Stein v. Disciplinary Bd.*,
   520 F.3d 1183 (10th Cir. 2008) ............................................................... 3

*Tilton v. Richardson*,
   6 F.3d 683 (10th Cir. 1993) ............................................................... 15

*Turney v. O'Toole*,
   898 F.2d 1470 (10th Cir. 1990) ............................................................... 5

*Valdez v. City and County of Denver*,
   878 F.2d 1285 (10th Cir. 1989) ............................................................... 4, 5

*Voroz v. Sevey*,
   506 P.2d 435 (Utah 1973) ............................................................... 23

*Will v. Michigan Dept. of State Police*,
   491 U.S. 58 (1989) ............................................................... 1

*Yates v. Vernal Family Health Center*,
   617 P.2d 352 (Utah 1980) ............................................................... 23

**Statutes**

42 U.S.C. § 1983 ............................................................... passim

42 U.S.C. § 1985 ............................................................... 9, 14, 15

42 U.S.C. § 1988 ............................................................... 16, 26

Utah Code Ann. § 17-18a-401 (2016) ............................................................... 3

Utah Code Ann. § 63G-7-101 (2016) ............................................................... 22

Utah Code Ann. § 63G-7-102 (2016) ............................................................... 16, 22

Utah Code Ann. § 63G-7-201 (2016) ............................................................... 22, 23

Utah Code Ann. § 63G-7-401 (2016) ............................................................... ix, 23

Utah Code Ann. § 63G-7-402 (2016) ................................................................................ passim

Utah Code Ann. § 63G-7-403 (2016) .................................................................................... 18

Utah Code Ann. § 63G-7-601 (2016) .................................................................................... 24

Utah Code Ann. § 76-10-803 (2016) ....................................................................................... 5

Utah Code Ann. § 78A-5-102 (2016) ....................................................................................... 5

Utah Code Ann. § 78B-2-307 (2016) ...................................................................................... 17

Utah Code Ann. § 78B-3-104 (2016) ............................................................................... 25, 26

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... 9

Fed. R. Civ. P. 8 ..................................................................................................................... 9

Fed. R. Evid. 201 ................................................................................................................... x

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................................................... 11, 12

U.S. Const. amend. IV ......................................................................................................... 12

U.S. Const. amend. V ........................................................................................................... 12

U.S. Const. amend. XI ............................................................................................... viii, 1, 2, 3

U.S. Const. amend. XIV .................................................................................................. 11, 12

Utah Const. art. VIII, § 16 ..................................................................................................... 2

## **INTRODUCTION**

Plaintiffs, Daniel Joseph Lucero, and Leland Kim McCubbin Jr., filed this suit alleging Defendants violated their rights secured by the federal and Utah Constitutions along with alleged violations of state laws.  Plaintiffs claim these violations occurred when Defendants judicially obtained and subsequently served a civil nuisance injunction (Injunction) on Plaintiffs. Both the City and the County defendants initially moved to dismiss Plaintiffs' claims, but Plaintiffs were allowed to file an amended complaint in response.  This motion is addressing the Amended Complaint (Doc. No. 50) and, therefore, is titled the "second" motion for judgment on the pleadings.

Weber County Defendants have several key legal defenses and immunities that were not heard or addressed by the Court in the City's objection to Plaintiffs' Motion to Amend their Complaint, so County Defendants bring them now.  All of Plaintiffs' claims against the Weber County Defendants should be dismissed with prejudice based upon the following:

## **GROUNDS FOR MOTION**

1.     Weber County and Christopher Allred were acting on behalf of the State of Utah when prosecuting crimes within Weber County and are entitled to Eleventh Amendment Immunity.

2.     Weber County and Christopher Allred are entitled to prosecutorial immunity since all of their alleged actions were in the context of a judicial proceeding in their role in prosecuting crimes for the people of Weber County.

3.     All claims should be dismissed against the Weber County Defendants since Christopher Allred, as the final policymaker, is entitled to quasi-judicial immunity. His alleged actions involved enforcing a facially valid court order that has never been declared unconstitutional.

4.     Plaintiffs lack standing to assert their claims against the Weber County Defendants.

5.     Plaintiffs fail to plead with adequate specificity to give Defendants notice of what unconstitutional actions they allegedly participated and have failed to state a claim upon which relief can be granted.

6.     Plaintiffs' claims are not cognizable under either the United States or the Utah Constitution because County Defendants are being sued for filing a lawsuit and obtaining judicial relief against Plaintiffs.  The act of obtaining judicial relief is not the sort of state action contemplated in 42 U.S.C. § 1983.  In the alternative, Plaintiffs are complaining about a judicial

order and the State of Utah and the Utah State Court judge, not the Weber County Defendants, have authority over the state courts.

7.  Weber County cannot be held liable since Plaintiffs cannot point to an underlying Constitutional violation by a County employee.

8.  Plaintiffs' state law claims are either not cognizable or barred by the Utah Governmental Immunity Act and its applicable statute of limitations under Utah Code Ann. § 63G-7-401 and -402 (2016).   In addition, Plaintiffs' cannot satisfy the prerequisites for a money damages suit under the Utah Constitution.

## STATEMENT OF FACTS

1.  Weber County is a county governmental entity. (Am. Compl. ¶ 15, Doc. No. 50 at 4).  It is a political sub-division of the state of Utah and is not a corporation.

2.  Christopher Allred is the Weber County Attorney sued in his official capacity.  (Am. Compl. ¶ 16, Doc. No. 50 at 4).

3.  In August 2010, Weber County brought a civil nuisance abatement lawsuit against alleged members of a criminal street gang, Ogden Trece.  (Am. Compl. ¶ 20, Doc. No. 50 at 4). The Suit was filed in the state district court.

4.  After a hearing, the trial court entered a preliminary injunction (Injunction) in September 2010.  (Am. Compl. ¶ 28, ¶ 30, Doc. No. 50 at 5).

5.  After an evidentiary hearing in June 2012, the trial court entered a permanent injunction that was substantially identical to the preliminary injunction.  (Am. Compl. ¶ 69, ¶ 71, Doc. No. 50 at 10-11).

