John Mejia (Bar. No. 13965)           Randall Richards (Bar No. 4503)
Leah Farrell (Bar. No. 13696)         Richards & Brown PC
ACLU of Utah Foundation, Inc.         938 University Park Blvd, Suite 140
355 N. 300 W.                         Clearfield, UT  84105
Salt Lake City, UT  84013             phone: (801) 773-2080
phone: (801) 521-9862                 email:Randy@richardsbrownlaw.com
email: aclu@acluutah.org

Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| **LELAND KIM MCCUBBIN, JR. and DANIEL JOSEPH LUCERO,**<br><br>Plaintiffs,<br><br>vs.<br><br>**WEBER COUNTY, OGDEN CITY, CHRISTOPHER ALLRED, in his official capacity, and DOES 1-10**<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO WEBER COUNTY AND THE WEBER COUNTY ATTORNEY'S SECOND JUDGMENT ON THE PLEADINGS**<br><br>Consolidated Case Nos. 1:15-cv-132 & 1:15-cv-133 |

Plaintiffs Leland Kim McCubbin, Jr. and Daniel Joseph Lucero hereby oppose

Defendants Weber County and the Weber County Attorney's (together, the "Weber Defendants")

Second Motion for Judgment on the Pleadings (the "Motion") for the reasons set forth below.

### INTRODUCTION

The Court should deny the Motion for various reasons.  Initially, by attaching documents

outside the pleadings, the Weber Defendants have converted their motion into one for summary

judgment on various arguments, which at this point is premature because discovery is still

1

ongoing and relevant facts bearing on the motion have yet to be discovered, meriting denial of their motion under Rule 56(d)1 of the Federal Rules of Civil Procedure as spelled out in the attorney affidavit attached hereto.

Moreover, the Weber Defendants have failed to identify which purported grounds for dismissal apply to which claims the Plaintiffs have made.  As the proponents of the Motion, the Weber Defendants need to do more than make sweeping, undifferentiated assertions that the entire complaint should be dismissed based on various doctrines when there are different claims requiring separate analysis.  This approach unfairly puts Plaintiffs in the position of speculating which asserted grounds pertain to which claims.  Neither the Plaintiffs, nor more importantly, the Court, should be forced to guess which grounds apply to which claims and why.

Most glaringly, however, is that most of the repetitive arguments the Weber Defendants advance are premised on an inappropriately narrow and self-serving view of the factual allegations and legal theories at issue.  Boiled down, the Weber Defendants ask the Court to construe the Amended Complaint as being directed solely at a select few actions of a select few actors, and to limit its analysis to this cramped view of the case.  Nothing could be less appropriate on a motion of the kind the Weber County Defendants advance.  On a motion for judgment on the pleadings, the Court construes the factual allegations and related inferences in Plaintiffs' favor. The Weber Defendants' failure to seriously confront all of the factual allegations alleged in the Amended Complaint alone warrants denial of the Motion.

Finally, even if the Court attempts to divine which arguments apply to which claims, and even if the Court accepts the Weber Defendants' improperly narrow view of the Amended Complaint, the Motion fails.  Simply put, none of the legal arguments the Weber Defendants make in support of the Motion have any merit.

This case represents an important test of how much power cities and counties have to restrict people's individual liberties, and whether they will be held accountable when they go too far.  Especially because this case is at the pleading stage, the Weber Defendant's attempt to create a straw man complaint and excuse themselves from liability on specious, scattershot legal theories should not be allowed.

### REPLY TO WEBER DEFENDANTS "STATEMENT OF FACTS"

In a continuing theme in this case, the Weber Defendants have failed to provide the Court a good faith accounting of the factual allegations or causes of action in the Amended Complaint, which comprises over 170 paragraphs of factual pleadings, and 10 causes of action.  Instead, the Weber Defendants have recited 15 "factual" paragraphs, which are actually mostly legal spin on a select few factual allegations, new purported facts from outside the pleadings, and straight legal argument.  To say that this "statement of facts" paints an incomplete and misleading picture of the Amended Complaint is an understatement.  Essentially, rather than engaging the entire Amended Complaint, the Weber Defendants attack but a select few of the facts and theories therein.  This tactic alone merits a denial of this Motion, which must be analyzed in reference to the actual allegations and not the movants' transparently narrow, self-serving recitation of them.[1]

Plaintiffs hereby incorporate each factual allegation, plausible inference therefrom, and legal claim made in their Amended Complaint in response to the Weber Defendants' "Statement of Facts."  Plaintiffs will specifically reference these presumed-true facts in the argument as necessary in their argument.

Notwithstanding these objections and general response, Plaintiffs offer specific responses to the Weber Defendants' "Statement of Facts" as follows:

---

[1] The Weber Defendants' choice to completely ignore the vast majority of the factual allegations in the Amended Complaint is especially troubling because the Court has already indicated that more, not fewer, facts would be helpful in guiding the analysis in this case.

<u>No 1:</u>   Weber County is a county governmental entity. (Am. Compl. ¶ 15, Doc. No. 50 at 4).  It is a political sub-division of the state of Utah and is not a corporation.

<u>Response:</u> Plaintiffs alleged that Weber County is a political subdivision that can be sued in its own name, and did not allege that Weber County is a corporation.

<u>No. 2:</u>  Christopher Allred is the Weber County Attorney sued in his official capacity. (Am. Compl. ¶ 16, Doc. No. 50 at 4).

<u>Response:</u>  Admitted, further noting that Plaintiffs seek equitable relief alone against Mr. Allred, not any damages.

<u>No. 3:</u>  In August 2010, Weber County brought a civil nuisance abatement lawsuit against alleged members of a criminal street gang, Ogden Trece. (Am. Compl. ¶ 20, Doc. No. 50 at 4). The Suit was filed in the state district court.

<u>Response:</u>  Denied in part.  As to the first sentence, Weber County did not bring the suit against the "alleged members" of the Trece.  Rather, Weber County brought a suit against the Trece itself alone, and did not name a single purported member, including either Plaintiff, as a party. Weber County also did not serve Plaintiffs with any notice of any of the proceedings of that suit, only with a copy of the injunction.  Plaintiffs admit that Weber County filed the suit in state district court.

<u>No. 4:</u>  After a hearing, the trial court entered a preliminary injunction (Injunction) in September 2010. (Am. Compl. ¶ 28, ¶ 30, Doc. No. 50 at 5).

<u>Response:</u>  Admitted, noting, however, that neither of the Plaintiffs were parties to the lawsuit or provided notice of the hearing.

<u>No. 5:</u>  After an evidentiary hearing in June 2012, the trial court entered a permanent injunction that was substantially identical to the preliminary injunction. (Am. Compl. ¶ 69, ¶ 71, Doc. No. 50 at 10-11).

<u>Response:</u> Admitted, noting, however, that neither of the Plaintiffs were parties to the lawsuit or provided notice of the hearing.

