Frank D. Mylar
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
Fax:    (801) 858-0701
Mylar-Law@comcast.net

Attorney for Defendants Weber County and Christopher Allred

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LELAND KIM McCUBBIN, JR. and DANIEL JOSEPH LUCERO,<br><br>Plaintiffs,<br><br>v.<br><br>WEBER COUNTY, OGDEN CITY, and CHRISTOPHER ALLRED, in his official capacity,<br><br>Defendants. | **WEBER COUNTY AND CHRISTOPHER ALLRED'S MOTION FOR SUMMARY JUDGMENT and MEMORANDUM IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Case No. 1:15-cv-132-CW<br>Consolidated with Case No. 1:15-cv-133<br><br>District Judge Clark Waddoups |

Defendants, Weber County and Christopher Allred (hereinafter Weber County or County Defendants), through their attorney Frank D. Mylar, respectfully move this Court for Summary Judgment on all claims. Defendants expressly incorporate their prior opposition memorandum to Plaintiffs' motion for partial summary judgment (Doc. No. 113), Ogden City's opposing memorandum (Doc. No. 108), and Ogden City's summary judgment motion (Doc. No. 122) into this motion as additional grounds for dismissal. Claims 8 and 9 of the Amended Complaint were dismissed by the Court in a prior order. (Doc. No. 81). This present motion should be granted based upon the affidavits, depositions, exhibits, and the following arguments:

## INTRODUCTION AND RELIEF SOUGHT

It is not unconstitutional for a governmental entity to reduce a large gang problem in a local city by pursuing a civil injunction in state court to abate that problem as it relates to actual and present gang members.  That is exactly what Weber County did when it filed a complaint and moved the state district court for a preliminary and permanent injunction.  It was never Weber County's policy or practice to serve "non-gang members" with the injunctive orders and there is no evidence that it ever did so.  In fact, the policy was the opposite.

Weber County further never had the opportunity to provide legal advice or its opinion on whether Plaintiffs in this case should ever be served or arrested.  After Plaintiffs were served and arrested by Ogden City, charges were filed for violation of the gang injunction, in addition to other state law violations.  Weber County never heard any claim from Plaintiffs or their attorneys that they might not be present and active gang members.  There were no actions by Weber County that could make it liable to Plaintiffs.  Plaintiffs settled all claims with Ogden City, so this motion only pertains to Weber County.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Weber County expressly incorporates and relies upon all statements of additional facts from their Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment and begins its numbered paragraphs below from where that memorandum left off.  (Doc. No. 113 ¶¶ 1-44):

45.     Presently there is no injunction against any gang or any gang member in any court in Weber County nor has there been since before this suit was filed.  (2nd Allred Decl. ¶ 1).

46.     No efforts or actions were taken by Weber County to enforce the Ogden Trece injunction or to prosecute a violation of the injunction after the Utah Supreme Court entered its order vacating the injunction order on about October 18, 2013.  Weber County absolutely will not seek a gang injunction order that is exactly like the previous gang injunction.  To the contrary, the County is always looking for ways to improve law enforcement effectiveness and would pursue changes in an injunctive order that would be more beneficial to the public and law enforcement agencies.  However, there are presently no specific plans to pursue a gang injunction nor have there been since the Utah Supreme Court's decision vacating the injunctive orders.  (2nd Allred Decl. ¶ 27).

47.     Weber County does not have specific plans for another gang injunction.  They have talked about it.  If they were to file another injunction petition, they would have to basically start over and evaluate the gang and start from scratch and make sure that their structure is similar.  It would be a different injunction in some ways.  (Weber County Defs.' Ex. 15 - Allred Depo. 85:1-22).

48.     Weber County has no plans to ever serve the Plaintiffs with a future gang injunction or to name them as parties in a future gang injunction lawsuit.  In addition, Weber County would instruct any agency not to serve a proposed defendant with a gang injunction if there is a reasonable doubt that the person is not an active and present gang member.  (2nd Allred Decl. ¶ 28).

49.     Weber County continues to contemplate a potential future injunction against the Ogden Trece or other gangs sometime in the future, but no definite plans, actions, or steps have

been taken toward actually filing a petition and obtaining an injunctive order of any kind against any gang.  (2nd Allred Decl. ¶ 29).

50.     If a new gang injunction is to be filed against Ogden Trece sometime in the future, it would absolutely not be the same injunction that was originally filed for several reasons.  First, Weber County could never guarantee that a judge would enter the same injunction.  Second, since the original Trece injunction was obtained by a Utah State District Court in September 2010, one Utah Supreme Court decision has given at least some clarity as to what needs to change in terms of service of the gang.  Third, there have been very few judicial decisions, but before a new injunction would be pursued by Weber County, the County would review all decisions rendered around the United States and have them analyzed by attorneys to determine if other procedures could be implemented into a future Ogden Trece injunction.  Weber County would incorporate and include possible modifications as found by the caselaw.  (2nd Allred Decl. ¶ 30).

51.     Specifically, the Ninth Circuit Court of Appeals' decision in *Vaquez v. Rackauckas* *734 F.3d 1025 (9th Cir. 2013)* did not come to Weber County's attention until after the Utah Supreme Court had vacated the injunctive orders.  Although this case is not precedent in Utah state or federal Courts, the County Attorney's Office would nonetheless review it for purposes of determining what changes Weber County might potentially make to a future gang injunction in Utah.  (2nd Allred Decl. ¶ 31).

52.     If Weber County at some future date decides to attempt to pursue a gang injunction against Ogden Trece through the courts, it would do more review of state and federal court decisions throughout the country to see if there are any helpful changes that could be incorporated in the pursuit of a new injunctive order.  (2nd Allred Decl. ¶ 32).

53.     In any possible future request for a state injunctive order, Weber County would request a gang injunction with more procedural protections for both the person being served and for protection of the officers and would seek to provide additional clarity on some points that were implied in the prior injunctive orders.  (2nd Allred Decl. ¶ 33).

54.     For example, Weber County by practice would not agree to have any person served with the injunction unless Weber County could prove beyond a reasonable doubt that the person being served and prosecuted was in fact an Ogden Trece member.  Weber County would seek to have this information specified in the injunctive order.  (2nd Allred Decl. ¶ 34).

55.     In addition, it is currently Weber County's policy that it would seek to provide additional procedures for all persons served with a future gang injunction to more clearly clarify that they may dispute whether the injunction should apply to them.  Although it is Weber County's position that this was inherent in the prior gang injunction, it is another area where additional clarity would be added.  Other procedures and more clarity would most certainly be sought from the court in any future gain injunctive orders.  (2nd Allred Decl. ¶ 35).

56.     Based upon the fact that Plaintiff McCubbin opted out of the Trece gang on about April 24, 2012, he is not considered an Ogden Trece member by Weber County and would not be served with any future injunction against the Ogden Trece by Weber County.  (2nd Allred Decl. ¶ 36).

