John Mejia (Bar. No. 13965)
Leah Farrell (Bar. No. 13696)
ACLU of Utah Foundation, Inc.
355 N. 300 W.
Salt Lake City, UT 84013
phone: (801) 521-9862
email: aclu@acluutah.org

Randall Richards (Bar No. 4503)
Richards & Brown PC
938 University Park Blvd, Suite 140
Clearfield, UT 84105
phone: (801) 773-2080
email:Randy@richardsbrownlaw.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| LELAND KIM MCCUBBIN, JR. and DANIEL JOSEPH LUCERO,<br><br>Plaintiffs,<br><br>vs.<br><br>WEBER COUNTY, OGDEN CITY, CHRISTOPHER ALLRED, in his official capacity, and DOES 1-10<br><br>Defendants. | **Supplemental Brief re: Conspiracy in Opposition to Weber Defendants' Motion for Summary Judgment**<br><br>Consolidated Case Nos. 1:15-cv-132 & 1:15-cv-133 |

Plaintiffs in this consolidated action submit this short supplemental brief in opposition of Defendant Weber's motion for summary judgment on the specific question of Plaintiffs' Section 1985 conspiracy claim.

**RESPONSE TO OGDEN'S FACTUAL ASSERTIONS RE: CONSPIRACY**

This supplement is necessary in part because Weber made multiple unnumbered factual assertions as part of their brief to which Plaintiffs did not directly respond. Plaintiffs now number and respond to those asserted facts:

1

**Weber's Factual Assertion 1:** Weber County understood Ogden Trece to be a multicultural and multi-racial gang. (Weber County Defs.' Ex. 17 - Smith Depo. 129:22-130:13; Allred Depo. 54:6-21; Weber County Defs.' Ex. 18 - Miles Depo. 15:16-16:6). (Doc. 156 at p. 28.)

**Plaintiffs' Response:** Weber's witnesses did so testify that this was their understanding.

**Weber's Factual Assertion 2:** Race did not have anything to do with determining gang affiliation and who to serve with the Injunction. (Smith Depo. 131:18-132:2; Miles Depo. 38:3-19).

**Plaintiffs' Response:** This assertion is a legal conclusion, and Plaintiffs deny.

**Weber's Factual Assertion 3:** Ethnicity statistics were not kept of people being served with the Injunction. (Miles Depo. 41:1-3). (Doc. 156 at p. 28.)

**Plaintiffs' Response:** Plaintiffs admit that Weber made no effort to keep track of who Ogden police, and at least one Weber deputy, were serving with the Injunction. Ogden, on the other hand, kept such records that included a "Master Name Index" in which the race and ethnicity of people upon whom the Injunction was served was recorded by officers effecting the service. While Ogden also did not track the race or ethnicity of those served with the Injunction, determining those statistics is thus possible, and Plaintiffs have done so.

**Weber's Factual Assertion 4:** Furthermore, as far as Weber County was concerned nobody was targeted to be served with the Injunction based upon their race. (Miles Depo. 55:5-11). (Doc. 156 at p. 28.)

**Plaintiffs' Response**: This is a legal conclusion, and Plaintiffs deny.

## PLAITNIFFS' SUPPLEMENTAL FACTS

In their opposition to Weber's motion for summary judgment, Plaintiffs stated an additional fact and indicated that they would supplement the record to inform the Court of their analysis of certain records. Plaintiffs have completed this process, as described below.

Plaintiffs' additional fact was as follows:

> **Additional Fact [1]:** Of those served with and prosecuted for violating the Injunction, the vast majority were racial and/or ethnic minorities. This fact is reflected in the records reflecting service produced by Defendants, which include the race and ethnicity as recorded by police, and in the records reflecting criminal prosecutions located and compiled by Plaintiffs. Plaintiffs are presently working on a summary exhibits based on these documents which will summarize the percentages, but can presently represent to the Court that the representation of racial and ethnic minorities among those served and prosecuted is extremely high. Plaintiffs will file a supplement with those exhibits and a short analysis of them and other issues as soon as possible.

**Additional Fact 2:** As indicated, Plaintiffs analyzed the Ogden police records provided by the Defendants that expressly listed the race and ethnicity of every person served with the Preliminary and Permanent Injunctions. Plaintiffs also worked to locate every publicly available record from the Utah state court website reflecting a prosecution for violating the Injunction. Plaintiffs produced those records to Ogden and Weber, neither of whom described the records as incomplete or inaccurate. Plaintiffs then cross-checked the names of those prosecuted with Ogden's records listing race and ethnicity.

Based on this analysis, Plaintiffs made the following findings:

A. Of the 283 people served with the Preliminary Injunction, 214 individuals, or 76% were listed as having Hispanic ethnicity. Forty individuals, or 14% were listed as Caucasian, non-Hispanic. Five individuals, or 2% were listed as African American. Five individuals, or 2%, were listed as American Indian/Alaska Native. Nineteen individuals, or 6%, were listed as "unknown" or "other" or left blank. (See Exhibit 1, Summary Exhibit.)