6.      The Injunction, both in its preliminary and permanent[1] phases, was served on persons believed to be members of Ogden Trece.  (Am. Compl. ¶ 61, ¶ 63, Doc. No. 50 at 10). However, neither of the two Weber County Defendants served it on the Plaintiffs.  (See an exact copy of the "Proof of Service of Preliminary Injunction" of Leland McCubbin, attached to this memorandum as Exhibit 1; and an exact copy of the "Proof of Service of Preliminary Injunction" of Daniel Joseph Lucero attached to this memorandum as Exhibit 2).

7.      The Injunction made it possible for those who had been served with it to be arrested for conduct contrary to its terms.  (Am. Compl. ¶¶ 31-48; Doc. No. 50 at 4-8).

8.      Multiple persons were allegedly arrested for violating the Injunction.  (Am. Compl. ¶ 63, Doc. No. 50 at 10).  However, the Weber County Defendants did not arrest the Plaintiffs.

9.      Plaintiff Lucero was served with the Injunction September 30, 2010 in Ogden. (Exhibit 2).

10.     Plaintiff McCubbin was served with the Injunction on November 22, 2010 at the Utah State Prison.  (Exhibit 1).

11.     Both Plaintiffs later pled no contest or guilty to violating the Injunction.  (See an exact copy of the "Statement of Defendant in Support of Guilty Plea and Certificate of Counsel" of Leland Kim McCubbin Jr., attached to this memorandum as Exhibit 3; and an exact copy of the "Statement of Defendant in Support of Guilty Plea and Certificate of Counsel" of Daniel Lucero attached to this memorandum as Exhibit 4).  County Defendants requests the Court take judicial notice of these facts pursuant to Federal Rule of Evidence 201(b)(2).

---

[1]Whether persons were arrested pursuant to the preliminary injunction even after the permanent injunction was entered, as Plaintiffs allege, is immaterial since Plaintiffs already admit that the preliminary and permanent injunctions were "substantially identical." (Am. Compl. ¶ 71, Doc. No. 50 at 11).

12.     On October 18, 2014, the Utah Supreme Court vacated the Injunction.   (Am. Compl. ¶ 73, Doc. No. 50 at 11).

13.     No injunction is presently ordered by the court or being enforced by Defendants.

14.     McCubbin got his sentence reduced by 60 days after he successfully withdrew as a member of the gang, time he was serving concurrently for another criminal conviction.   (Am Compl ¶¶ 133-135, Doc. No. 50 at 18).

15.     On June 5, 2015, McCubbin was able to get his criminal charges related to the gang injunction vacated.   (Am Compl ¶ 139, Doc. No. 50 at 18).

## ARGUMENT

**I.      Weber County Defendants are entitled to Eleventh Amendment Immunity.**

The United States Supreme Court has long held that a state and its various agencies, departments, and arms and its officials acting in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). This is because the Eleventh Amendment bars claims against a state in both state and federal court. *See Edelman v. Jordan*, 415 U.S. 651 (1974).  As a result of Eleventh Amendment immunity, a plaintiff may only sue state officials in their individual capacities because suing a state official in his or her "official capacity" is the same as suing the state.  *Hafer v. Melo*, 502 U.S. 25, 31 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  However, much less widely understood is the fact that various officials need not actually be employed by a branch or arm of state government in certain cases to avail themselves of Eleventh Amendment immunity.

For example, a county government and a county sheriff, when exercising law enforcement duties, are acting as state representatives even though the policymaker, the sheriff, is elected by citizens of a county and is part of county government when state law so dictates.  *See McMillian v. Monroe County*, 520 U.S. 781 (1997).  In *McMillian*, the district court dismissed claims against both a county prosecutor's investigator and a county sheriff, even though they were county employees and paid by the county, because they were fulfilling state functions as mandated by state law in investigating crimes.  The plaintiffs did not appeal the dismissal of the county prosecutor's investigator, who was also entitled to absolute immunity.  In affirming the lower courts, the United States Supreme Court was not making a blanket statement about the role of county sheriffs in general, but instead focused on the fact that under Alabama state law, a county

1

sheriff was performing a state function and represents the state when "he acts in a law enforcement capacity." *Id*. at 785-6.  Although the role of the prosecutor's investigator was not at issue before the Supreme Court at that time, nothing in the High Court's opinion would suggest that the same logic would not apply to provide immunity to a county prosecutor who is acting on behalf of the state when performing certain functions mandated by state law.

The Tenth Circuit Court of Appeals applied the legal mandates of *McMillian* to the role of a county prosecuting attorney in *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155 (10th Cir. 2009).  The court on its own raised the jurisdictional defense that county attorneys in the state of Kansas were entitled to Eleventh Amendment immunity for suits brought against them for actions taken while performing their official duties in signing and filing a complaint, information, and motion.  The court reasoned that because Kansas state law clarified that "county attorneys act on behalf of the state, not their respective counties, . . . '[a]ny actions by the county attorney are . . . attributable to the state[, meaning] that the county attorney's acts in prosecuting crimes are cloaked with Eleventh Amendment immunity.'" *Nielander*, 582 F.3d at 1164 (*quoting Schroeder v. Kochanowski*, 311 F. Supp.2d 1241, 1254 (D. Kan. 2004)).

Based upon the holdings in *McMillian* and *Nielander*, this Court must dismiss all Section 1983 and 1985 claims (claims 1-5 of the Amended Complaint) against the two Weber County Defendants.  Utah law clarifies that a prosecutor acts on behalf of the state.  The Utah Constitution provides that "[t]he Legislature shall provide for a system of public prosecutors who shall have primary responsibility for the prosecution of criminal actions *brought in the name of the State of Utah* . . ." Utah Const. art. VIII, § 16 (emphasis added).  The Utah Code is even clearer in stating that "all prosecutions for a public offense committed within a county" are to be conducted by a

public prosecutor who acts "*on behalf of the state*." Utah Code Ann. § 17-18a-401(1) (2016) (emphasis added). There is no substantive legal difference from Kansas county attorneys as referenced in *Nielander* and how Utah county prosecutors function. Both represent the state and, based upon *McMillian* and *Nielander*, both are entitled to Eleventh Amendment immunity.