No 6:   The Injunction, both in its preliminary and permanent [FN1] phases, was served on persons believed to be members of Ogden Trece. (Am. Compl. ¶ 61, ¶ 63, Doc. No. 50 at 10). However, neither of the two Weber County Defendants served it on the Plaintiffs. (See an exact copy of the "Proof of Service of Preliminary Injunction" of Leland McCubbin, attached to this memorandum as Exhibit 1; and an exact copy of the "Proof of Service of Preliminary Injunction" of Daniel Joseph Lucero attached to this memorandum as Exhibit 2).

[FN 1: Whether persons were arrested pursuant to the preliminary injunction even after the permanent injunction was entered, as Plaintiffs allege, is immaterial since Plaintiffs already admit that the preliminary and permanent injunctions were "substantially identical." (Am. Compl. ¶ 71, Doc. No. 50 at 11).]

Response:   Denied.  As to the first sentence, the Amended Complaint alleges that all of the Defendants, including the Weber Defendants were responsible for a policy and practice that allowed complete discretion on their agents to serve the injunctions upon whomever they chose, not just those people that some unidentified actor or actors "believed to be" a gang member.  As to the second sentence, there are a few problems. First, the Weber Defendants do not identify who the servers, apparently Kim Rodell and N. Jacobsen, are, or who they worked for, or on whose immediate direction they were acting in serving the papers.  The Weber Defendants simply ask the Court to accept the legal conclusion that they are not responsible based on, apparently, those proofs of service alone.  For the Court to accept these assertions with no proof would be inappropriate.

Moreover, even assuming that the servers were not full time employees or otherwise directly contracted by the Weber Defendants, there are factual allegations throughout the Amended Complaint that plausibly support a conclusion that the Weber Defendants were factually and legally responsible for the decision to serve Plaintiffs with the injunctions, whoever ultimately physically gave them the papers.

As to footnote 1, it is misguided legal argument not fact. To the extent it needs a response, Plaintiffs point out that this contention is part of the Weber Defendants' pattern of

willfully disregarding basic concepts of due process.  It is incredible for a governmental entity to argue that an individual who had been served with a temporary injunction but not with a permanent injunction should be bound by the latter because the two orders were alike.  Not surprisingly, the Weber Defendants point to no legal support on this point.  This issue matters because, among other things, it appears that the Weber Defendants served Plaintiff Daniel Lucero only with the preliminary injunction (see Exhibit 2 to the Motion, Doc. 60-2) but Weber County prosecuted him for violating that injunction after the permanent injunction was issued (see Exhibit 4 to the Motion, Doc. 60-4).  The Weber Defendants' conclusory, *post hoc* justification of these policy-and-practice-driven actions has no merit and should be rejected.

No. 7:  The Injunction made it possible for those who had been served with it to be arrested for conduct contrary to its terms. (Am. Compl. ¶¶ 31-48; Doc. No. 50 at 4-8).

Response:  This is a vague legal conclusion, but on its face, the injunction made this possibility a practical, if illegal, reality.

No. 8: Multiple persons were allegedly arrested for violating the Injunction. (Am. Compl. ¶ 63, Doc. No. 50 at 10). However, the Weber County Defendants did not arrest the Plaintiffs.

Response:  Denied.  As to the first sentence, the Court must accept as true on this Motion (and it is true), that many people, including Plaintiffs were arrested for violating the Injunction, and that those arrests were part of a pattern and practice propagated by the Weber Defendants, including arrests of served individuals who the Defendants knew were not gang members.  There are a few problems with the second sentence.  First, the Weber Defendants offer no proof that their agents did not carry out the arrests of the Plaintiffs.  Second, there are factual allegations throughout the Amended Complaint that would lead to a conclusion that the Weber Defendants were factually and legally responsible for the decision to arrest the Plaintiffs for violating the injunctions in part because of their policy and practice of allowing served individuals to be arrested for alleged

violations, ratified by the Weber Defendants' multiple prosecutions of arrested individuals, like the Plaintiffs.

No. 9: Plaintiff Lucero was served with the Injunction September 30, 2010 in Ogden.  (Exhibit 2).

Response:  Without conducting discovery to verify the authenticity of the document, Plaintiffs can neither admit or deny this statement, but Plaintiffs presently have no contradictory evidence.

No. 10: Plaintiff McCubbin was served with the Injunction on November 22, 2010 at the Utah State Prison. (Exhibit 1).

Response:  Without conducting discovery to verify the authenticity of the document, Plaintiffs can neither admit or deny this statement but Plaintiffs presently have no contradictory evidence.

No. 11: Both Plaintiffs later pled no contest or guilty to violating the Injunction. (See an exact copy of the "Statement of Defendant in Support of Guilty Plea and Certificate of Counsel" of Leland Kim McCubbin Jr., attached to this memorandum as Exhibit 3; and an exact copy of the "Statement of Defendant in Support of Guilty Plea and Certificate of Counsel" of Daniel Lucero attached to this memorandum as Exhibit 4). County Defendants requests the Court take judicial notice of these facts pursuant to Federal Rule of Evidence 201(b)(2). Whether persons were arrested pursuant to the preliminary injunction even after the permanent injunction was entered, as Plaintiffs allege, is immaterial since Plaintiffs already admit that the preliminary and permanent injunctions were "substantially identical." (Am. Compl. ¶ 71, Doc. No. 50 at 11).

Response:  Plaintiffs admit that they plead no contest or guilty to violations of the injunction. Upon consultation with the state court records, the Weber Defendants have altered the two purported "exact copies" of the plea agreements they attached to the Motion by placing highlighting on them. The original, filed copies, attached as Exhibits 1 and 2 hereto, did not have that highlighting.

Without waiving the ability to later object to the introduction of altered documents represented as "exact copies," Plaintiffs do not object to the Court considering the unaltered plea agreements as part of assessing the Weber Defendants' meritless arguments about them. Plaintiffs, however, object to the request for judicial notice of these documents, as the Weber

Defendants offer no reasoning for why judicial notice is needed or appropriate for these documents.

As to the final sentence, this is a legal argument not a fact.  To the extent a response is necessary, please see Plaintiffs' response to Statement No. 6, footnote 1.

No. 12: On October 18, 2014, the Utah Supreme Court vacated the Injunction. (Am. Compl. ¶ 73, Doc. No. 50 at 11).

Response:  This sentence is a legal conclusion, as that decision speaks for itself.  Plaintiffs admit that on that date, that the Utah Supreme Court filed its opinion reasoning that the Injunction was void *ab initio* for lack of service on the Trece.  To the extent that vacating an injunction is an action taken by a district court on remand, that action never took place in the underlying nuisance suit after it was remanded to the lower court.

No. 13: No injunction is presently ordered by the court or being enforced by Defendants.

Response:  Plaintiffs admit that the nuisance suit has been dismissed without prejudice, although the district court never took any steps to dissolve or vacate its order and the Weber Defendants made no recorded efforts to legally notify any served individual, including the Plaintiffs, of any of the filings or events in that case.  As to whether the Defendants are enforcing the injunction, Plaintiffs cannot confirm or deny this allegation.  Plaintiffs, moreover, are still dealing with the legal and practical consequences of being subjected to the injunction and their convictions for violating it.