57.     Plaintiff Lucero claims he never was an Ogden Trece member.  Weber County has never had any personal knowledge whether he was a Trece member or whether he is not a member now apart from his claims in this present lawsuit.  In any event, Mr. Lucero would never be included in any future injunction if Weber County could not prove beyond a reasonable doubt that

he was a current and active Trece member.  If he is not a gang member, he will not be served by Weber County.   (2nd Allred Decl. ¶ 37).

58.     Weber County has and had, during the relevant time of this suit, no control over what other government agencies do or do not do and what procedures they may or may not provide in terms of serving any state court order, including the injunctive orders at issue in this case.  For example, Weber County has no control over the law enforcement agencies or the attorneys or officers in the various city governments throughout Weber County.  (2nd Allred Decl. ¶ 38).

## ARGUMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed R. Civ. P. 56(a).  Rule 56(e) of the Federal Rules of Civil Procedure requires a party opposing a supported motion for summary judgment to submit affidavits and admissible evidence showing a dispute of material fact on every essential element of a plaintiff's claim which he will bear the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  When the defendant points out an absence of proof on an essential element of the plaintiff's case, the burden shifts to the plaintiff to submit admissible evidence that will create a question of fact.  *Id.* at 322-23.  Based upon the undisputed facts, a reasonable jury could not return a verdict in Plaintiffs' favor on any claim.  In other words, Plaintiffs cannot show a disputed issue of genuine fact with admissible evidence on every single element of any one of their claims and, therefore, County Defendants' Motion for Summary Judgment must be granted.

## I.      Plaintiffs' Cannot Show Municipal Liability for Weber County on any claim.

Plaintiffs are not suing any Weber County Defendants in their personal capacities.  For this reason, both their state and federal must meet the heavy burden of showing that the County took

specific action and directly caused their constitutional deprivations with a culpable state of mind. Based upon the admissible evidence in the record, Plaintiffs cannot meet this burden and the Court must dismiss all state and federal claims against Weber County.

There are several elements a plaintiff must prove to establish that a county violated his state and federal constitutional rights.  First, a plaintiff must have Article III standing.  If he can show that, he must secondly prove (1) a Constitutionally defective policy or custom; (2) the final policymaker who implemented the policy or custom acted with "deliberate indifference" to the constitutional rights of the Plaintiffs; (3) the policy or custom "directly caused" and was the "moving force" behind an underlying constitutional violation that caused constitutional harm (*See generally Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997)); and (4) Plaintiff must show an underlying <u>constitutional</u> violation by a county employee before the county can be held liable under § 1983.  *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Plaintiffs cannot show a disputed fact on all of these necessary elements of their claims and, therefore, summary judgment is mandated.

### A.    Plaintiffs Lack Article III Standing.

This point is similar to the "no causal or affirmative link" argument relied upon in Weber County Defendants' Opposition Memorandum to Plaintiffs' Partial Motion for Summary Judgment.  In Plaintiffs' Reply Memorandum (Doc. No. 136 at 14), they infer that it is not a big concern that Weber County did not serve the Plaintiffs with the injunction, arrest them for violating injunctive orders, and did not provide legal advice or input on whether to serve or arrest them.  However, not only is service crucial to show liability against the County, without it, Plaintiffs lack standing.

Standing is a jurisdictional threshold issue.  *Keyes v. School Dist. No. 1*, 119 F.3d 1437, 1445 (10th Cir. 1997).  To invoke the Article III jurisdiction of the federal courts, plaintiff must have an actual case or controversy.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  *See also Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Plaintiffs "must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions."  *Lyons*, 461 U.S. at 101.  The injury must be direct, immediate, and real, not conjectural or hypothetical.  *Id.*  "A party has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision."  *Skrzypczak v. Kauger*, 92 F.3d 1050, 1052 (10th Cir. 1996) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).  The injury additionally, requires an "invasion of a legally-protected interest."  *Skrzypczak*, 92 F.3d at 1053.  Plaintiffs cannot show these requirements as to Weber County because Weber County's actions are not the cause of any of their alleged constitutional deprivations.

Since the Court ruled on Defendants' motion for judgment on the pleadings over a year ago, several crucial facts have been established with undisputed evidence in the record that affects the standing issues for Plaintiffs' claims.  Plaintiffs cannot show they were injured by Weber County, a causal connection between Plaintiffs' injury and Weber County's conduct, nor can the injury be redressed by this court as to Weber County.  Specifically related to standing are the undisputed facts that Weber County did not serve or arrest the Plaintiffs and did not render legal advice or input as to whether they should be served or arrested.  (Allred Decl. ¶ 21, Doc. No. 115 at 6).  In fact, they did not even know they were being served and never had input on who was

being served and when.  (Allred Decl. ¶ 12, Doc. No. 115 at 4).  Weber County further had no knowledge that Plaintiffs did not admit to being active Trece members at the time of service and arrest.  (Smith Decl. ¶¶ 19-20, Doc. No. 116 at 6; Allred Decl. ¶ 16, Doc. No. 115 at 5).  Finally, Weber has no ownership, access to, or control over a gang data base.  (Allred Decl. ¶ 10, Doc. No. 115 at 3).  Weber County cannot put people on or take them off a gang database.  (*Id.*).  Weber County has no knowledge whether the Plaintiffs were even on the database at any time.  Weber County could take no action if this Court ordered that they remove Plaintiffs names from a database in that they do not own, control, or manage the gang data base or list in any manner.  These facts are important because the injunction would never have applied to Plaintiffs if they had not been served.  (Allred Decl. ¶ 12, Doc. No. 115 at 4).

The injunctive orders state they only apply to "Ogden Trece and its members."  (*See* Doc. No. 94-4 at 2, and Doc. No. 94-5 at 2).  If Plaintiffs were not Trece members when they were served, then they should not have been served by anyone.  The Plaintiffs could have raised the issue with the state court that they were not "members."  There is no reason to believe that Weber County would have ever served them or that Weber County would have ever rendered an opinion that they should be served, if given that chance.  (Allred Decl. ¶ 14, Doc. No. 115 at 4).  It is legal error for this Court to assume that Weber County would have agreed to have them served based upon the undisputed policy and practice of Weber County.   The practice of Weber County, which is now known to be contrary to Plaintiffs' allegations in their opposition to the motion for judgment on the pleadings, was to only tell other law enforcement agencies, such as Ogden, that a person could only be served if it could be proved beyond a reasonable doubt that the person served is an active and present Trece member.  (Allred Decl. ¶ 12, Doc. No. 115 at 4).  These facts are contrary

9

to the allegations in the amended complaint, which had to be taken as true when the motion for judgment on the pleadings was brought and, therefore, the court denied that prior motion.  Now, to the contrary, the court must look at the undisputed facts on these issues from the affidavits and depositions.