B. Of the 82 people served with the Permanent Injunction, 68 individuals, or 83% were listed as having Hispanic ethnicity. Ten individuals, or 12% were listed as Caucasian,

3

non-Hispanic. Two individuals, or 3% were listed as African American. One individual, or 1% was listed as American Indian/Alaska Native. One, or 1% was listed as "unknown." (See id.)

C. Of the 96 people who Plaintiffs identified through their search of Utah state court records as being prosecuted on or more times for violating the Injunction, 73, or 76% were listed as Hispanic. Sixteen, or 17% were listed as Caucasian, non-Hispanic. Three, or 3%, were listed as African American. Two, or 2% were listed as American Indian. Two, or 2% were listed as "unknown." (See id.)

**Additional Fact 3:** According to U.S. Census records, as of April 2010, the population of Ogden was 61.9% "White alone, not Hispanic or Latino," 31.8% "Hispanic or Latino," 1.8 % "African American or Black," 1.2% "American Indian or Alaska Native," with others accounting for the rest. (https://www.census.gov/quickfacts/fact/table/ogdencityutah/PST040217#viewtop, viewed on May 7, 2018.)

## ARGUMENT

Weber correctly states that an agreement and action in concert are elements of conspiracy. Given that multiple policy-level witnesses from the Defendants have acknowledged that Ogden and Weber worked closely together on every aspect of the planning, service, and prosecution of the Injunction, Weber's argument that there was no agreement or concerted action is without merit. Most saliently, Weber worked with Ogden on training about how to serve the Injunction, worked with Ogden on determining who to serve the Injunction, and prosecuted people, including Plaintiffs, who Ogden served with the Injunction.

Likewise, Weber is correct that to prove a conspiracy, Plaintiffs need to show that ethnic and/or racial animus was behind Defendants' actions in violating Plaintiffs' rights. "Direct

4

evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980) (citation omitted). Weber offers its mere denials as evidence that there was a lack of such animus. The facts, however, support a reasonable conclusion that ethnic animus did motivate Weber and Ogden, precluding judgment in Weber's favor on that claim.

The numbers are the starting point. Weber offers a description of the Ogden Trece as "multiracial." Yet the statistics show that the overwhelming majority of individuals Defendants selected for service and prosecution with the Injunction-- between 76% and 83%-- were of Hispanic ethnicity, like the Plaintiffs. Meanwhile, Hispanics only made up about 32% of Ogden's population in 2010. Based on these facts, as well as the undisputed facts the parties have recited in their briefs, a reasonable person could conclude that Ogden and Weber knew-- at all phases of planning, serving, and prosecuting the Injunction-- that the list of purported Trece members who got served was predominantly made up of Hispanic individuals. One could further conclude that the decision to proceed to take actions that had such a negative effect felt mostly by people of Hispanic ethnicity was motivated by bias, as opposed to, for example, indifference to the unmistakably disparate impact.

These conclusions are not based on numbers alone, however. It is undisputed that neither Ogden nor Weber prohibited officers from using ethnicity in determining who to select for service with the Injunction. While Weber asks for the favorable inference that a prohibition on considering ethnicity was not needed because they assumed that only express criteria would be used, a reasonable person could also conclude that this failure was tacit approval to use ethnic bias as a factor. Further, Weber was aware of the immense subjectivity involved in applying the criteria that Ogden was using to select purported Trece members for service, and the probability

5

that animus was informing those decisions. It is undisputed that Weber and Ogden worked together in creating that list, effecting the plan of serving those people on the list, and arresting and prosecuting people for violations.

The undisputed facts, then, support a finding that racial animus played a role in Weber and Ogden's decision making process around the Injunction, and that they agreed and acted in concert to take the actions that violated Plaintiffs' rights. Accordingly, this Court should deny summary judgment in Weber's favor on Plaintiffs' conspiracy clam.

Dated May 11, 2018

SIGNED

s/ John Mejia

| | |
|---|---|
| John Mejia (Bar. No. 13965) | Randall Richards (Bar No. 4503) |
| Leah Farrell (Bar. No. 13696) | Richards & Brown PC |
| ACLU of Utah Foundation, Inc. | 938 University Park Blvd, Suite 140 |
| 355 N. 300 W. | Clearfield, UT 84105 |
| Salt Lake City, UT 84013 | phone: (801) 773-2080 |
| phone: (801) 521-9862 | email:Randy@richardsbrownlaw.com |
| email: aclu@acluutah.org | |

**CERTFICATE OF SERVICE**

I certify that I served a copy of the foregoing brief to counsel for all Defendants via the Court's CM/ECF system.

s/John Mejia

May 11, 2018