Both Weber County and County Attorney Christopher Allred are being sued for official actions taken by Christopher Allred in his role as a state prosecutor for Weber County for filing a complaint for a gang injunction and in having the state court order served upon the Plaintiffs. However, state law mandates that these actions are on behalf of the State of Utah as a matter of law. As acknowledged in *Nielander*, actions of the county attorney are attributable to the state when attempting to prosecute crimes within the county. *Nielander*, 582 F.3d at 1164. Therefore, this Court is required to dismiss all federal claims against these two Weber County Defendants with prejudice based solely upon Eleventh Amendment immunity.

## II. Weber County Defendants are entitled to prosecutorial immunity.

"Prosecutors are absolutely immune from civil liability for damages for 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Stein v. Disciplinary Bd.*, 520 F.3d 1183, 1193 (10th Cir. 2008) (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). The decision to prosecute is absolutely immune. *Stein*, 520 F.3d at 1193. Prosecutors' relevant statements in a judicial proceeding are also absolutely immune. *Imbler v. Pachtman*, 424 U.S. 409, 426 n. 23 (1976). Even an allegation of malice cannot overcome absolute immunity. *Id.* at 421-22.

"To determine whether a state prosecutor's actions are shielded from liability under Section 1983 by absolute immunity, courts apply 'a functional approach, which looks to the nature

of the function performed, not the identity of the actor who performed it.'" *Glaser v. City & County of Denver*, 557 Fed. Appx. 689, 704-705 (10th Cir. 2014) (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "Thus, a prosecutor has absolute immunity for his conduct that is 'intimately associated with the judicial phase of the criminal process,' but he is protected only by qualified immunity for 'acts of investigation or administration.'" *Id.* "Under the functional approach, a prosecutor's activities related to initiating and pursuing a criminal prosecution and presenting the state's case at trial are absolutely immune from liability." *Id.*

Plaintiffs have not made any allegation that Christopher Allred, or the Weber County Attorney, participated in the act of bringing the Injunction. For this reason alone, any claims against Christopher Allred regarding the placement of the Injunction should be dismissed. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). However, even if this fatal defect is ignored, all of Christopher Allred and the Weber County Attorney's alleged actions are covered by Prosecutorial Immunity. Filing the Injunction in a court is an inherently judicial act and, therefore, all of the County Attorney's actions are absolutely immune. *Glaser*, 557 Fed. Appx. at 704-705. Plaintiffs have not pleaded any alleged acts of Christopher Allred or the Weber County Attorney that would not be covered by Prosecutorial Immunity and, for this reason alone, all claims against him must be dismissed with prejudice.

## III.    Quasi-Judicial immunity shields Christopher Allred.

To the extent that the Court construes Christopher Allred's alleged actions to not be covered by Prosecutorial Immunity, then he is entitled to Quasi-Judicial immunity. It is well established that individuals executing a facially valid court order may be entitled to Quasi-Judicial immunity. *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989). Such persons are immune

from suit regardless of whether the law was clearly established. Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, officials charged with the duty of executing a facially valid court order enjoy absolute immunity for executing the order. *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990). "Absolute immunity for officials assigned to carry out a judge's orders is necessary to ensure that such officials can perform their function without the need to secure permanent legal counsel." *Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) (*citing Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006), and *Valdez*, 878 F.2d at 1288). "[F]or the defendant state official to be entitled to quasi-judicial immunity, the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question." *Moss*, 559 F.3d at 1163 (*citing Turney*, 898 F.2d at 1472, 1474).

In this matter, the district court that entered the Injunction, is a court of general jurisdiction, so it had jurisdiction to hear the case. *Moss*, 569 F.3d at 1164 and Utah Code Ann. § 78A-5-102(1) (2016). The Injunction was entered pursuant to the authority of a state statute that made public nuisance "a crime against the order and economy of the state . . . ." Utah Code Ann. § 76-10-803(1) (2016). Although Weber County did not actually serve the Injunction order upon the Plaintiffs, any claim that they played any part in doing so would be covered by quasi-judicial immunity. The Weber County Attorney did not exceed the scope of the Injunction and Plaintiffs have not pled any facts that show that the County Attorney could be liable for any of his alleged actions. The Injunction was facially valid and the County Attorney had no reason to believe

helping enforce it was impermissible.   Therefore, all claims against Weber County Defendants must be dismissed.

**IV.     Plaintiffs lack standing to assert claims against the Weber County Defendants.**

All of Plaintiffs' claims must be dismissed if they lack standing.  Standing is a jurisdictional threshold issue.  *Keyes v. School Dist. No. 1*, 119 F.3d 1437, 1445 (10th Cir. 1997).  To invoke the Article III jurisdiction of the federal courts, Plaintiff must have an actual case or controversy.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  *See also Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Plaintiffs "must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *Lyons*, 461 U.S. at 101.  The injury must be direct, immediate, and real, not conjectural or hypothetical. *Id.*  "A party has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision." *Skrzypczak v. Kauger*, 92 F.3d 1050, 1052 (10th Cir. 1996) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). The injury additionally, requires an "invasion of a legally-protected interest." *Skrzypczak*, 92 F.3d at 1053.  A cause of action under Section 1983 and any constitutional provision further requires that Plaintiffs prove that they suffered an actual constitutional injury at the hands of Defendants. Plaintiffs cannot show any of the foundational facts required for standing, yet failure on any one element would be sufficient to lose standing and require dismissal of the entire case.

**A.     The Injunction Order was vacated by the Utah Supreme Court.**

Plaintiffs claim their state and federal constitutional rights were violated when an injunction was obtained and enforced against them.  Yet the injunction was set aside for lack of

proper service by the Utah Supreme Court.  Any prospective claims relating to an alleged wrongful enforcement of the Injunction are moot.  Plaintiff McCubbin further admits that he is no longer a gang member and that the Injunction no longer applies to him.  The state sentencing judge reduced his sentence by 60 days because he said he was no longer a gang member.  He further got the conviction for violating the Injunction vacated based upon the Supreme Court order (Am. Compl. ¶ 139, Doc. No. 50 at 18).  Since there is currently no injunction or order against the Plaintiffs, they have no injury to redress and lack standing and all prospective relief would also be moot.