No. 14: McCubbin got his sentence reduced by 60 days after he successfully withdrew as a member of the gang, time he was serving concurrently for another criminal conviction. (Am. Compl ¶¶ 133-135, Doc. No. 50 at 18).

Response:  Denied.  This statement is a gross mischaracterization of the Amended Complaint and the actual facts.  The court did not reduce Mr. McCubbin's sentence as a result Mr. McCubbin "successfully withdrawing" as a member of the Trece.  Mr. McCubbin had left the

Trece years before the Weber Defendants served him with the injunction and he was prosecuted

for violating it (a fact of which the Weber Defendants were aware).  The criminal court's actions

and the record as to why the court reduced Mr. McCubbin's sentence speak for themselves.

<u>No. 15</u>: On June 5, 2015, McCubbin was able to get his criminal charges related to the gang
injunction vacated. (Am. Compl. ¶ 139, Doc. No. 50 at 18).

<u>Response</u>:  Admitted that Mr. McCubbin, after prevailing over the Weber Defendant's vigorous

opposition in a long and costly effort, was able to obtain a favorable result in his petition under

the Utah Post Conviction Reform Act to vacate his convictions for violating the injunction.

Plaintiffs note that the Weber Defendants vigorously fought and ultimately defeated Mr.

Lucero's attempt to clear his record of his injunction-related conviction, an effort the Weber

Defendants continued and won even after the court in Mr. McCubbin's case found that such a

conviction was a blatant violation of constitutional rights.

## LEGAL STANDARD

In assessing a motion for judgment on the pleadings, the Court should "'accept all facts

pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings'

in that party's favor."  *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th

Cir. 2012) (citation omitted).  "Judgment on the pleadings is appropriate only when 'the moving

party has clearly established that no material issue of fact remains to be resolved and the party is

entitled to judgment as a matter of law." *Id.* (citation omitted).

## ARGUMENT

Plaintiffs initially note that almost every legal argument advanced by the Weber

Defendant hinges on the wrongheaded notion that the Court should ignore the vast bulk of

allegations in the Amended Complaint and focus solely on a select few behaviors, such as the

service of the papers, or the criminal prosecutions.  Plaintiffs do indeed complain of this conduct,

but the Weber Defendants' attempt at limiting and reframing the Amended Complaint to that

conduct alone deserves no credit.  A fair reading of the Amended Complaint shows that, among

other things, Plaintiffs bring this action to hold the Weber Defendants accountable for the

following unlawful and unconstitutional policies and practices:

- allowing their agents complete discretion as whom to serve with the injunction knowing that agents would serve non-members and improperly take ethnicity into account (*see*, *e.g.*, Am. Compl. at ¶¶ 50, 59, 61);
- not requiring their agents to seek a pre-deprivation hearing before serving individuals and subjecting them to immediate criminalization of their constitutionally protected activities, such as free speech and association (*see*, *e.g.*, *id.* at ¶ 49);
-  allowing their agents to serve people the agents knew were not members of that gang, like the Plaintiffs (*see*, *e.g.*, *id.* at ¶¶ 90-101, 111-122);
- subjecting all served individuals, like the Plaintiffs, to arrest and prosecution for constitutionally protected activities knowing that they should not have been served with the injunction (*see*, *e.g.*, *id.* at ¶¶ 106, 126);
- allowing their agents to prosecute people for alleged violations of the permanent injunction who had only been served with the preliminary injunction, like Mr. Lucero (*see*, *e.g.*, *id.* at ¶ 72);
- requiring all served individuals, like the Plaintiffs, to initiate unspecified procedures to attempt to free themselves from the injunction, even for individuals they knew were not members of the gang, like the Plaintiffs (*see*, *e.g.*, *id.* at ¶¶ 41-43);
- wrongly defending criminal convictions for violating the injunction against habeas petitions, like those of the Plaintiffs, that the Defendants obtained in violation of the the state and federal constitutions (*see*, *e.g.*, *id.* at ¶¶ 109-111, 138-140);
- agreeing between all Defendants to deny Plaintiffs' civil rights based on ethnic animus (*see*, *e.g.*, *id.* at ¶¶ 57-64, 101, 122, 167);
- currently maintaining a list of alleged gang members, including Plaintiffs, which alters the purported members' rights and allows no due process (*see*, *e.g.*, *id.* at ¶¶ 52-54, 85, 145); and
- continuing to publicly threaten to violate the rights of Plaintiffs by publicly promising to continue the exact practices described above by seeking a substantially identical injunction and following the same unconstitutional methods (*see*, *e.g.*, *id.* at ¶ 82-85, 89).

Because the Weber Defendant's arguments are repetitive and uniformly ignore all of these

allegations, Plaintiffs will refer to this list throughout their argument.  In any event, as further

explained below, even were the Court to take the improperly narrow view advanced by the

Weber Defendants, their arguments still fail.

## I.     Eleventh Amendment Immunity is No Shield for the Weber Defendants

The Weber Defendants first argue that Eleventh Amendment immunity is grounds to dismiss all claims against them.  There are various fatal defects with this argument.  First, this argument depends on the Court construing the Amended Complaint as focused solely on the Weber Defendants' actions in prosecuting Plaintiffs.  As exhaustively spelled out above, Plaintiffs allege much more problematic behavior than the prosecutions. The Weber Defendants also make no attempt to how such immunity protects them from facing liability for any of these unlawful policies and practices that are separate and apart from bringing criminal prosecutions against the Plaintiffs or how these actions are akin to state actions.

Simply put, the Weber Defendants' actions are not shielded by the Eleventh Amendment. It is long established law that municipalities are liable for damages caused by their unconstitutional policies and practices.  *See, e.g., Monell v. Department of Social Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978).  It would be a perverse outcome for Weber Defendants to obtain immunity for all of their problem behavior because they decided to compound the problems by pursuing criminal charges, and the Weber Defendants point to no case supporting them.  Accordingly, even if the Eleventh Amendment shielded the Weber Defendants for their discrete acts related to criminally prosecuting the Plaintiffs for the injunction, their motion should be denied, because those discrete acts are a small portion of the wrongful policies and procedures underlying Plaintiffs' claims.

Further, there is no colorable argument that the Weber Defendants' actions in bringing the civil nuisance suit could be categorized as state action.  The statute they relied on to bring the civil abatement suit authorizes that such a suit may be brought "upon direction of the county executive, or city attorney … [or] of the board of city commissioners, or attorney general."  Utah

Code § 76-10-806.  Thus, the power to initiate a suit to abate a nuisance lies independently in cities and counties, in addition to the state.