If the injunctive order should never have applied to Plaintiffs and they should never have been served, and in fact they were not served by Weber County and Weber County never had the opportunity to render an opinion on whether they should have been served, then Plaintiffs do not have standing to even assert a claim for any wrong flowing from the injunctive orders as applied to Plaintiffs against Weber County.  It is pure speculation by Plaintiffs to assume that Weber County would ever have approved serving them when they never had that opportunity.  The injunction itself, would not be unconstitutional as applied to an active and present Trece member, especially if they were already on probation or parole.  Further, there is no evidence that Ogden was routinely serving non-active Trece members or nonmembers.  More importantly, there is no evidence that Weber County ever knew that Ogden ever served a non-Trece member.

In addition, to the extent that Plaintiffs' claims could be seen as attacking the actual civil injunction orders of the state court, they would be barred by the *Rooker-Feldman* doctrine and for this reason the court should not entertain standing.  *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

With these undisputed facts, Plaintiffs did not suffer an injury in fact at the hands of Weber County.  Although these facts show that there is no affirmative causal link, they also equate to a lack of standing in this case.  The Court could not fashion an order against Weber County to grant Plaintiffs the relief they request.  Plaintiffs already received a substantial settlement from Ogden

City for their alleged actions, but Weber County can only be liable for its direct actions.  This lack

of standing applies to both monetary and injunctive relief claims since it shows that Weber County

did not take action that could make it liable to the Plaintiffs for the harms they suffered.  Yet there

are several other reasons Plaintiffs lack standing.

>   **B.**     **Prospective Relief Claims are Moot.**

Plaintiffs claim their state and federal constitutional rights were violated when an

injunction was obtained and enforced against them.  Yet the injunction was vacated for lack of

proper service by the Utah Supreme Court well before this suit was filed.  Any prospective claims

relating to an alleged wrongful enforcement of the Injunction are moot.  Plaintiff McCubbin further

admits that he is no longer a gang member and that the Injunction no longer applies to him.

Although he was sentenced concurrently for other state criminal convictions, the state sentencing

judge reduced his sentence by 60 days because he said he was no longer a gang member.  He

further got the conviction for violating the Injunction vacated based upon the Supreme Court order

(Am. Compl. ¶ 139, Doc. No. 50 at 18).  Since there is currently no injunction or order against the

Plaintiffs, they have no injury to redress and lack standing and all prospective relief is moot.  Mr.

Lucero further claims he is not a gang member and he also would not be someone that would be

served by Weber County if this is true.  More importantly, Weber County would not pursue the

exact same injunction against anyone in the future based upon the undisputed record from

affidavits and depositions.  (2nd Allred Decl. ¶ 30; Allred Depo. 167:15-168:4).

Plaintiffs, in their opposition to motion for judgment on the pleadings, referred to

newspaper articles which quoted Weber County officials saying they would obtain the exact same

injunction.  While such unsworn allegations may have been sufficient to survive a motion to

dismiss, they are not sufficient for summary judgment.  Newspapers always give their spin on their interviews and nothing is sworn to under oath in a newspaper, but regardless of whether the statements were ever once true, they most certainly are not true now.  (2nd Allred Decl. ¶ 30; Allred Depo. 167:15-168:4).

Weber County will not seek to obtain the exact same court order as the last injunctive orders because they will add additional clarity that was assumed to apply to the last injunction. (2nd Allred Decl. ¶ 33).  Issues that Weber County took for granted in the last injunction, such as having to prove that a person served was an actual, present, and active Trece member would be included, having to prove that beyond a reasonable doubt, and additional procedural protections obtained from caselaw that may be decided by the time an injunction would be pursued.  Then Weber County would have to again convince a different judge as to the legality and appropriateness of such an injunction.  (2nd Allred Decl. ¶ 30).  In fact, Weber County is not even certain of the modifications that would be made except that there will most definitely be more changes and different procedural safeguards.  At this point there are no specific plans by Weber County to file any sort of injunction.  (2nd Allred Decl. ¶ 29).  Documents have not been drafted and new caselaw has not been reviewed and applied.  Even the decision in this case could have some bearing on what a new injunction would look like, if one is ever filed.  (2nd Allred Decl. ¶ 32).

A mere statement from a prosecutor that he will not prosecute anyone under a statute that was "still on the books" was sufficient to eliminate standing from the "fear of being prosecuted under a statute" even though other persons were prosecuted in the past. *Bronson v. Swenson*, 500 F.3d 1099, 1108 (10th Cir. 2007) (*citing Mink v. Suthers*, 482 F.3d 1244, 1253-55 (10th Cir.

2007)).  In *Mink*, it was sufficient that a District Attorney wrote a "no file" letter even though the mere letter may not bind future District Attorneys.  *Id.*  Even "sworn assurances" by a prosecutor that he or she will not prosecute are sufficient to destroy standing.  *Id.* (internal citation omitted).  However, in this case there was never a statute on the books.  Since 2013, there has not even been an injunctive order to enforce.  It is too speculative that there may be a future injunction to find standing in this case, especially when an independent Judge would have to enter the order.  Even if there might be a new gang injunction at some point, it will have additional procedural protections that have not even been completely contemplated at this time.  Since it is speculative as to whether a state court will even order a new injunction, whether the County will bring such a suit, and whether it will be different and have more procedural protections, this Court cannot hear any injunction relief claims because they are moot.

It is further significant, and cannot be overlooked, that Plaintiffs both pled to violations of the gang injunctions and never raised any issues as to whether they were or were not gang members.  They waived their constitutional rights and any prior procedural defects when they pled to the offenses.  *See* Utah R. Crim. P. 10(c) and 11(e)(3).  "The Constitution does not protect procedures for procedures sake."  *Morgan v. McCotter*, 365 F.3d 882, 889 (10th Cir. 2004) (*quoting Rector v. City & County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003)).  These several layers of waivers further undermine the Plaintiffs standing in this suit, requiring dismissal of all claims.

### C.    Weber County acted as State Agents in enforcing a state Court Order.

Based upon this Court's ruling on the second motion for judgment on the pleadings, Weber County is only asserting Eleventh Amendment immunity on behalf of Weber County as it relates

to any actions relating to prosecuting Plaintiffs for violations of state law and the state injunctive orders. Weber County had no involvement with the gang database as stated above, so that claim does not apply to Weber County. However, Weber County is shielded from monetary damages, declaratory and injunctive relief for Plaintiffs remaining federal claims because it acted as agents of the state of Utah.

It is well accepted law that the state cannot be sued for monetary damages or injunctive relief. *Edelman v. Jordan*, 415 U.S. 651 (1974) and *Hafer v. Melo*, 502 U.S. 25, 31 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A county Sheriff may or may not be acting as an agent for the state when performing certain law enforcement functions, depending upon state law. *See McMillian v. Monroe County*, 520 U.S. 781 (1997). The Tenth Circuit Court of Appeals has similarly ruled that a county prosecutor may also be acting as a state agent for Eleventh Amendment immunity purposes when prosecuting criminals. *Nielander*, 582 F.3d 1155, 1164 (10th Cir. 2009) (*quoting Schroeder v. Kochanowski*, 311 F. Supp.2d 1241, 1254 (D. Kan. 2004)). These cases are applicable to McCubbin and Lucero's claims against Weber County.