### B.      Weber County did not serve or arrest Plaintiffs or cause them harm.

The two Plaintiffs were not served by Weber County nor are there any allegations that the two Weber County Defendants participated in serving or arresting the Plaintiffs.  (See Exhibit 1 and Exhibit 2).  The Weber County Defendants did not personally participate in this process and, therefore, they did not cause an injury to Plaintiffs.  The Plaintiffs merely allege that the Weber County Defendants took some action to request that the Court enter the Gang Injunction, but they in fact did not enter it and cannot, as a matter of law, be said to have "directly caused an injury" to Plaintiffs.  For this reason alone Plaintiffs lack standing.

### C.      Plaintiffs waived all Constitutional claims when pleading guilty.

Plaintiffs appeared in state district court and were provided the full panoply of Constitutional procedures and rights, including the right to counsel and the right to challenge the constitutionality of the gang injunction.  Each voluntarily waived these rights by pleading guilty or no context to the offenses charged and specifically admitted they had previously been served with the gang injunction.  (*See* Exhibit 3 and Exhibit 4).  Any such plea constitutes an express waiver of any constitutional defects in the charges, conviction, arrest, and sentencing and it is an

admission of fact that they did not sustain a constitutional injury. Plaintiffs cannot be considered aggrieved parties by the Weber Defendants as it relates to enforcement of the Gang Injunction when they expressly waived all Constitutional arguments relating to the Gang Injunction in the criminal prosecution process. Having waived the prior issues of unconstitutionality, they cannot now seek declaratory or monetary relief for such claims and they cannot show they suffered a Constitutional injury directly caused by County Defendants and, therefore, Plaintiffs lack standing to sue these particular Weber County Defendants.

**D.    Plaintiffs' real claims are against the State court, not Weber County.**

Under state or federal law, a plaintiff must show some wrongful act by each defendant and "each Government official . . . is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) . Without alleging an unconstitutional act by Weber County, Plaintiffs cannot show that this Defendant directly caused Plaintiffs' alleged injuries and may not seek redress against Weber County Defendants. Contrary to this principle, Plaintiffs improperly seek to hold the Weber County Defendants liable for obtaining a judicial order. Nothing in the case law suggests that filing a lawsuit alone is a Constitutional violation without some other wrongful conduct by the final policymaker of the governmental entity nor can seeking to obtain a court order be considered to have "caused an injury" as required to meet standing requirements. Plaintiffs have not alleged that the Defendants lied or made false statements in obtaining this order. It is unprecedented that a party could be held liable for exercising their right to file a complaint and obtain an order and then seek to enforce that order through the courts when there are no allegations of false statements or illegal conduct by the Defendants in seeking the order. Seeking a court order by itself is not the sort of action that can be said to have "caused a Constitutional injury" that would

8

be subject to redress by a court.  The only remedy in such a case is to fight the court order in a timely manner rather than suing an entity.  The mere act of seeking to obtain a court order is not the sort of "state action" that can create liability for a government official under 42 U.S.C. § 1983 or § 1985.  Plaintiffs' real complaint is against the state court judges, not with the Weber County Defendants and, therefore, all these Defendants should be dismissed from the suit in that Plaintiffs lack standing to sue the Weber Defendants because they cannot show that the Weber County Defendants directly caused Plaintiffs to suffer a constitutional injury.

**V.  Plaintiffs fail to allege sufficient facts to support a state or federal claim.**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs' complaint fail "to state a claim upon which relief can be granted" and, therefore, should be dismissed.  Fed. R. Civ. P. 12(b)(6).  A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).  The case law requires a plaintiff to "plead that each Government-official defendant, through the official's own individual actions, violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) . Legal conclusions can provide a framework for a complaint, but they must be supported by factual allegations.  *Id*. at 679.

In a Section 1983 context "[a plaintiff] must allege facts sufficient to show (assuming they are true) that the [defendant] plausibly violated [his or her] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the [defendant] notice of the theory under which [his or her] claim is made." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "It is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice

as to the basis of the claims against him or her, as distinguished from collective allegations against the state (or defendants in this case)." *Id*. at 1250. The collective use of the term defendants, with no distinction as to what acts are attributable to whom makes it impossible for individuals to ascertain "what particular unconstitutional acts they are alleged to have committed." *Id*. at 1250.

Plaintiffs' Amended Complaint makes several legal conclusions without supporting factual allegations. Additionally, the Amended Complaint is rife with references of plural defendants without any discernable way to tell who is being accused of what.  (Am. Compl. ¶ 4, ¶ 7, ¶ 8, ¶ 9, ¶ 13, ¶ 77, ¶ 78, ¶ 79, ¶ 88, ¶ 147, ¶ 148, ¶ 149, ¶ 151, ¶ 154, ¶ 155, ¶ 159, ¶ 160, ¶ 164, ¶ 165, ¶ 169, ¶ 170, ¶ 174, ¶ 175, ¶ 179, ¶ 180, ¶ 185, Doc. No. 50).[2]  Christopher Allred is only mentioned by name once outside of the caption of the Amended Complaint.  (Am. Compl. ¶ 16, Doc. No. 50 at 4).  The Amended Complaint only refers to the Weber County Attorney in passing and does not allege that the Weber County Attorney personally participated in any of the allegations beyond being mentioned in the Injunction and that he would like to create a new injunction sometime in the future.  (Am. Compl. ¶ 44, ¶¶ 83-85, ¶ 89, Doc. No. 50 at 7, 12-13).  However, this speculative "new injunction" is not supported by specific allegations as to the terms of the injunction.  More importantly, an injunction cannot be entered by a County Attorney, but must be ordered by an impartial state court judge.  No allegations support an inference that a state court judge would enter an identical injunction after an evidentiary hearing.  There is further no guarantee that the same judge that decided the original injunction would decide some speculative future injunction.

---

[2] Additionally, the headings of Plaintiffs' first, second, third, fourth, sixth, seventh, and tenth causes of action state they are against "All Defendants."  Then to confuse the matter further, Plaintiffs' heading on their fifth cause of action states it is against "Weber, Ogden and John Doe Defendants," but then uses the term "all Defendants" in subsequent paragraphs.  (Am. Compl. ¶¶ 169-170, Doc. No. 50 at 23).