Moreover, the Weber Defendants fail to point out that their main case, *McMillian v. Monroe Cty, Ala.*, 520 U.S. 781 (1985) recognized an exception to preclude counties from making successful claims of sovereign immunity when such claims are actually "egregious attempts by local governments to insulate themselves from liability for unconstitutional policies" if plaintiffs can "prove that 'a widespread practice' has been established by 'custom or usage' with the force of law."  *Id.* at 796 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  In this case, Plaintiffs do more than allege that the Weber Defendants made a few discrete choices to prosecute them for violating the injunction.  Rather, they allege a that they were caught up in a widespread policy and practice of prosecuting people whom the Weber Defendants had not provided with pre-deprivation process, who could not raise as a defense their non-membership, and who were not members of the gang.  Plaintiffs further allege that their prosecutions were part of a larger pattern and practice of conspiring to deny civil rights in part based in on their Hispanic ethnic background.  Based on the Amended Complaint, it is plausible that all of these activities can fairly be called customs or usages of the Weber Defendants and that the prosecutions involved were not typical prosecutions in the state's name.  Accordingly, the conditional extension of state immunity to counties meeting the criteria of *McMillian* is not available to the Weber Defendants because of *McMillian's* exception for bad county policies and practices.

Finally, as to the equitable relief claims in particular, the declaration and injunction Plaintiffs seek are unrelated to past criminal prosecutions, and targets behavior that could not credibly be attributed to the state.  That is, Plaintiffs seek equitable relief related directly to the

propriety of Mr. Allred's office's repeated, publicly-stated plans of following the same course of

action his predecessor in office followed.  Plaintiffs seek a declaration that the injunction Mr.

Allred plans to obtain is unconstitutional, as are the procedures by which he plans to serve and

enforce it.  Moreover, Plaintiffs seek an injunction requiring the Weber Defendants to remove

Plaintiffs' names from the gang database maintained by the Weber Defendants.  The Weber

Defendants make no attempt to argue that this type of prospective, equitable relief would be

precluded by the Eleventh Amendment, and it is not.

## II.      Prosecutorial Immunity Does Not Shield Mr. Allred

While the Weber Defendants' header argues that they are both entitled to prosecutorial

immunity, they only argue such immunity for Mr. Allred.[2]  This argument fails.  As explained

above, Plaintiffs are not suing Mr. Allred's office for prosecuting them, but for prospective

relief.  For example, Plaintiffs are suing Mr. Allred for his office's role in maintaining their

names in a gang database, and Mr. Allred does not explain how prosecutorial immunity would

shield him from the claim for injunctive relief requiring their removal.  Likewise, Plaintiffs seek

declaratory relief that Mr. Allred's planned injunction and tactics would violate their rights, and

Mr. Allred does not explain how this relief is barred by prosecutorial immunity.  In any event,

prosecutorial immunity only protects prosecutors from damage suits: it is not a defense for

prosecutors sued for prospective equitable relief in their official capacities, as Mr. Allred is here.

*See Martinez v. Winner*, 771 F.2d 424, 438 (10th Cir. 1985).

## III.     Quasi-Judicial Immunity Does Not Shield the Weber Defendants.

In the section in which the Weber Defendants assert quasi-judicial immunity, their header

argues that it applies to Mr. Allred, then their conclusion says it applies to both.  It applies to

---

[2] Plaintiffs are unsure of what to make of Mr. Allred's argument that they did not allege that the Weber County Attorney brought the nuisance suit, as the suit was filed in the name of Weber County and signed by the Weber County Attorney's office.

neither.  Precluding this entire line of argument that the judge in the nuisance suit did not order the Weber Defendants to serve the injunction upon the Plaintiffs, or anyone else in particular for that matter.  The Weber Defendants made the decisions about whom to serve on their own, wholly independent from the judge.  Yet to qualify for quasi-judicial immunity, "the officials must only act as prescribed by the order in question."  *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009).  Here, not only did the judge not order service of the injunction on the Plaintiffs, the Plaintiffs were not even parties to the lawsuit in which the injunction originated.

Moreover, Plaintiffs have alleged facts plausibly leading to the conclusion that the Weber Defendants made a bad faith decision to serve Plaintiffs with an order that they obtained in a suit where they failed to make proper service on the actual party.  The Tenth Circuit peels away quasi-judicial immunity in such cases, even if it did otherwise apply.  *See id.* at 1163, n. 10 ("We have also indicated that where the defendants themselves, in bad faith, obtain the order under which they claim immunity, that order will not provide the same quasi-judicial immunity as an order which the defendant played no part in procuring.") (citation omitted).

Finally, as listed at length above, Plaintiffs bring this action for various policies and practices that are unconnected to effecting service on them.  The Weber Defendants make no effort to explain why all the claims against them should be dismissed under a doctrine that is limited to effecting court orders.  Further, as with their other immunity defenses, the Weber Defendants make no attempt to explain how quasi-judicial immunity would shield them from the equitable remedies Plaintiffs seek against them.  Namely, the Weber Defendants do not explain how their actively maintaining Plaintiffs on a gang database has anything to do with following a court order.  Likewise, the Weber Defendants cannot credibly argue that they are following a court

order in laying and publicly announcing plans to seek a substantially similar injunction to the one they obtained in the nuisance suit and follow their previous enforcement policies and practices.

## IV.    Plaintiffs Have Standing to Sue the Weber Defendants

Plaintiffs acknowledge that standing is a requisite for any action in any court.  As discussed throughout, Plaintiffs have standing, as they have plead facts leading to the plausible conclusion that multiple unlawful policies and practices of the Weber Defendants caused and will cause them actual harm.  The Weber Defendants' arguments in advancing the proposition that the Amended Complaint does not allege that they harmed Plaintiffs are the height of improperly attempting to reframe, recast, and ignore almost the entirety of the Amended Complaint.  Listed above is a myriad of wrongful policy and practice for which the Amended Complaint alleges the Weber Defendants are responsible.  The constitutional harms related to being unconstitutionally targeted and subjected to criminalization of legally protected interests are palpable.  For example, among many other things, the Plaintiffs risked arrest and prosecution for being seen in public anywhere in Ogden with anyone the arresting officers determined to be a known gang member, even if that person was a family member of the Plaintiff.

The Weber Defendants cannot credibly maintain that their policies and practices did not cause Plaintiffs harm.  In response to the plethora of allegations of unlawful policy and practice, and to the clear harms to legally protected rights they caused and will cause Plaintiffs, the Weber Defendants simply offer conclusory response that there are no violations and there is no harm. This type of broadly worded, easily disproved argument cannot be allowed to carry the day on at this stage or any other stage of the pleadings.

**A.  Plaintiffs' Equitable Relief Claims are not Moot**

The Weber Defendants' argument that Plaintiffs' equitable claims are moot is wrong.  First, the Weber Defendants make no attempt to argue why the Plaintiffs' claim for an injunction removing them from the gang database has been mooted.  Plaintiffs have plausibly alleged that that their inclusion in the database has been used, is being used, and will be used to modify their rights.  Second, the Weber Defendants misstate Plaintiffs' position in suggesting that they seek a declaration about the injunction in the now-dismissed nuisance suit.  As is made clear in the Amended Complaint, and in the Plaintiffs' briefing on this very issue on their motion to amend, the declaration Plaintiffs seek goes to the Weber Defendants' publicly stated plans to follow substantially the same course of action that they previously followed in obtaining, serving, and prosecuting a substantially identical injunction.  The injunctions issued in the prior case are not at directly at issue in the claims for prospective relief.