Plaintiffs are suing Weber County for the actions the County Attorney took by enforcing a state court order after another government entity served Plaintiffs with the civil lawsuit's order and arrested them and requested that they be prosecuted for various state criminal law violations. They were never prosecuted for any County or City ordinances by Weber County. (Doc. No. 81 at 29-30). The gang injunctive orders are from a state district court. The criminal prosecutions by Weber County against Plaintiffs were brought in the name of the "State of Utah" for violations of state (not county or Ogden City) criminal laws and the state gang injunction violations were tagged onto these prosecutions. These undisputed facts show that in prosecuting Plaintiffs for state law

and state court violations, Weber County was acting on behalf of the state of Utah and is immune from damages.

**D.      Weber County is not liable to the Plaintiffs based upon "municipal liability."**

As stated in the opening paragraphs of Point I, Plaintiffs have several legal requirements they must prove to show county liability.  Plaintiffs cannot show sufficient personal participation by Weber County in making them subject to the gang injunction and for this reason the Court should deny their motion and enter summary judgment for Weber County on this issue for all of Plaintiffs claims as argued in Weber County Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment.  (Doc. No. 113 at 20-24).  However, Plaintiffs have several other barriers to supervisory liability even if they could show direct personal participation.  Plaintiffs must show (1) An underlying constitutional violation by a County employee, (2) a constitutionally defective policy, (3) that the final policymaker implemented the policy and acted with "deliberate indifference to the constitutionally rights of plaintiff, and (4) that the policy "directly caused" and was the "moving force" behind the underlying constitutional violation.  See generally, *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).

**1.      Plaintiff cannot show an underlying constitutional deprivation by Weber County.**

Plaintiffs must show an "underlying constitutional violation" by at least one County employee before this Court may even consider whether the County might be liable.  *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  In the prior Motion for Judgment on the Pleadings Order, the Court correctly points out that if the final policymaker directly causes a Constitutional violation, by taking clearly unconstitutional actions that cause the violation, it may be that a separate underlying violation by

another employee is not required.  (Doc. No. 81 at 34).  The Court in the Motion for Judgment on the Pleadings gave Plaintiffs the benefit of the doubt on their claims in their pleadings at that time. However, this Court now must consider the undisputed facts from the depositions and affidavits. The undisputed facts show that neither Dee Smith nor Chris Allred engaged in unconstitutional action to directly cause Plaintiffs' constitutional harm.  Therefore, an underlying constitutional violation must be proved by Plaintiffs.

Neither Dee Smith nor Chris Allred served the injunctive orders upon Plaintiffs, they did not arrest them, and they never had knowledge that they did not admit to being Trece members until this current suit was filed.  In addition, there was nothing patently unconstitutional about Weber County's policy.  Again, the actual policy was not as was alleged in the Amended Complaint.  The undisputed facts are that a person could not and should not be served unless it could be proved beyond a reasonable doubt that they were a Trece member.  Weber County further only tagged on gang injunction charges to more serious charges and always had them sentenced concurrently, so that the convicted person would be serving the time for the underlying charge rather than just the gang injunction violation charge.  (This policy may not have been the same for Ogden).  Moreover, Weber County had no control as a matter of law over anything Ogden or other city police officers did.  Weber County never had a policy to target people based upon race.  Weber County never had any ability to affect for good of bad a gang database.  Because of these undisputed facts, Plaintiffs must show an underling constitutional violation by a Weber County officer

Plaintiffs failed to identify a county employee who violated their rights.  Their vague and conclusory claims that "defendants" did this or that are insufficient as a matter of law even at the

pleading stage.  *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).  Plaintiffs bear the burden of both identifying a particular county employee and showing there is no dispute of fact that he acted unconstitutionally toward Plaintiffs.   Although Plaintiffs showcase a Jail Deputy, named Gary Worthen, because he served a few people in Jail, he only took such actions as an "agency assist" for Ogden City, not for Weber County.  (Weber County Defs.' Ex. 16 - Worthen Depo. 20:21-21:21).   Certainly, Deputy Worthen's actions are not sufficient to be attributed to Weber County.  Further, Worthen never served Plaintiffs, even though one of them was served by Ogden City when they were in Jail.  Since Plaintiffs have not shown an underlying constitutional violation by a county employee, this Court must dismiss all of Plaintiffs claims.  On the other hand, even if Plaintiffs could show that at least one Deputy violated Plaintiffs' rights, then they would still have to show several other requirements to succeed on their claims.

### 2.      Plaintiffs Cannot Show a Constitutionally-defective County Policy:

Plaintiffs infer in their motion that the terms of the injunction are unconstitutional, and it was the County's official policy to deprive Plaintiffs of their rights by subjecting them to the terms of the injunction.  They further allege that the injunction could be more definite on how to define "gang member" and that the terms of the injunction did not require the state to prove that a person served with the injunction was a gang member. However, policies and training that are less than perfect or have "general deficiencies" do not support a constitutional claim.  *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999).   On the other hand, there is nothing unconstitutional about the gang injunction if the persons served are in fact active and present gang members and perhaps on probation or parole and are already convicted felons.  However, as stated above, Weber County

never served Plaintiffs with an injunction so it could not have "subjected" them to its terms and since Plaintiffs claim they are not Trece members, they lack standing to object to the application or wording of the injunction.  The injunction itself says it applies only to the Ogden Trece gang and its members.  (Doc. No. 94-4 at 2, and Doc. No. 94-5 at 2).

Plaintiffs seem to claim that the state court order, issued by an independent state court judge is in fact the Weber County policy.  However, a mere court order cannot be considered a county policy for purposes of Section 1983 liability.  Plaintiffs must show that county "lawmakers" or final "policymakers" decisions' put in place the policy or practice of the County.  *See generally Connick v. Thompson*, 563 U.S. 51, 60 (2011).  A court order is obtained from an impartial judge who is an agent of the state, but not the County.  The County was not obligated to serve anyone with the order or to arrest them and they did not.  A County Attorney is obligated by Utah state law to enforce a state court order when a violation of it is brought to its attention by local law enforcement, in this case Ogden City Police Department.  It was not something that was entered by the final policymaker or policymaking body of the County as required for Section 1983 liability.  Instead, the "policy" in this case is an order entered by a judge after preliminary and final injunction hearings.  As a matter of law, it cannot be considered a county policy for purposes of Section 1983 liability.

Moreover, the policy claimed by Plaintiffs in their pleadings is not a policy ever implemented by Weber County based upon the undisputed facts.  After reviewing the depositions and affidavits on summary judgment, the real Weber County policy requires that it be proved by the state "beyond a reasonable doubt" that the person served was an active and present Trece member.  (Allred Decl. ¶ 11, Doc. No. 115 at 3-4).  Weber County would never prosecute a "stand

alone gang violation," but instead always brought more serious charges or felonies to prosecute with a gang injunction charge.  Weber County further always sought concurrent sentences with the gang injunction charges.  (Allred Decl. ¶ 23, Doc. No. 115 at 6).  Weber wanted to encourage members to "opt out" of the gang and never opposed criminal defendants who wanted to opt out. (Allred Decl. ¶ 17, Doc. No. 115 at 5).  These are all part of the policy or practice of Weber County relating to the gang injunction.  Further, if Plaintiffs Lucero or McCubbin had claimed that they were not gang members, Weber County (i.e. the state) would have had to prove that they were gang members, but they never raised the issue during their prosecution.  Instead, they both summarily pled to the multiple offenses and were sentenced concurrently with the higher offenses. These practices cannot be considered unconstitutional.