There are no specific allegations that any of the Weber County Defendants acted in a manner that deprived Plaintiffs of a legal right under state or federal law.  They did not arrest or serve the Plaintiffs nor are they alleged to have taken any other adverse action against the Plaintiffs, such as sign an affidavit of probable cause.  Plaintiffs failed to adequately plead their claims with supporting factual allegations.   Based upon this lack of supporting allegations, Defendants Weber County and Christopher Allred cannot decipher from the Complaint exactly what they allegedly did that could remotely support a violation of either the state or federal constitutions.  For these reasons Plaintiffs' suit must be dismissed.

**VI.**    **Plaintiffs' federal claims are not brought under the correct Amendment.**

Plaintiffs assert claims against Defendants for alleged violations of the First Amendment, Freedom of Association and the Fourteenth Amendment's substantive and procedural Due Process clause.  However, these claims cannot be asserted when a more obvious or applicable Amendment will provide a plaintiff the relief requested.  The United States Supreme Court mandates that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Specifically, the "Framers considered the matter of pretrial deprivations of liberty and drafted the *Fourth Amendment* to address it."  *Albright*, 510 U.S. at 274.  *Fourth Amendment* deprivations of liberty "go hand in hand with criminal prosecutions."  *Id*.  "[T]he accused is not 'entitled to judicial oversight or review of the decision to prosecute.'"  *Id*. (*quoting Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

11

Plaintiffs claim that their Procedural Due Process rights, Substantive Due Process rights, and First Amendment rights were violated and their liberty and property interests were denied, presumably because they were subject to arrest.  However, these rights are protected by the Fourth Amendment since they are all related to criminal prosecution.  Plaintiffs have not brought a Fourth Amendment claim and cannot recover under any of the theories they have asserted.  Therefore, since the Fourth Amendment provides the most "explicit textual source of constitutional protection," Plaintiffs' First and Fourteenth Amendment claims must be dismissed as redundant and inappropriate.

## VII.   The federal claims against Weber County Defendants are not cognizable.

Plaintiffs' federal claims under the First, Fifth, and Fourteenth Amendments of the federal Constitution must be dismissed based upon legal deficiencies in Plaintiffs' Amended Complaint. Plaintiffs are suing Weber County and County Attorney Christopher Allred in his official capacity. (Am. Compl. ¶ 16, Doc. No. 50 at 4).  A suit against a government official in his official capacity is in reality a suit against the entity. *See Moss v. Kopp*, 559 F.3d 1155, 1168 n. 13 (10th Cir. 2009) (*quoting Kentucky v. Graham*, 473 U.S. 159, 161, 165-66 (1978) ).  Therefore, there is no legal distinction between these two parties.  This motion accordingly seeks to dismiss all County Defendants based upon legal requirements related to suits under 42 U.S.C. § 1983.

### A.   Plaintiffs fail to meet the legal requirements of Section 1983.

A plaintiff must allege several underlying facts to support a claim against a governmental entity.  First, county liability does not attach for any claim brought under 42 U.S.C. § 1983 where a plaintiff fails to allege an underlying constitutional violation by a subordinate government employee.  *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009).  *See*

*also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Second, Plaintiffs must allege that "action pursuant to official municipal policy" directly caused their injury to impose liability on a local government.  *Connick v. Thompson*, 563 U.S. 51 (2011) (*quoting Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)).  Persistent practices may amount to policy within a municipality, but they must be "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. 51 (Four similar episodes of the violation were insufficient).

Plaintiffs failed to allege that action was taken pursuant to an official policy that is unconstitutional on its face.  Yet even if Plaintiffs could identify a policy that violated their constitutional rights, they would still have to show "a direct causal link" to show county liability for a constitutional claim under 42 U.S.C. § 1983. *Board of C'nty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

> "That is a plaintiff must show that the [County] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."

*Id.* at 404. Moreover, "rigorous standards of culpability and causation must be applied to ensure that the municipality [or county in this case] is not held liable solely for the actions of its employee." *Id.* at 405. Brown further states that claims against a governmental entity which do not involve a claim that the entity directed or authorized the deprivation of federal rights, "present much more difficult problems of proof." *Id.* at 406.

Plaintiffs fail to allege any wrongdoing whatsoever by any Weber County employee, let alone a constitutional deprivation.  Their Amended Complaint is completely silent as to any acts by any County Defendant except for a few vague and conclusory references to the Weber County

Attorney. The only references to the Weber County Attorney are that he could make hardship exemptions to the Injunction, and that he wants another Injunction in the future.  (Am. Compl. ¶ 44, Doc. No. 50 at 7).  Such allegations are speculative and insufficient to state a claim for relief. Plaintiffs' Amended Complaint uses the general term of "Weber" throughout, and while some of "Weber's" actions perhaps could be construed to be the actions of the Weber County Attorney, this is unclear.  Such vague conclusory claims in Plaintiffs' Complaint cannot "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Further, under Section 1983, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Since there are no unconstitutional acts alleged against subordinate county employees and since the two allegations specifically against the Weber County Attorney do not allege unconstitutional activity or are vague and conclusory, Plaintiffs' Complaint cannot state a "plausible" claim for relief and must be dismissed.

Finally, even if Plaintiffs did alleged specific unconstitutional acts by a Weber County employee, they still failed to allege any of the other elements necessary to show liability against a governmental entity.  The Complaint fails to allege that an official county policy directly caused an employee to violate Plaintiffs' constitutional rights and that the final policymaker (Christopher Allred in this case) acted with "deliberate indifference" to such unconstitutional actions.  No allegations in the Complaint could plausibly support a conclusion of deliberate indifference.  In fact, nowhere in the complaint do they allege that anyone acted with "deliberate indifference." Therefore, Plaintiff's Complaint falls far short of stating a plausible claim against Weber County under 42 U.S.C. § 1983 or § 1985.

**B.      Plaintiffs cannot show a violation of 42 U.S.C. § 1985.**

Plaintiffs allege in their Amended Complaint that Defendants violated 42 U.S.C. § 1985(3). However, Section 1985(3), in relevant part, states:

> "If two or more persons . . . conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [or] cause to be done, any act in furtherance of the object of such conspiracy . . . the party so injured or deprived may have an action for the recovery of damages. . . . ."