**B.  The Weber Defendants are Liable for Serving Plaintiffs**

Initially, in denying that they directly served Plaintiffs, the Weber Defendants offer no explanation as to who the servers identified in their Exhibits 1 and 2 are, which makes it impossible for Plaintiffs or the Court to verify their claim, so the Court should ignore it.[3]  In any event, whether those servers were employees of or directly hired by Weber Defendants is irrelevant.  The Amended Complaint can be plausibly read to conclude that regardless of who performed the actual service, the Weber Defendants' policies and practices caused their service as a legal matter.  After all, it was Weber County that obtained the injunction in a suit filed by the Weber County Attorney, and Weber County was the named entity in many criminal prosecutions against served individuals for violating the injunction in prosecutions advanced by

---

[3] If were the Court inclined to agree that it matters at this pleading stage who employed the servers, Plaintiffs are entitled to discovery under Rule 56(d) before a ruling on this question issues.  (See Mejia Affidavit, Ex. 3 at ¶ 4.)

the Weber County Attorney's office.  It is plausible to conclude that the Weber Defendants

worked together with others, including Ogden City and its representatives, in formulating

policies on whom to serve the injunction upon, whom to arrest, and certainly whom to prosecute.

At a minimum, the Weber Defendants had a policy and practice of ratifying and adopting their

partners' service-related decisions, policies, and practices by later prosecuting served individuals

like the Plaintiffs.

As to the Weber Defendants' assertion that Plaintiffs alleged only that they "took some

action to request the" injunction, (Motion at p. 7), this is silly.  To the contrary, for Plaintiffs

allege multiple bad policies and practices, as generally and partially sketched out above.  On the

issue of service in particular, Plaintiffs allege that the Weber Defendants propagated policies and

procedures that, among other things, allowed their agents to serve people like Plaintiffs for bad

reasons and that they did not require their agents to seek pre-depravation hearings.

### C.  Plaintiffs Did Not Waive Any Constitutional Claims by Pleading Guilty

The Weber Defendants' argument that by waiving their rights to trial-related rights in their

criminal proceedings, Plaintiffs waived their constitutional claims in this case is absurd.  Not

surprisingly, the Weber Defendants do not mention the legal requirements to find a waiver,

which is that any waiver must be knowing and voluntary.  If the Court examines the plea

agreements at issue, it will see no language that would warn anyone signing it that they are

waiving anything other than rights directly connected with going to trial in their criminal cases.

Nothing about the agreements even intimates that they are waiving claims relating to "any

constitutional defects in the charges, conviction, arrest, and sentencing" (Motion at p. 7), nor do

the Weber Defendants cite a single case where a court has read a plea agreement as such a

waiver.  The Weber Defendants similarly fail to cite any case for their invented from whole cloth

17

argument that signing a plea agreement pleading guilty or no contest to a crime is "an admission

of fact that they did not sustain a constitutional injury." (Id. at 7-8.)  These arguments are

complete fabrications not based on any actual language from the plea agreements or any legal

precedent, and the Court should reject them on their face.[4]

### D.  Plaintiffs Claims Are Against the Defendants, not the Court

The Weber Defendants' argument that Plaintiffs should have sued the state court in the

nuisance action is simply a repetitious and confusing rehash of their argument that the Court

should ignore most of the allegations of the Complaint and find them blameless based on their

simplified version of Plaintiffs' claims.  As described herein, Plaintiffs have alleged multiple

policies and practices of the Weber Defendants, not the court, that directly caused them harm,

and will cause them future harm without equitable relief.  It suffices to say that Plaintiffs do not

allege that the court played any role in: formulating the policies and procedures about whom to

serve with the injunction; serving Plaintiffs and others with no prior hearing; serving people like

Plaintiffs who they knew should not have been served; allowing ethnic discrimination to factor

into decisions about who to serve; policing for violations of the injunction; prosecuting alleged

violations the injunction; defending unconstitutional convictions based on the injunction;

threatening to revive the injunction; listing Plaintiffs on a gang database with no due process;

and so on.  All of those policies and procedures and more were adopted by the Weber

Defendants and their partners including Ogden City, without help from the nuisance suit court,

and those are the policies and procedures that harmed and will harm Plaintiffs, and that are at

issue.

---

[4]  Should the Court be inclined to consider these assertions, however, Plaintiffs are entitled to discovery under Rule 56(f) to determine whether their alleged waivers were knowing and voluntary, before the Court grants dismissal on this basis.  (See Mejia Affidavit, Ex. 3 at ¶5.)

## V.       Plaintiffs Allege Sufficient Facts to State a Claim

The Weber Defendants' main argument in asserting that Plaintiffs have not stated a claim is based almost entirely on feigned confusion about naming the Weber Defendants along with Ogden City together in certain allegations in the Amended Complaint.  This argument should be discarded.  Rather than simply transcribe all the entire Amended Complaint herein to demonstrate its clarity, the Court can read the Amended Complaint and consider whether there is any genuine confusion about which Defendant is alleged to be responsible for which policies and practices.  In short, there is none.  The mere fact that at various points Plaintiffs allege that all of the Defendants adopted a policy and practice, or that none of the Defendants took an action is neither implausible nor confusing.[5]

Slightly more colorable, but still not winning, are the Weber Defendants' arguments about the potential for injunctive relief.  Contrary to the Weber Defendants' arguments otherwise, Plaintiffs need not offer a *guarantee* that the Weber County Attorney will necessarily succeed in his stated plans to try to fix the service problem and seek to obtain a substantially identical injunction against the Trece and follow his predecessor's bad practices.  Instead, to obtain equitable relief, Plaintiffs are required to show that there is a substantial likelihood they will suffer imminent harm.  Plaintiffs can meet this burden.  Mr. Allred's office has at various points said that they will seek an almost identical injunction against the Trece.  Even if his office serves the right people in the Trece, there is slim-to-none chance that the alleged leaders would enter appearances: appearing as a gang leader would be akin to admitting a role in a criminal enterprise.  Default judgment in those circumstances is thus extremely likely, and because no court has yet declared the substance of the injunction to be unconstitutional, a fact Mr. Allred has

---

[5] To the extent that the Court feels that more facts would assist it in pinning down even more specifics about precisely who did what than are already contained in the Amended Complaint, the Plaintiffs should be allowed discovery to meet that seemingly unwarranted level of detail at this pleading stage (See Mejia Affidavit, Ex. 3 at ¶6.)

repeatedly emphasized, there is a good chance it would again issue.  Moreover, Plaintiffs have alleged that they are currently being harmed by their inclusion on the Weber Defendants' gang database.