Without the identification of an unconstitutional policy, Plaintiffs fail to meet the first prong of *Brown* and all claims against the County must be dismissed on this basis alone.  *Brown, 520 U.S. at 403-404*.  A plaintiff must prove that "action pursuant to official municipal policy" caused their injury to impose liability on a local government.  *Connick v. Thompson, 563 U.S. 51, 60 (2011)* (*quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)*). Generally, only officials who have "final policymaking authority" may subject a municipality to § 1983 liability.  *Pembaur v. Cincinnati, 475 U.S. 469, 482-483 (1986)*.  Therefore, Plaintiff must show liability exists for the "final policymaking authority" which is the County Attorney in this case.  However, even the "policy or practice" alleged in the amended pleadings and argued on the motion for judgment on the pleadings, are not shown to be the actual policy based upon the undisputed facts.

The facts alleged in Plaintiffs' Amended Complaint (Doc. No. 50) have been disproved by depositions and declarations and cannot be considered admissible evidence of a policy on summary judgment.  Rule 56 does not allow a party to rest on the allegations of pleadings, but rather must cite to admissible evidence to show a dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material only if, "under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction*, 717 F.3d 760, 767 (10th Cir. 2013).  It is further not sufficient for a plaintiff to show that the policy to has flaws or to point out areas where it could be improved since Plaintiffs must show that the policy itself violated the Constitution. *Bd. Of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-4 (1997).  Plaintiffs cannot produce evidence of an unconstitutional policy in this case.

In this case, Dee Smith was the County Attorney and the sole policymaker for the County regarding criminal prosecutions by the County for the state at the relevant time in 2010 through 2012.  Ogden City was not acting under the authority or color of law of Weber County when it served Plaintiffs or arrested them for violations of the injunctions.  Ogden operated under its own policies and practices as independent and apart from Weber County.  For this reason, even if a Weber County policy was identified, it was not acted on or implemented by Ogden City.  Ogden had their own policies and practices that they followed.  The policy or custom that Weber County operated under was constitutional as the policy is clarified by admissible evidence submitted by Weber County in its affidavits and depositions.

Weber County's practice and training was that only active and present Ogden Trece members could be served with the injunction and prosecuted for violations of the injunction. Weber County did not serve Plaintiffs nor did it have anything to do with the Trece database list. (Smith Decl. ¶ 7, Doc. No. 116 at 3).  If it can be considered a policy, the practice was to instruct all who asked that only active and present Trece members could be served and then only if it could be proved "beyond a reasonable doubt" that they were active present members.  The policy was not to give advice that would "increase" the names on the list, but to narrow them down.  "The intent was to make every effort possible to only serve presently active members and not merely gang members or associates."  (Smith Decl. ¶ 8, Doc. No. 116 at 3).  Weber County believed and understood that this is what Ogden was doing in who they served.  (Smith Decl. ¶ 9, Doc. No. 116 at 3).  Weber County interpreted the injunction to mandate this and Weber never determined who would be served.  (Smith Decl. ¶ 10, Doc. No. 116 at 3-4).  Although Weber County had nothing to do with maintaining or controlling the Trece list, it did believe that strict requirements were followed under Federal Regulations in addition to Ogden City P.D. stringent requirements.  (Allred Depo. 39:8-40:1; 28 CFR Part 23).  While Plaintiffs may claim that they could improve upon this policy, nothing is unconstitutional about it and for this reason, Plaintiffs cannot show this essential element necessary to succeed on their claims.

### 3.    The Final Policymaker Did Not Act with "Deliberate Indifference"

Plaintiffs bear the burden of proving that the final policymaker acted with "deliberate indifference" in implementing an unconstitutional policy.  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).  Even if they could show an unconstitutional policy, Plaintiffs cannot show that the final policymaker acted with "deliberate indifference."  Plaintiffs fail to allege in their amended

complaint any wrongful acts of the final policymaker, Dee Smith, that could support a claim that he acted with deliberate indifference to Plaintiffs' constitutional rights in implementing an unconstitutional policy or training.  As stated above, there is nothing obviously unconstitutional about a policy of serving present and active gang members with a state court-ordered injunction.  If this is done, there is no violation of law.  Not once in their motion do Plaintiffs ever suggest that Dee Smith, as the final policymaker, ever act with "deliberate indifference."  Deliberate indifference is defined as the same legal standard as criminal recklessness and requires that the official have "actual knowledge" of a substantial risk of constitutional harm.  *See generally Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).  Contrary to some older case law in the Tenth Circuit, all recent case law mandates that "deliberate indifference" is a required element of <u>all</u> Section 1983 claims against a governmental entity.  For example, "[i]n later cases, the Supreme Court required a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury."  *Schneider v. City of Grand Junction*, 717 F.3d 760, 769 (10th Cir. 2013).  There is no evidence before this court where a reasonable jury could find "deliberate indifference" by the final policymaker.  The Court cannot take a leap of faith to infer a "culpable state of mind" of the final policymaker.  For this reason alone, the Court must dismiss all of Plaintiffs' claims against Weber County.

In addition, the prosecutors who prosecuted Plaintiffs for gang injunction violations, did not act with deliberate indifference toward their constitutional rights.  They acted as "state agents" and brought the claims in the name of the state against Plaintiffs.  (Doc. No. 113-3; Doc. No. 114-2).  The County is entitled to Eleventh Amendment immunity for its role in acting as a state agent in prosecuting state crimes.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  They never

heard any claim that Plaintiffs were not Trece members or that they ever disputed it.  (Smith Decl. ¶ 18, Doc. No. 116 at 5).  Plaintiffs pled to the injunction violation offenses along with other more serious state law charges.  (Allred Decl. ¶ 24; Doc. No. 107-5; Doc. No. 107-6).  Weber County never prosecuted Plaintiffs for stand-alone injunction offenses.  (Smith Decl. ¶ 17, Doc. No. 116 at 5; Allred Decl. ¶ 23, Doc. No. 115 at 6).  They always obtained "concurrent sentencing" on Plaintiffs' cases so that prison or jail time was served for the underlying offense apart from the gang injunction crime.  They did not oppose McCubbin's opt out request even though they did not hear that he was previously jumped out.  Only Smith heard he was jumped out, but then only at the time of the opt out.  (Smith Decl. ¶ 19, Doc. No. 116 at 6).  Therefore, there is no deliberate indifference evidence of any of the actions of any County employee.