42 U.S.C. § 1985(3).  "The essential elements of a 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (*citing Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)).  "A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means." *Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. 1984).

Based on this statute, Plaintiffs' conspiracy claim fails.  First, it is not alleged against any specific persons.  At best, it is only directed at Ogden City and Weber County, neither of which are persons that can act outside of their official policymakers.  In fact, the Amended Complaint makes special note the Section 1985 claim is only alleged against those Defendants not sued in their official capacity.  Therefore, this claim does not even apply to Weber County.  In any event, without two or more *persons* conspiring, there is not a violation of 42 U.S.C. § 1985(3).

Second, even if there was a conspiracy, it was not to commit an unlawful act as required by § 1985.  The Injunction was achieved through lawful means by a court of competent jurisdiction.  While Plaintiffs may question the legality of the state court's actions, the State court

is not a party to this action, and a Section 1985 claim is not the appropriate vehicle to determine the underlying legality of that court's actions.  Therefore, Plaintiffs' Section 1985 claim must fail.

**VIII.   Plaintiffs' state and federal claims are time barred.**

There is no federal statute of limitations for actions arising out of 42 U.S.C. § 1983. Therefore, courts must borrow a state statute of limitations pursuant to 42 U.S.C. § 1988.  *See Mismash v. Murray City*, 730 F.2d 1366, 1367 (10th Cir. 1984).  Although there have been some local district court decisions holding that a four-year statute of limitations should apply, all of those decisions were based upon an incorrect understanding of Utah law in terms of claims against governmental entities and all of these cases applied the incorrect statute at the encouragement of the governmental entity.   These decisions incorrectly concluded that the four-year "catch-all" statute of limitations statute applies to causes of action against governmental entities because Utah law did not have a more applicable statute that was not discriminatory toward the federal cause of action.   This is not true nor has it ever been true for the last several decades under Utah law, although the correct statute was never argued in the previous district court cases.  However, Utah Code Ann. § 63G-7-402 (2016)[3] mandates that all claims against a governmental entity and its employees acting within the scope of their employment are barred unless a notice of claim is filed within one year of the events giving rise to the claim and any subsequent lawsuit must be filed within one year after the notice is deemed denied.

---

[3] Although the requirement to file a notice of claim and a lawsuit within one year of the denial of the claim is the statute of limitations, it does not follow that the governmental defendant is immune from suit.  Governmental immunity does not apply to claims brought under either the Utah or United States Constitution, yet this does not dispense with the requirement to timely file a notice of claim, even for Constitutional claims.  *See* Utah Code Ann.  § 63G-7-102(1) (2016).

The Utah Supreme Court ruled that this statute acts as the only applicable statute of limitations for governmental entities in Utah and is intended to comprehensively govern all claims against governmental parties and their employees.  *See Peak Alarm Co., Inc. v. Howe*, 297 P.3d 592 (Utah 2013).  While courts have stated that the four year statute of limitations found in Utah Code Ann. § 78B-2-307(3) (2016) applies over a statute that appeared to discriminate against a federal cause of action (Utah Code Ann. § 78-12-28(3)), the more specific statute relating to the governmental immunity act was never argued in any of those cases.  *See Arnold v. Duchesne County*, 26 F.3d 982 (10th Cir. 1994), and *Peak Alarm Co., Inc. v. Howe*, 297 P.3d 592 (Utah 2013).  However, the *Arnold* case and subsequent decisions were also limited to Section 1983 claims.  They do not prescribe the statute of limitations for Utah Constitutional claims or other claims made under state law.  Utah Code Ann. § 63G-7-402 (2016) acts as a statute of limitations for both state and federal claims made under both the Utah and United States Constitutions in addition to state statutory and common law.  There is no question then, that all state Constitutional claims must be dismissed for failure to comply with this statute.  However, the federal claims also should be dismissed also.

The *Peak Alarm* case answers the questions asked by the Tenth Circuit Court of Appeals in *Arnold v. Duchesne County* when it asked which statute of limitations is applicable to comparable state law claims.  Unfortunately, neither the Court of Appeals nor the District Court in *Arnold v. Duchesne County* were informed that the statute of limitations that applies to all claims against a governmental defendant is found within the Utah Governmental Immunity Act.  By definition, this statute of limitations applies equally to federal and state law claims.  Essentially a plaintiff has one year to file a notice of claim and one year to file suit after the denial of the claim.

If the claim is not denied, it is deemed denied if no reply is received within 60 days.  Utah Code Ann. § 63G-7-403(1)(b) (2016).  So all suits at most, must be filed within 2 years and 60 days or they are time barred.

Since Plaintiffs' claims arose around September or October 2010 (Lucero), or November 2010 (McCubbin), they are time barred since their complaint was not filed until September 28, 2016.  However, even if the date the Injunction was vacated by the Utah Supreme Court – October 18, 2014 – is used instead, Plaintiff's claim would still be time barred.  Over a year has passed since either date, and Plaintiffs did not plead that they filed a notice of claim within one year as required by Utah Code Ann. § 63G-7-402 (2016).  Therefore, all of Plaintiffs' causes of action, but especially the state claims, are time barred because they did not file a notice of claim within the appropriate time period and failed to file his suit within a year of the denial of the notice of claim.  For this reason alone Plaintiffs' suits should be dismissed.

**IX.    Plaintiffs' state law claims are barred by the Utah law.**

Plaintiffs allege several different violations of state law. Plaintiffs' respective fifth and sixth causes of action are for state constitutional claims and the seventh cause of action is for wrongful injunction, which is derived from state tort law.  However, Plaintiffs fail to allege any factual support which could "plausibly" state a claim against the two Weber County Defendants for violations of these state claims.  Moreover, any claims founded in state tort law are barred by the Utah Governmental Immunity Act (UGIA).  *See generally* Utah Code Ann. §§ 63G-7-101 to -904 (2016). Finally, the state constitutional claims are not cognizable under state law.