**VI.        Plaintiffs Sued Under the Correct Amendments**

The Weber Defendants read entirely too much into *Albright v. Oliver*, 510 U.S. 266 (1994), which does not stand for the generalized proposition that any Section 1983 case where a criminal prosecution is part of the alleged bad behavior is required to be brought under the Fourth Amendment.  Rather, the question in *Albright* was whether the Court should "recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause."  *Id.* at 268.  The answer was no, that particular claim needed to be brought under the Fourth Amendment.  *See id.* at 275.  The Weber Defendants do not cite any cases where this holding has been expanded in the radical manner in which they suggest the Court adopt, and the Court should decline this invitation to err.

In any event, in the Amended Complaint, among many other things, Plaintiffs claim that they were denied a pre-deprivation hearing before the Weber Defendants' policies and practices caused them to be served with the injunction.  That lack of hearing was a procedural and substantive due process violation.  They claim that once served, they could not speak, associate, and engage in other constitutionally protected activities without the threat of criminal prosecution.  They allege that they are being listed on a gang database affecting their legal status with no process.  These are among the First Amendment, Fifth Amendment, and Due Process violations alleged here.

Nothing about *Albright* would support a conclusion that Plaintiffs First, Fifth, and Fourteenth Amendment claims are redundant or inappropriate.  These claims do not disappear without a

Fourth Amendment claim attached.  In the alternative, should the Court find that certain of the claims should have technically been brought under the Fourth Amendment, there is no reason for the Court not to allow Plaintiffs to amend to bring claims under that amendment.

**VII.   Plaintiffs' Federal Claims are Cognizable**

Plaintiffs are unsure of the purpose of the Weber Defendants' assertion that there is no legal distinction between Weber County and the Weber County Attorney, but they are only half right. To the extent that Plaintiffs have sued Mr. Allred in his official capacity for injunctive relief, they are correct that Plaintiffs are essentially suing Weber County.  On the other hand, to the extent that Plaintiffs have sued Weber County for damages relating to harm caused by its wrongful policies and practices, Weber County is a totally separate defendant from Mr. Allred subject to separate analysis.  Plaintiffs have not sued Mr. Allred or his office for damages.

**A.  Plaintiffs Have Met the Pleading Requirements of Section 1983**

The Weber Defendants' arguments that Plaintiffs did not meet the Section 1983 requirements is once again a repeat of their inappropriate attempt to limit the allegations and claims to ones of their liking and ignore the majority of the Amended Complaint.  As described above, there are many examples of wrongful policies and practices of Weber Defendants that caused Plaintiffs harm.  The Weber Defendants' simple denial of the conclusion remains unpersuasive.  Here, the main thrust of the Weber Defendants' argument is that Plaintiffs did not identify Weber County employees or agents by name in the Amended Complaint.  There is a simple reason for this, which is this case is at the pleading stage.  At this stage, the question is whether the Amended Complaint alleges facts leading to a plausible conclusion that some employees, representatives, or agents of Weber Defendants took harm-causing actions pursuant to the illegal policies and practices adopted by the Weber Defendants.  And the simple answer to that question is yes.  The

identities of the specific actors will be uncovered in discovery.  To require a greater level of

specificity at this stage is incompatible with notice pleading standards.[6]

Finally, Plaintiffs are unsure of what authority the Weber Defendants are relying upon in

their contention that there is a "deliberate indifference" component to every constitutional claim

against a municipality.  The Tenth Circuit is clear that to "establish a claim for damages under §

1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity

executed a policy or custom [and] (2) that caused the plaintiff to suffer deprivation of

constitutional or other federal rights."  *Moss*, 559 F.3d at 1168.  A final decision by a policy

maker *i.e.*, a formal policy, will meet the first prong, as will a widespread, accepted practice that

is the functional equivalent of a policy.  *See id.* at 1168-69.  Plaintiffs have alleged both unlawful

policies and practices in the Amended Complaint, and they have alleged the policies and

practices caused them harm.  Further discovery will show whether the Weber County Attorney

was the only policy maker involved, or whether others, like perhaps the sheriff or county

commissioners may have had involvement.  And in any event, even were the Court to accept the

Weber Defendants' insistence on "deliberate indifference" by a policymaker, Plaintiffs have met

and exceeded that standard.  For example, Plaintiffs have alleged that policymaking officials of

Weber Defendants, currently named as John Does, purposely adopted a policy and practice of

allowing their agents to serve non-gang members with the injunction after improperly taking into

account the individuals' ethnicity.

### B.  Plaintiffs Have Properly Alleged a Violation of 42 U.S.C. § 1985

Plaintiffs do not disagree with the Weber Defendant's recitation of the elements of a Section

1985 claim.  The Weber Defendants' argument that cities and counties are not "persons" under

---

[6] To the extent that the Court feels that more facts about the identify of specific individuals acting on behalf of the Weber Defendants is needed to evaluate the claims, the Plaintiffs should be allowed discovery to meet that seemingly unwarranted level of detail at this pleading stage (See Mejia Affidavit, Ex. 3 at ¶ 6.)

Section 1985 suits, however, is simply wrong.  Counties and cities are "persons" under that statute, liable for conspiracies that can be properly attributed to them.  *See*, *e.g.*, *Owen v. Haas*, 601 F.2d 1242, 1247 (2nd Cir. 1979).  Plaintiffs meet that test here.  Contrary to the Weber Defendants' attempt to recast their wrongful action as simply obtaining the injunction, the Plaintiffs also allege the above listed unlawful behavior of both Weber County and Ogden City, and allege that both the county and city had a policy and practice of agreeing with each to carry out those unlawful actions.  For example, it was unlawful for Weber County and Ogden City to agree to follow a policy and practice of depriving Plaintiffs of constitutional rights with no pre-deprivation process by serving them with the injunction and later arresting them, especially knowing that Plaintiffs were not gang members and selected in part on improper use of ethnicity among many other things.  The Court should thus reject the Weber Defendants' argument.

### VIII.   Plaintiffs' Claims are Not Time Barred

The Weber Defendants' arguments on the statute of limitations falls short for various reasons.  First, the Weber Defendants make no attempt to show how Plaintiff's claims for being on a gang database *as of now* is somehow time barred.  Second, the Weber County Defendants have not established when the causes of action arose, precluding them a positive ruling on their defense on either the federal or state claims at this stage.  Next, the Weber Defendants have come to the wrong Court in trying to overturn U.S. Supreme Court and Tenth Circuit precedent on the applicable Section 1983 period.  And finally, even assuming there were a colorable claim that the limitations periods had run, the Weber County Defendants' continuing violations and other exceptions defeat that argument.

Plaintiffs are surprised that the Weber Defendants are attempting yet another bite at the apple on limitations at the pleadings stage.  The Court has signaled in a prior hearing that the

question of when the limitations period began to run is fact-dependent and the thus the Court was reluctant to resolve that question on the pleadings alone.  The Court appeared to rule in Plaintiffs' favor on that issue when, over Ogden City's objection that a limitations bar made amendment futile, it allowed Plaintiffs to file the Amended Complaint.  As the Court did not enter a reasoned, written order to that effect, Plaintiffs hesitate to call this order the law of the case, but it seems fairly clear the Court has already resolved the time bar issue against all of the Defendants, at least on the face of the Amended Complaint.