### 4.    Plaintiffs Cannot Show a County Policy "Directly Caused" their Harm.

A county may only be liable under Section 1983 if the "government body itself 'subjects' a person to a deprivation of rights or 'causes' a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal citation omitted).  Plaintiffs must show action pursuant to an official county policy caused their injury.  *Id*.  Official policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id*.  Plaintiffs must show either that an unconstitutional policy itself directly inflicted the Plaintiffs' constitutional harm or that it directly caused a county employee to do so.  *See Schneider v. City of Grand Junction*, 81 F.3d 760, 770 (10th Cir. 1996).  It is undisputed that the Weber County final policymaker was not personally involved in the actions of serving or arresting Plaintiffs and did not act with deliberate indifference in adopting an unconstitutional policy.  But even if he did implement such a policy, Plaintiffs

would still have to show "a direct causal link" between the policy and the constitutional harm to show county liability. *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997). "That is, a plaintiff must show that the [County] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. (emphasis added). Moreover, *Brown* ruled that more rigorous standards of causation must be employed when a plaintiff claims injury resulted from the acts of a municipal employee by stating, "rigorous standards of culpability and causation must be applied to ensure that the municipality [or county in this case] is not held liable solely for the actions of its employee." *Id*. at 405. *Brown* further states that claims against a governmental entity which do not involve a claim that the entity directed or authorized the deprivation of federal rights, "present much more difficult problems of proof." *Id*. at 406. Plaintiffs cannot show that Weber County directed Plaintiffs to be served and arrested and so they cannot meet any of these legal requirements.

Plaintiffs essentially claim that Weber County is liable for the actions taken by Ogden City Police Department. This is a step even further removed from respondeat superior and is another form of vicarious liability which is not allowed under Section 1983. *See Connick v. Thompson*, 563 U.S. at 60. The fact that Ogden City took the action that deprived Plaintiffs of their rights, by serving them with the injunction in the first place, precludes or severs any potential "direct causal link" to Weber County. Plaintiffs cannot produce any case law where a second governmental entity is liable for actions taken by the first entity when there is no authority or chain of command between the two entities. The actions of Ogden City necessarily cuts any causal link to Weber County's policies.

In this case, where no County employee served the injunctive orders or arrested Plaintiffs for alleged violations of the injunctions, and the policy was to only serve active present gang members, they cannot show a "direct causal link."  The Ogden officers did not act pursuant to a Weber County policy and, therefore, a Weber County policy could not have "directly caused" the violation.  Ogden City acted pursuant to Ogden City policies and training.  Weber County's prosecutorial act of prosecuting a person arrested for multiple violations, including a gang violation, when the defendant pleas to the offenses and does not resist the fact that he is a Trece member, cannot be acts that could make the County liable based upon the direct causal link of its policy nor is a County policy implicated in such a process.

It is intuitive that when two agencies are involved in a law enforcement in general, but when only one agency takes action to serve or arrest, the other agency is generally not liable.  *See Deaton v. Montgomery Cty.*, 989 F.2d 885, 889-90 (6th Cir. 1993); *Arceo v. City of Junction City*, 182 F. Supp. 2d 1062, 1092 (D. Kan. 2002).   It has long been understood that a municipality (in this case a county) cannot be liable for the acts of others, especially if the others were acting pursuant to a "state policy" rather than a county policy.  *See Los Angeles County v. Humphries*, 562 U.S. 29, 33, 35 (2010).  A local government can only be liable when that government's policy or practice actually inflicts an unconstitutional injury upon the plaintiff.  *Id.* at 36.  In *Humphries*, Los Angeles County claimed that the acts were taken under the authority of state and not county policy, among other arguments.  The Supreme Court concluded that the county could only be liable for acts taken by the county pursuant to county policy for both monetary and prospective relief claims.  *Id.* at 33 and 36.

A somewhat similar situation existed in *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996), where a state investigation agency was working with the city police. The court noted, "Mr. and Mrs. Jenkins have offered no evidence or legal authority to support the notion that Agent Sabel, as a KBI agent [a state agent], could act as a policy maker for the City of Topeka." However, even in that case, an agent (Agent Wood) who worked for the city could not be found liable when he did not participate in obtaining the warrant, did not enter the residence until after it was searched and the home secured, and there was no evidence linking Agent Wood to any of the damage caused in the plaintiffs' home. *Id.* at 995.

When the actions of another agency violate the constitution, it cannot make another agency liable under Section 1983. That is, the acts of an employee from another agency in serving injunctive orders cannot implicate another separate agency not involved in the service or arrest. Similarly, if a police officer makes a determination to identify and arrest a person, but another agency that works generally with that agency, did not direct the arrest or even know about nor was ask legal advice as to whether the person could be arrested, the other agency cannot be liable. *Deaton v. Montgomery Cty.*, 989 F.2d 885, 889-90 (6th Cir. 1993).

## II.     Plaintiffs were not entitled to a pre-deprivation remedy.

Plaintiffs claim in their Amended Complaint that they were denied "pre-deprivation remedies" in violation of procedural Due Process under state and federal Constitutions. This argument cannot succeed for the reasons stated in Weber County's Opposition to Plaintiffs' Motion for Partial Summary Judgment. However, this claim must also fail for the reasons stated in Point I above.

### III.     Plaintiffs' Claim under § 1985 is not cognizable.

Plaintiffs allege in their Amended Complaint that Defendants violated 42 U.S.C. § 1985(3), based upon "ethnic animus" in choosing who to serve with the Injunction.   (Am. Compl. ¶¶ 167-168, Doc. No. 50 at 22-23).   For the reasons stated in Point I, this claim must be dismissed. However, the undisputed material facts clearly show there was no unlawful conspiracy between Weber County and Ogden City.   "A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means." _Singer v. Wadman_, 745 F.2d 606, 609 (10th Cir. 1984).   Claims under § 1985 require detailed allegations of an agreement and concerted conduct with a discriminatory motive.   _Hunt v. Bennet_, 17 F.3d 1263, 1266 (10th Cir. 1994).