### A.     Plaintiffs' Utah State Constitutional claims are not cognizable.

Plaintiffs bring claims arising out of the Utah Constitution.  (Am. Compl. Claims 6 and 7, Doc. No. 50).  However, Plaintiffs may not assert damage claims under the Utah State Constitution because they have an adequate remedy at law.  Even if the Court finds that Plaintiff's two Utah Constitutional claims are rooted in self-executing provisions of the Utah Constitution, Plaintiff is still unable to recover.  "[A] self-executing constitutional provision does not necessarily give rise to a damages suit."  *Spackman v. Bd. of Educ. of the Box Elder Cty. Sch. Dist.*, 16 P.3d 533, 537 (Utah 2000).  "[A]side from the Takings Clause, there is no textual constitutional right to damages for one who suffers a constitutional tort."  *Id.*  "[A] Utah court's ability to award damages for violation of a self-executing constitutional provision rests on the common law."  *Id.* at 538.  The *Spackman* court set forth the following three elements to ensure damages are only awarded in the appropriate circumstances: (1) a plaintiff must establish that he or she suffered a flagrant violation of constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect plaintiff's rights or redress his or her injuries.  Plaintiffs cannot meet any of these requirements.

### 1.     Plaintiffs did not suffer a "flagrant violation."

"First, a plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights."  *Spackman*, 16 P.3d at 538.  "In essence, this means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'"  *Id.*  (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The requirement that the unconstitutional conduct be 'flagrant' ensures that a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without rendering [him

or her]self liable for a constitutional violation.'" *Spackman*, 16 P.3d at 538 (*quoting Bott v. DeLand*, 922 P.2d 732, 739-40 (Utah 1996)).

In this case, the County cannot be held liable because none of its acts were contrary to clearly established law.  Plaintiffs can cite no case law that supports their claims that the Weber County Defendants acted contrary to "clearly established law."  To the contrary, this is a case of first impression in this court.  In addition, all of the County Defendants' alleged actions were pursuant to a facially valid court order.  No court has ever ruled that an injunction is illegal because it offends the Constitution and, therefore, Defendants have no notice and did not violate "clearly established law" and Plaintiffs have no monetary remedy.

### 2.    Existing remedies address Plaintiffs' alleged injuries.

"Second, a plaintiff must establish that existing remedies do not redress his or her injuries." *Spackman*, 16 P.3d at 538.  "This second requirement is meant to ensure that courts use their common law remedial power cautiously and in favor of existing remedies." *Id.* at 539.  For violations of Federal Constitutional rights an adequate remedy exists under 42 U.S.C. § 1983.  The Utah Constitution does not expand on the protections already provided by the federal Constitution. *See In re Discipline of Sonnenreich*, 86 P.3d 712, 723 (Utah 2004) (*quoting In re Worthen*, 926 P.2d 853, 876 (Utah 1996)).  So since a 42 U.S.C. § 1983 suit would address the exact same harm claimed to have suffered under Article 1, Section 7 of the Utah Constitution, Plaintiffs' Utah St ate Constitutional claims should be dismissed because they have an alternate remedy.

Other courts have consistently declined to award damages when the case was also brought under 42 U.S.C. § 1983. *See Nielson v. City of S. Salt Lake*, 2009 U.S. Dist. LEXIS 98372, 2009 WL 3562081 (D. Utah 2009); *Cavanaugh v. Woods Cross City*, 2009 U.S. Dist. LEXIS 116214,

2009 WL 4981591 (D. Utah 2009); and *Hoggan v. Wasatch County*, 2011 U.S. Dist. LEXIS 83068, 2011 WL 3240510 (D. Utah 2011).

The *Nielson* case involved claims of violations of the Utah Constitution based on due process, cruel and unusual punishment, unreasonable search and seizure, and slavery. *Nielson*, 2009 U.S. Dist. LEXIS 98372 at *29-30.  In dismissing the state claims, the court ruled "[t]he state constitutional claims do not provide for any further redress than Nielson can obtain under § 1983. Accordingly, those claims are dismissed." *Id.* at *32.  Similarly, the *Hoggan* case involved claims of violations of Article I, Sections 7, 9, and 14 of the Utah Constitution. *Hoggan v. Wasatch County*, 2011 U.S. Dist. LEXIS 83068, *3 (D. Utah 2011).  That court stated, "[a]lthough Plaintiff urges that there are textual and framework differences between the two constitutions, she does not explain, or even attempt to explain, why or how § 1983 fails to fully redress her injuries. From the face of her Amended Complaint it appears that Plaintiff's state constitutional claims are encompassed in her § 1983 claims and can be fully redressed by that remedy." *Id.* at *4-5.  For the same reasons, this court should dismiss state claims because remedies exist in Sections 1983 and 1985 to address their claimed harm.

### 3. Plaintiffs exercised injunctive relief remedies.

Plaintiffs had available injunctive relief remedies, namely to assert their rights when they were prosecuted.  They further brought a motion to set aside the injunction.  McCubbin further renounced his gang membership and received a sixty-day reduction of his sentence before it was served.  He further had his admission to guilt from violating the injunction vacated.  He obtained all the relief he could get and never suffered from the prosecution of the injunction.  Both Plaintiffs were prosecuted for multiple offenses that were served concurrent to other offenses, so they never

really served any additional time for the supposed gang injunction offenses. This fact alone precludes any claims Plaintiffs might have. These remedies that were available and used prevented all the Plaintiffs' possible harm in this case and, therefore, they are not entitled to money damages.

**B.    Plaintiffs' state law claims are barred by governmental immunity.**

Plaintiffs' wrongful injunction claims, fall under exceptions to the general waiver of immunity. First, the Governmental Immunity Act provides immunity from suit to all governmental entities and each employee of a governmental entity for any injury that results from the exercise of a governmental function. *See* Utah Code Ann. § 63G-7-201(1) (2016). Utah Code Ann. § 63G-7-101(2)(a) (2016) states that the waivers and retentions of immunity apply to "all functions of government, no matter how labeled." The Immunity Act further defines governmental function as "each activity, undertaking, or operation performed by a department, agency, employee, agent or officer of a governmental entity." Utah Code Ann. § 63G-7-102(4)(b) (2016). The operation of a county and of a county attorney's office are, therefore, a governmental function under Utah law.