In any event, if the Court has already not rejected a limitations defense at this stage, it should.  First, under federal law, the statute of limitations on a Section 1983 claim does not being to run until the facts supporting the claim are apparent to the Plaintiffs.  *See*, *e.g.*, *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) ("A civil rights action [under Section 1983] accrues when "facts that would support a cause of action are or should be apparent.") (citations omitted).  Likewise, under state law, the potential for an application of the discovery rule, whether statutory or equitable, makes determining the accrual date for claims a fact-intensive inquiry.  *See*, *e.g.*, *Russell Packard Dev. Inc. v. Carson*, 108 P.3d 741, 746-49 (Utah 2005).

Regardless of whether the limitations period is two years (for state claims) or four years (for federal claims), the Weber Defendants are wrong about their posited accrual dates in this case.  In short, it was far from apparent that Plaintiffs had a cause of action when Defendants served the injunction upon them because it had been upheld by the district court, all attempts at intervention by served individuals had failed, and the Utah Supreme Court had refused to put the injunction on hold.  Moreover, the Utah Supreme Court's October 2013 order that reasoned that the injunction was void could have been reconsidered on Weber County's request for many days after it issued, and given Weber County's public comments in the immediate wake of the ruling,

a reconsideration request was possible.  Even had the Plaintiffs received notice of the ruling and

had hired attorneys to understand it, it would have been reasonable to continue to comply with

the injunction until there was some finality, and at a minimum to see what the order would be on

remand.  Ultimately, the remand order also contained no instructions to the district court to

vacate or otherwise effect its reasoning.  After the high court remanded the case on November 6,

2013, the district court did not issue any order rescinding the injunction, and Weber County

made no efforts whatsoever to formally or informally notify any served individuals, including the

Plaintiffs, of the high court's ruling.  As non-parties and non-lawyers, Plaintiffs were not served

any of the pleadings or orders for the case or the habeas action, and would have been unlikely to

fully understand all of of the legal repercussions of them in any event.  In fact, Weber County did

not to ask the court to dismiss the case until September 2014, and even then asked the Court to

do so without prejudice, leaving open the possibility of refiling before the same judge in the

same matter.

   All of these facts show that the Weber Defendants' facile conclusions about potential accrual

dates are not valid at this stage, and will not be valid on further pleadings.[7]  The earliest plausible

accrual date was the November 2013 remand, while another plausible accrual date was in

September 2014, when Weber County finally moved for the suit to be dismissed without

prejudice.  Moreover, it would also be plausible for the Court to conclude that the statute of

limitations still has not even started, as the Weber Defendants acted to cover their bad acts and

are still taking wrongful actions, such as advancing frivolous arguments and forcing Mr.

McCubbin into an extended and costly fight to clear his record of his injunction-related

convictions and dawdling in their compliance with court orders in that case, and using a time-bar

---

[7] If the Court feels that even more facts are needed to inform it on this issue, the Plaintiffs request that the Court deny the motion under Rule 56(d)(1) for the Plaintiffs to discovery additional facts, as they would be helpful in defending against this defense.  (See Mejia Affidavit, Ex. 3 at ¶ 7.)

argument to ensure, after another costly and extended fight, that Mr. Lucero's injunction-related conviction remains on his record, even after a court ruled that such a conviction violated the constitution in Mr. McCubbin's case.

Further, the Weber Defendants' claim that the Utah Governmental Immunity Act's ("UGIA") statute of limitations controls Section 1983 claims is wrong, and, contrary to their assertion otherwise, their exact argument has been considered and rejected by the U.S. Supreme Court and the Tenth Circuit, not just by the District of Utah.  Specifically, in *Arnold v. Duchesne County*, 26 F.3d 982 (10th Cir. 1994), the Tenth Circuit explained that because Section 1983 cases were meant to redress personal injuries, federal courts borrow general personal injury limitations from state law, and reject any statute of limitations that carves out shorter limits based on the identity of the tortfeasor, such as government actors.  *See id.* at 985-987.  In coming to this conclusion, the Tenth Circuit summed up *Felder v. Casey*, 487 U.S. 131, 141 (1988), as "rejecting application of state notice-of-claim statute in section 1983 actions brought in state court because such a statute is not 'a neutral and uniformly applicable rule of procedure' but rather burdens 'only ... those who seek redress for injuries resulting from the use or misuse of governmental authority.'"  *Arnold*, 26 F.3d at 987.  If Utah has made a judgment in the UGIA that the limitations period should be different for injuries caused by any government actor, that is actually conclusive proof under decades-old Tenth Circuit and U.S. Supreme Court law that the UGIA's time limits do *not* apply to Section 1983 actions in Utah.  As the Weber Defendants grudgingly concede without citing a single case, courts in this district have long upheld that principle, including when specifically considering the UGIA.  *See, e.g.*, *Larson v. Snow College*, 189 F. Supp. 2d 1286,1295-96 (D. Utah 2000).  If the Weber Defendants want a reconsideration of the 22-year-old *Arnold* decision, which is still good law, they should take it up with the Tenth

Circuit, not ask this Court to overrule *Arnold* based on an easily-rejected argument that the Tenth

Circuit already rejected and will reject again.

Because the Weber Defendants have failed to meet their burden of establishing the accrual

dates on any claim, and because their proposed accrual dates are wrong, the Court should reject

their time-bar arguments for both the state and federal claims.  Even if the Court were to find that

a time-bar might apply, moreover, Plaintiffs have plead facts as described above that lead to a

plausible invocation of various exceptions to limitations periods in both state and federal law.

These include equitable tolling on state claims, as in *Russel Packard*, and continuing violation

tolling, as is expressly allowed for Plaintiffs' Section 1985 claims and tacitly allowed in Section

1983 claims, as explained in Plaintiffs' prior briefing on this topic in reply brief to Ogden City's

opposition to their motion to file the present Amended Complaint. (Doc. No. 46 at pp. 2-4.)

Plaintiffs hereby incorporate those arguments herein for the sake of economy.

Finally, the Weber Defendants do not explain how the Plaintiffs' claims related to being

included on the gang database as of the date of this brief could possibly be barred by the statute

of limitations.

**IX.     Plaintiffs' State Law Claims are not Barred by Utah Law**

The Weber Defendants' arguments on Plaintiffs' state law claims, as usual, are premised on a

cramped misreading of the Amended Complaint and lack legal merit.

**A.  *Spackman* is No Bar Here**

The Weber Defendants' arguments on *Spackman v. Board of Educ. of Box Elder Cty. Sch.

Dist.*, 16 P.3d 533 (Utah 2000), like their time-bar arguments, have likely already failed because

the Court has recently considered whether amendment here was futile because of *Spackman* and

then allowed the amendment. In any event, the Weber Defendants are wrong on each element of their *Spackman* defense.