Additionally, "[a] violation of section 1985 must include class-based or racially discriminatory animus." _Bisbee v. Bey_, 39 F.3d 1096, 1102 (10th Cir. 1994).   The mere allegation that plaintiff is one race while defendants are another race does not sufficiently allege the required discriminatory animus.   _Davis v. Bear_, 537 F. App'x 785, 789 (10th Cir. 2013).   "The focus of the racial animus inquiry is the government actor's 'intent, motive, or purpose.'" _Jones v. Norton_, 809 F.3d 564, 578 (10th Cir. 2015) (_quoting Pueblo Neighborhood Health Ctrs., Inc. v. Losavio_, 847 F.2d 642, 647 (10th Cir. 1988)).   "To avoid summary judgment, Plaintiffs must point to 'specific, nonconclusory evidence' that the Defendants' actions were 'improperly motivated.'" _Id._

First, contrary to the allegations in the Amended Complaint, there was no conspiracy about who to serve with the Injunction between anybody at Weber County with anybody at Ogden City. (Am. Compl. ¶¶ 167-168, Doc. No. 50 at 22-23).   Nobody at Weber County ever kept a database of gang members.   (Allred Decl. ¶ 10, Doc. No. 115 at 3; Smith Decl ¶ 7, Doc. No. 116 at 3).   The

County never determined who would be served with the Injunctions and only ever opined that certain persons should <u>not</u> be served. (Allred Decl. ¶ 12, <u>Doc. No. 115 at 4</u>; Smith Decl. ¶ 8, <u>Doc. No. 116 at 3</u>; Miles Decl. ¶¶ 4-5, <u>Doc. No. 117 at 2</u>). Nobody at the County Attorney's Office was personally involved in serving the Injunction upon anybody and no Weber County employee ever served either of the two Plaintiffs in this suit. (Allred Decl. ¶ 14, <u>Doc. No. 115 at 4</u>; Smith Decl. ¶ 14, <u>Doc. No. 116 at 4</u>; Miles Decl. ¶ 7, <u>Doc. No. 117 at 3</u>). Ogden City was ultimately responsible for determining who to serve with the Injunction. Weber County had no authority or supervision over Ogden. (Allred Decl. ¶ 20, <u>Doc. No. 115 at 5</u>). The undisputed material facts show that Weber County and Ogden City were not acting in concert regarding who to serve with the Injunction. Further, the injunction would never have applied to Plaintiffs had they not been served. This is particularly true as it relates to Plaintiffs since Weber County was not involved in serving them the Injunction upon them. Therefore, no conspiracy ever existed between these two actors, and Plaintiffs' Section 1985 conspiracy claim should be dismissed for this reason alone.

Second, even if Plaintiffs were able to show that there was some sort of conspiracy to serve them with the Injunction, they cannot show the required race-based animus. *Bisbee*, 39 F.3d at 1102. Weber County understood Ogden Trece to be a multicultural and multi-racial gang. (Weber County Defs.' Ex. 17 - Smith Depo. 129:22-130:13; Allred Depo. 54:6-21; Weber County Defs.' Ex. 18 - Miles Depo. 15:16-16:6). Race did not have anything to do with determining gang affiliation and who to serve with the Injunction. (Smith Depo. 131:18-132:2; Miles Depo. 38:3-19). Ethnicity statistics were not kept of people being served with the Injunction. (Miles Depo. 41:1-3). Furthermore, as far as Weber County was concerned nobody was targeted to be served with the Injunction based upon their race. (Miles Depo. 55:5-11). Therefore, Plaintiffs are unable

to show the Weber County was improperly motivated by a racially discriminatory animus, and the Section 1985 conspiracy claim should be dismissed for this reason as well.

**IV.     Plaintiffs' State Constitutional Claims are not cognizable**

Plaintiffs allege violations of their state constitutional rights – namely the Utah Due Process Clause and Free Expression and Assembly Clauses.  (Am. Compl. ¶¶ 171-180, Doc. No. 50 at 23-24).  These claims also must be dismissed based upon the arguments in Point I.  However, before any analysis of whether Plaintiffs are entitled to monetary damages for an alleged violation of the Utah Constitution, it must be determined whether their claims are rooted in self-executing clauses of the Utah Constitution.  Weber County concedes the both Article I, Section 1 and Article I, Section 7 of the Utah Constitution are self-executing.  However, it has not yet been determined whether Article I, Section 15 of the Utah Constitution is self-executing or not. *Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 28.

"[A] constitutional provision is self-executing if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if 'no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed.' . . . Conversely, constitutional provisions are not self-executing if they merely indicate a general principle or line of policy without supplying the means for putting them into effect." *Spackman v. Bd. of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 7 (internal citations omitted).

Article I, Section 15 of the Utah Constitution states:

"No law shall be passed to abridge or restrain the freedom of speech or of the press. In all criminal prosecutions for libel the truth may be given in evidence to the jury;

29

> and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

Only the first sentence of this clause could have any relevance to Plaintiffs' suit, and only provides a general principle that laws should not be passed that abridge or restrain the freedom of speech. It does not supply the means for putting this into effect, and therefore this clause is not self-executing, and the Court can end its inquiry as Article I, Section 15 right there.

Regardless, even if all these clauses are self-executing, Plaintiffs cannot recover monetary damages for any alleged constitutional violations because they cannot satisfy the three prong test of *Spackman v. Bd. of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, 16 P.3d 533. This test requires that (1) a plaintiff must establish that he or she suffered a flagrant violation of constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect plaintiff's rights or redress his or her injuries. Plaintiffs cannot satisfy any of these prongs and so their Utah Constitutional claims should be dismissed.

### A. There was not a flagrant violation of Plaintiffs' Utah Constitutional rights.

As to the first *Spackman* prong, Plaintiffs cannot show a 'flagrant' violation of their constitutional rights. "[A] plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights." *Spackman*, 2000 UT 87, ¶ 23. "In essence, this means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The requirement that the unconstitutional conduct be 'flagrant' ensures that a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without

rendering [him or her]self liable for a constitutional violation.'" *Id*. (*quoting Bott v. DeLand*, 922 P.2d 732, 739-40 (Utah 1996)).

There is no binding case law that suggests the act of obtaining a judicial Injunction could somehow violate the Utah Constitution or be a "flagrant" violation.  A Utah court entered the Injunction, and the Utah Supreme Court vacated the Injunction on procedural grounds rather than substantive.  There was nothing in the procedural posture of the initial injunction suit that indicated such an injunction inherently violated the Utah Constitution, even though multiple Utah courts had the opportunity to rule that way.  Further, there is no case law that suggests merely advising a different law enforcement agency with who <u>not</u> to serve with the Injunction could somehow violate the Utah Constitution either.  Additionally, Plaintiffs were both sentenced concurrently with other crimes, so it did not affect the amount of time they were incarcerated in any way.  (Doc. No. 113-3; Doc. No. 114-2).  Plaintiffs also waived their constitutional rights and any prior procedural defects when they pled to the offenses.  Utah R. Crim. P. 10(c) and 11(e)(3).

The burden rests upon Plaintiffs to show some clearly established law that the County violated.  The County is not required to try and shoot down every conceivable theory of liability against it. Weber County knows of no court decision which would show constitutional misconduct from the County's actions and for this reason, Plaintiffs did not suffer a flagrant violation of their rights.

**B.    Existing remedies adequately address Plaintiffs' alleged injuries.**

As to the second *Spackman* prong, existing remedies address their alleged injuries.  The second prong states that "a plaintiff must establish that existing remedies do not redress his or her

injuries." *Spackman*, 2000 UT 87, ¶ 24.  "This second requirement is meant to ensure that courts use their common law remedial power cautiously and in favor of existing remedies." *Id*.