Second, immunity is not waived in this case. There is no waiver of immunity for intentional torts in the Utah Governmental Immunity Act. While there is a waiver to immunity for certain negligent conduct of government employees, there is are specific exceptions to that waiver of immunity if the alleged injury "arises out of, in connection with, or results from false imprisonment . . . or violation of civil rights." Utah Code Ann. § 63G-7-201(4)(b) (2016). In addition, there is also an explicit non-waiver found for "the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause." Utah Code Ann. § 63G-7-201(4)(e) (2016). There also is a specific exception to that waiver of immunity if the alleged injury "arises out of, in connection with, or results from . . . the incarceration of any person in any

state prison, county or city jail, or other place of legal confinement." Utah Code Ann. § 63G-7-201(4)(j) (2016).   Plaintiffs' claims all fall within these exceptions to the general waiver of immunity and are, therefore, barred the Utah Governmental Immunity Act, they must be dismissed.

### C.     Plaintiffs' state law claims must be dismissed for failure to plead that they filed a notice of claim as required by Utah law.

Plaintiffs were required, as a jurisdictional prerequisite to suit, to properly address and timely serve a notice of claim and to affirmatively plead complain in his pleadings as required by Utah Code Ann.§§ 63G-7-401 and -402.   Plaintiffs failed to plead strict compliance with the "notice of claim: provisions under Utah law as required in all actions brought against counties and/or their employees under Utah Code Ann. § 63G-7-401 (2016).   Failure to file a notice of claim and properly serve it is "fatal to the trial court's jurisdiction." *Nielson v. Gurley*, 888 P.2d 130 (Utah Ct. App. 1994), cert. denied, 899 P.2d 1231 (Utah 1995).   The requirements of these statutes have been strictly interpreted by Utah appellate courts and any deviation in the requirements mandates dismissal of the state claims. *See generally*, *Voroz v. Sevey*, 506 P.2d 435 (Utah 1973); *Yates v. Vernal Family Health Center*, 617 P.2d 352 (Utah 1980); *Lister v. Utah Valley Comm. College*, 881 P.2d 933 (Utah Ct. App. 1994). The notice of claim requirements apply to any claim against a government employee regardless of whether the agency would be ultimately liable as long as the employee's alleged acts were in the scope of his employment. *Kabwasa v. Univ. of Utah*, 785 F. Supp. 1445 (D. Utah 1990). Since the requirement is a subject matter jurisdictional prerequisite to suit, a plaintiff must plead compliance to enable the court to obtain jurisdiction over the governmental entity. In this case, Plaintiffs failed to plead compliance with the notice of claim requirement in their Complaint and for this reason alone, all state law claims must be dismissed.

Utah Courts are unequivocal that "strict compliance" with all provisions of the Governmental Immunity Act are mandatory when suing a government employee or agency. Plaintiffs' failure to strictly comply with the notice of claim requirements mandates dismissal of all state claims. *See Jensen v. Reeves*, 45 F. Supp. 2d 1265 (D. Utah 1999).

### D.   Plaintiffs failed to file an undertaking as required by Utah Code § 63G-7-601.

Utah Code Ann. § 63G-7-601 (2016) requires all plaintiffs to file an undertaking in a sum fixed by the Court that is not less than $300 when bring suit against a governmental entity and its employees under state law. The purpose of this undertaking is to provide security for paying taxable costs in the event Plaintiff failed in his claims against a governmental entity. Appellate Courts have ruled that a plaintiff must file an undertaking contemporaneously with the complaint to be timely under previously codified sections. *See Rippstein v. City of Provo*, 929 F.2d 576 (10th Cir. 1991).

In this case, each Plaintiff filed an initial complaint on about October 16, 2015, without an undertaking or the required official notice of undertaking as required by the statute. Utah Code Ann. § 63G-7-601(2) (2016), requires a plaintiff to not only file "not less than $300" as an undertaking, but also he must file it "conditioned upon payment by the plaintiff of taxable costs incurred by the governmental entity in the action if the plaintiff fails to prosecute the action or fails to recover judgment." *See* Utah Code Ann. § 63G-7-601(2)(b) (2016). Plaintiffs did not even attempt to comply with the act.

"Strict compliance" with all provisions of the Utah Governmental Immunity Act is mandatory. *See Hall v. Utah State Department of Corrections*, 24 P.3d 958 (Utah 2001).

Plaintiffs' failure to strictly comply with filing the undertaking is an independent failure to comply with the Act, requiring dismissal of state tort claims.

### E. Plaintiffs failed to file a bond for attorney fees as required by Utah Code § 78B-3-104.

Utah Code Ann. § 78B-3-104 (2016) requires a plaintiff to file a sufficiently large bond to guarantee payment of all costs, including "a reasonable attorney's fee" as a "condition precedent" to filing suit against any person charged with the enforcement of criminal laws in this state. This statute provides that a court should award attorney fees when a plaintiff sues a law enforcement officer and fails to prevail in his claims.  This is a unique statute that only applies to suits against law enforcement officers and agencies under state law. The scope of this statute is not limited by the nature of the claim in that the focus is solely upon the identity of the defendant officer, regardless of the type of suit.

In this case, Plaintiffs are suing Weber County and the Weber County Attorney, yet Plaintiffs failed to file a bond when their initial complaints were filed. The bond must be sufficiently large to cover all attorney fees and costs incurred by Christopher Allred in defending against the claims. However, Plaintiffs completely failed to file a bond for attorney fees in any amount. Such a failure requires dismissal of all state law claims as a matter of law. *See Kiesel v. Dist. Court of Sixth Judicial Dist.*, 84 P.2d 782 (Utah 1938). Mandatory compliance with this act is constitutional. *Snyder v. Cook*, 688 P.2d 496 (Utah 1984). Therefore, failure to comply with this law requires dismissal of all claims. In addition, the Court should award attorney fees as required by this statute.

**WHEREFORE:**   All Plaintiffs' claims should be dismissed and Plaintiffs should be ordered to pay Defendant's attorney fees and costs under 42 U.S.C. § 1988 and Utah Code Ann. § 78B-3-104.  The Court should further schedule a hearing for this matter.

Dated this 14th day of December, 2016.

/s/ *Frank D. Mylar*

_____

Frank D. Mylar
Attorney for County Defendants