### 1. Plaintiffs Suffered "Flagrant Violations" of Their Rights

In this case, the Defendants' violations of Plaintiffs' rights were flagrant and multiple. For example, it is long been established that pre-deprivation process is needed when, among other things, post-deprivation process is inadequate. *See generally*, *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). No reasonable person could have thought that post-deprivation process in the form of a served individual having to go to a state court, in an unspecified procedure, and perjure himself by claiming to quit a gang he never joined, or disprove that he was still a member of a gang he had already quit years before, would be remotely adequate. Moreover, it has long been established and obvious that agreeing to deprive civil rights based on ethnic animus violates the constitution. These are but two of the many of the flagrant violations Plaintiffs allege in the Amended Complaint.

### 2. The Existing Remedies Argument Fails

It is ironic that the Weber Defendants vigorously argue on the one hand that there is no merit to Plaintiffs' Section 1983 and Section 1985 claims and they should be dismissed, but then on the other hand argue that those claims are also adequate to address Plaintiffs harms. The Weber Defendants, as usual, want it both ways.

In any event, the Utah Constitution has at times been read by the Utah Supreme Court as more protective of rights than the United States Constitution. *See*, *e.g.*, *State v. Thompson*, 810 P.2d 415, 417-419 (Utah 1991) (holding that Utah constitution more protective of bank records than federal constitution). Because the two constitutions are not identical, it is up to the Weber Defendants, as the proponents of the *Spackman* defense, to make more than a generalized

assertion that the same interests seem to be protected by the two constitutions.  They have not

done so.  Because they have not shown that the state and federal remedies overlap significantly

enough to find as a matter of law that they are equivalent, the Weber Defendants have not carried

their burden of showing that the Section 1983 and Section 1985 claims are adequate existing

remedies.

### 3.  Injunctive Relief is Inadequate to Remedy Plaintiffs' Harms

On the requirement of showing that equitable relief would make Plaintiffs whole, the Weber

Defendants' argument is a meritless string of legal conclusions based on the Weber Defendants'

self-serving and erroneous version of the facts.  Addressing their points as they made them,

Plaintiffs point out that the injunction expressly barred Plaintiffs from using their non-

membership as a defense when prosecuted for violating it, and the collateral bar doctrine

prevented Plaintiffs from challenging the injunction's constitutionality as a defense to their

prosecutions.  The actual facts of the case thus made the potential of defeating an injunction-

related prosecution a practical impossibility.  Second, all attempted interventions in the nuisance

case were rebuffed, making any attempt by Plaintiffs to directly challenge it futile, and the

served individuals who ended up prevailing in the case had to file an extraordinary writ because

they were not allowed an appeal.  Plaintiffs did not make a motion to set the injunction aside, nor

would they have been allowed to, nor would making motion have been an adequate remedy.

Third, Plaintiffs do not even attempt to explain how the time reduction in Mr. McCubbin's

sentence for his injunction-related conviction makes him whole for all of the harms he suffered

based on all of the policies and practices listed at the outset of the argument section.  Likewise,

they do they explain how it is a remedy for Plaintiffs to have served their time for violating the

injunction concurrently with other sentences.  In sum, none of the "remedies" proposed by the

Weber Defendants were or are actual remedies, and none of them would make Plaintiffs whole for the damages they suffered in this case.

### B.  Governmental Immunity is No Bar

The UGIA is no bar to Plaintiffs' eighth or ninth claims.  Under *Peck v. State*, 191 P.3d 4, 7 (Utah 2008), a to assess a defense that the UGIA immunizes conduct, the court "assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." (citation omitted). The Weber Defendants falter on the first prong, offering no legal support for the proposition that the long list of unlawful policies and practices alleged in the Amended Complaint can be called a "government function" other than that behavior was something a government did.  This sweeping argument is unsupported and should fail.

### C.  Plaintiffs Filed a Notice of Claim

The Weber Defendants' argument about filing a notice of claim falls flat.  In an unfortunate lack of candor, the Weber Defendants do not inform the Court that Plaintiffs did file a notice of claim with Weber County in November 2014.  Rather, the Weber Defendants misleadingly conflate the actual requirement that a plaintiff *serve* a notice of claim with an invented requirement that a plaintiff must *plead* that she served the the notice.  None of the cases cited by the Weber Defendants dismiss a suit because a plaintiff *failed to plead* that they served a notice (a fact that can be inferred from the complaint), but because the party actually *did not serve* the notice.  Their argument on this point thus fails.

**D.  The UGIA Undertaking is Not a Bar to Suit**

Initially, Plaintiffs do not concede that the undertaking requirement in Utah Code §63G-7-601 is sound under either the Utah or federal constitutions.  This kind of specially carved out requirement for certain kinds of cases deserves court scrutiny.

In any event, it is improper of the Weber Defendants to address the undertaking requirement on a motion based on the face of the pleadings.  *See Hansen v. Salt Lake Cty*, 794 P.2d 838, 840 (Utah 1990) ("Failure to pay the undertaking is an affirmative defense not properly raised in a [Utah] rule 12(b) motion to dismiss, although it may be appropriate to raise the issue by a motion analogous to one made under [Utah] rule 12(k).")  It is likely the *Hansen* Court ruled this way because failing to post an undertaking "does not bar a suit" (*id.* at 841), and requiring a separate motion would encourage a court to make an order related to the undertaking before going through the seemingly pointless exercise of of dismissing without prejudice and allowing a refiling with the undertaking.

Even if the Court were convinced the Plaintiffs should have filed an undertaking for the eighth and ninth claims, the remedy is to dismiss them without prejudice to allow the Plaintiffs to refile and file the undertaking.  *Rippstein v. City of Provo*, 929 F.2d 576, 578 (10th Cir. 1991).  More efficient resolutions, however, would be to hold that the requirement does not apply, or to allow Plaintiffs a waiver of the requirement, or to allow leave for Plaintiffs to file a *de minimis* bond as part of its order on this Motion should the Court deny it.

**E.  Utah Code § 78B-3-104 Does not Apply to Defendants**

Utah Code §78B-3-104 only applies to "law enforcement officers," and does not contain a definition of "law enforcement officers."  Utah Code § 53-13-103, which appears to be the most commonly referred-to definition of "law enforcement officers" in the Utah Code, however, does

31

not include county attorneys in its list of "law enforcement officers." *See id.* at §53-13-103(1)(b).  Likewise, the Weber Defendants likewise point to no legal authority holding that this code section's requirements would apply to counties or county attorneys. Plaintiffs' entire argument on this code section thus fails.

### Conclusion

For all of these reasons, the Court should DENY the Motion.

Respectfully submitted this 3rd day of February, 2017.

SIGNED

<u>s/ John Mejia</u>

| | |
|---|---|
| John Mejia (Bar. No. 13965) | Randall Richards (Bar No. 4503) |
| Leah Farrell (Bar. No. 13696) | Richards & Brown PC |
| ACLU of Utah Foundation, Inc. | 938 University Park Blvd, Suite 140 |
| 355 N. 300 W. | Clearfield, UT  84105 |
| Salt Lake City, UT  84013 | phone: (801) 773-2080 |
| phone: (801) 521-9862 | email:Randy@richardsbrownlaw.com |
| email: aclu@acluutah.org | |