There were multiple remedies available to Plaintiffs besides suing for monetary damages. They could have objected after being served with the injunction, or after their arrest.  The injunction also had an "opt out" provision, where Plaintiffs could show they were not in the gang, giving them another remedy to any alleged injury they may have suffered, and which McCubbin actually availed himself of.  (Allred Decl. ¶ 17, Doc. No. 115 at 5).  Plaintiffs also waived any prior procedural defects when they pled to the offenses.  Utah R. Crim. P. 10(c) and 11(e)(3).  For all these reasons Plaintiffs had an adequate remedy and their claims for monetary damages under the Utah Constitution should be dismissed.

Additionally, Section 1983 is an adequate remedy to address their alleged injuries. Plaintiffs have not argued any of their alleged Utah Constitutional injuries encompass more than what is protected in the Federal Constitution, and at least as far as the Utah Due Process Clause is concerned, it is "substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution." *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 37 (*quoting In re Worthen*, 926 P.2d 853, 876 (Utah 1996)).  Plaintiffs have an adequate remedy under 42 U.S.C. § 1983 since it is an existing remedy that addresses their alleged injuries. Therefore, monetary damages must not be awarded under the Utah Constitution.

When other courts have addressed this issue they have consistently declined to award damages when 42 U.S.C. § 1983 is an adequate remedy.  *See Nielson v. City of S. Salt Lake*, 2009 U.S. Dist. LEXIS 98372, 2009 WL 3562081 (D. Utah 2009); *Cavanaugh v. Woods Cross City*,

2009 U.S. Dist. LEXIS 116214, 2009 WL 4981591 (D. Utah 2009); and *Hoggan v. Wasatch County*, 2011 U.S. Dist. LEXIS 83068, 2011 WL 3240510 (D. Utah 2011).

In addition, Plaintiffs have ignored other remedies that were available to them years ago. They could have filed something and objected when they were served with the injunction, when they were arrested, when they were sentenced on the gang violation, and they could have appealed and brought a habeas corpus petition at any time. Plaintiffs cannot just sit on their rights and fail to object at the relevant times and then claim they were denied due process. "The Constitution does not protect procedures for procedures sake." *Morgan v. McCotter*, 365 F.3d 882, 889 (10th Cir. 2004) (*quoting Rector v. City & County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003)). Therefore, Plaintiffs had several alternate remedies that they could have pursued and for this reason the Utah Constitutional claims must be dismissed.

### C.    Equitable relief was an adequate remedy for Plaintiffs.

As to the third *Spackman* prong, Plaintiffs did not attempt to avail themselves of seveal available equitable remedies. The third prong states that "a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Spackman*, 2000 UT 87, ¶ 25. Timely equitable relief would have foreclosed any need for a damages remedy if they had been exercised in a timely manner.

Plaintiffs had ample opportunity to exercise equitable relief. They could have objected that they were not gang members when they were initially served with the injunction. They also could have objected again after they were arrested and charged with violating the injunction. Finally, they could have "opted out" at any time after they were served, which McCubbin even utilized to get out of the injunction. In addition, they could have filed a petition for habeas corpus or for

extraordinary relief at any time, but failed to do so.  McCubbin, again, finally exercised some of these rights and got the injunction set aside as to him.  Both Lucero and McCubbin could have taken judicial action long before to prevent the injunction from applying to them.  Their failure to do so is not Weber County's fault.  Therefore, Plaintiffs cannot satisfy the third prong of *Spackman* and their claim for damages under the Utah Constitution should be dismissed.  Plaintiffs also waived any prior procedural defects when they pled to the offenses.  Utah R. Crim. P. 10(c) and 11(e)(3).

**D.      Plaintiffs' Utah Constitutional Claims are barred by the statute of limitations**

Plaintiffs' Utah Constitutional claims are time-barred by the Governmental Immunity Act of Utah. Utah Code Ann. § 63G-7-402 mandates that all claims, including Utah Constitutional claims, against a governmental entity and its employees acting within the scope of their employment are barred unless a notice of claim is filed within one year of the events giving rise to the claim and any subsequent lawsuit must be filed within one year after the notice is deemed denied.

This is the only applicable statute of limitations for governmental entities in Utah and is intended to comprehensively govern all claims against governmental parties and their employees. *See Peak Alarm Co., Inc. v. Howe*, 297 P.3d 592 (Utah 2013). Essentially a plaintiff has one year to file a notice of claim and one year to file suit after the denial of the claim. If the claim is not denied, it is deemed denied if no reply is received within 60 days. Utah Code Ann. § 63G-7-403(1)(b). So, all suits against state governmental entities and their employees at most, must be filed within 2 years and 60 days after the events that gave rise to it.

McCubbin was served the Preliminary Injunction on November 22, 2010.  (Plaintiffs' Ex. 8).  Lucero was served the Preliminary Injunction on September 30, 2010.  (Plaintiffs' Ex. 9).  He was also served the Permanent Injunction on August 9, 2013.  (Plaintiffs' Ex. 10).  Plaintiffs filed this suit on October 16, 2015.  (Doc. No. 2).  For both Plaintiffs, they did not file this suit until the 2 years and 60 days allowed by Utah law, and therefore their Utah Constitutional claims are time barred.

## V. Plaintiffs' suit is barred by the applicable statute of limitations.

Plaintiffs' suit is grounded in 42 U.S.C. § 1983, which has no federal statute of limitations. Therefore, courts must borrow a state statute of limitations pursuant to 42 U.S.C. § 1988.  *See Mismash v. Murray City*, 730 F.2d 1366, 1367 (10th Cir. 1984).  In Utah, although Constitutional claims are governed by the Governmental Immunity Act, federal courts have decided that the Section 1983 claims should be governed by the general personal injury statute of limitations. Personal torts "are governed by the four-year statute of limitations" and § 1983 claims "are subject to the four-year limitations period . . . ." *Id*. *See also Arnold v. Duchesne Cty.*, 26 F.3d 982, 985 (10th Cir. 1994). A § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) (*quoting Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991)).

McCubbin was served the Preliminary Injunction on November 22, 2010.  (Plaintiffs' Ex. 8).  Lucero was served the Preliminary Injunction on September 30, 2010.  (Plaintiffs' Ex. 9).  He was also served the Permanent Injunction on August 9, 2013.  (Plaintiffs' Ex. 10).  Plaintiffs filed this suit on October 16, 2015.  (Doc. No. 2).

Since both Plaintiffs knew of their alleged injury as soon as they were served with the Preliminary Injunction, this is when their claim began to accrue.  Lucero's injury was not modified when he was served the Permanent Injunction and, so it should not affect when the claim began to accrue.  Using this framework McCubbin had until November 22, 2014 to file suit, and Lucero had until September 30, 2014.  Therefore, Plaintiffs' claims are time-barred and should be dismissed for this reason alone, especially as to the pre-deprivation remedy claims under procedural due process.

**WHEREFORE:**   The Court should dismiss Plaintiffs' suit against Weber County Defendants.  The Court should further schedule a hearing for this matter.

Dated this 16th day of March, 2018.

/s/ *Frank D. Mylar*

_____
Frank D. Mylar
Attorney for Weber County Defendants