Frank D. Mylar
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
Fax:     (801) 858-0701
Mylar-Law@comcast.net

Attorney for Defendants Weber County and Christopher Allred

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| LELAND KIM McCUBBIN, JR. and DANIEL JOSEPH LUCERO,<br><br>Plaintiffs,<br><br>v.<br><br>WEBER COUNTY, OGDEN CITY, and CHRISTOPHER ALLRED, in his official capacity,<br><br>Defendants. | **WEBER COUNTY AND CHRISTOPHER ALLRED'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Case No. 1:15-cv-132-CW<br>Consolidated with Case No. 1:15-cv-133<br><br>District Judge Clark Waddoups |

Defendants, Weber County and Christopher Allred (hereinafter Weber County or County Defendants), through their attorney Frank D. Mylar, respectfully submit this Reply Memorandum in support of their motion for Summary Judgment on all claims. Defendants expressly incorporate their prior opposition memorandum to Plaintiffs' motion for partial summary judgment (Doc. No. 113), Ogden City's opposing memorandum (Doc. No. 108), and Ogden City's summary judgment motion (Doc. No. 122) into this motion as additional grounds for dismissal. This motion should be granted based upon the affidavits, depositions, exhibits, and the following arguments:

**REPLY TO UNDISPUTED MATERIAL FACTS**

Plaintiffs have not made any objections to paragraphs 1, 2, 4, 7, 8, 20, 22, 28, 31-33, 36, and 45, so these paragraphs are deemed admitted pursuant to Rule 56 and Rule 56-1 of the Rules of Practice in the United States District Court. Additionally, paragraphs 3, 5-6, 10-19, 23-44, 46-53, and 55-58, must also be deemed admitted because Plaintiffs failed to support their objection by citing to admissible evidence in the record, but instead uses a pleading format to object to these paragraphs. That leaves only paragraphs 9 and 54, where Plaintiffs cite to admissible evidence.

As to paragraph 9, they cite to Gary Worthen who kept only an unofficial handwritten list of Jail inmates that were gang members. ([Doc. No. 167 at 2-3](Doc. No. 167 at 2-3)). Worthen states in his deposition that he saw a file in the Jail when he went to prepare for his deposition, but he never actually looked in the file to see what was there. (Worthen Depo 78:23-79:8, previously filed with the Court). Gary Worthen left working in the Jail in 2013 and the handwritten list no longer exists. (Declaration of Sheriff Thompson ¶ 3 filed concurrently with this reply memorandum). The Jail does continue to document which inmates have various gang affiliations only for housing purposes for inmate safety. This information is only used for internal Jail use and includes all gangs and is not specific to Ogden Trece. (Thompson Decl. ¶ 4). There is no other "gang" list, database, or handwritten notes related to gang membership owned, possessed, or controlled by Weber County. (Thompson Decl. ¶ 5 and the Third Declaration of Christopher Allred ¶ 40, filed concurrently with this reply memorandum). More importantly, Weber County lacked knowledge of even Gary Worthen's handwritten gang list during the time of the injunction, before this lawsuit was filed

and the County never used that list for purposes of serving anyone with either the injunctive orders or for purposes of prosecuting anyone. (3rd Allred Decl. ¶ 39 and ¶¶ 41-42).

Regarding paragraph 54, Plaintiffs cite to the deposition of Brandon Miles, but those citations help further prove that Weber County was NOT involved in who was served <u>during the time of the injunction</u>. Plaintiffs confuse paragraph 54 with the time-period of when the injunction was in place as compared to what it would be like if they had some future, different injunction. Paragraphs 52, 53, and 54 all contemplate a future event if another injunction is pursued at a future date. Therefore, Plaintiffs' citation to Brandon Miles deposition is missing the point because he is talking about the old injunction back in 2010-2012. Brandon Miles states that Weber County was not involved in who was being served by Ogden City and really did not know who was served until they were referred for prosecution for having violated the injunctive orders. (Miles Depo. 67:10-16, previously filed with the Court). This statement is completely true and Weber County stands by Brandon Miles's testimony. Weber County was not involved in service at all. However, Weber's practice, or policy, if you can call it a policy, was to advise any agency that asked, that Weber County would have to prove "beyond a reasonable doubt" that the person being prosecuted was an actual gang member not just that someone thought they were a gang member or should be considered one. By these statements Weber County meant that it must convince a jury beyond a reasonable doubt that a defendant is presently an active Trece member by showing that that particular defendant is either recognized as a member of Trece by Trece or was clearly acting on behalf of Trece in violating the criminal law. (3rd Allred Decl. ¶ 43).

Finally, with respect to Plaintiffs' "Additional Fact," Plaintiffs make the unsupported claim that those who were "served with and prosecuted for violating the injunction, the vast majority

3

were racial and/or ethnic minorities," this fact does not preclude summary judgment because Plaintiffs still fail to address the issue of intent on behalf of Weber County. There is no admissible evidence to show that Weber County knew or believed that the "vast majority of those served were "racial and/or ethnic minorities."

**REPLY ARGUMENT**

Defendants fully supported their statements of material fact found in their opening motion ([Doc. No. 156](#)) and in their opposition to Plaintiffs' motion (Doc. No. 113). Arguably, not all of those facts are material to all claims, yet all of Defendants facts are supported by admissible evidence as required by the federal rules. When the defendant points out an absence of proof on an essential element of the plaintiff's case, the burden shifts to the plaintiff to submit admissible evidence that will create a question of fact. *[Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)](#). Further, the local rules require that an opposition memorandum in summary judgment must contain "a concise statement why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute that fact." [DUCivR 56-1(c)(3)](#). Plaintiffs failure to do this requires summary judgment because all of the facts are either admitted or deemed admitted because they are not controverted with admissible evidence.

On the other hand, Plaintiffs also fail to cite to any legal authority in their opposition memorandum. The Defendants and this Court can, therefore, assume that the Plaintiffs do not dispute the legal standards that apply to this case. On a few occasions, Plaintiffs incorrectly cite to this Court's Order on Defendants Motion for Judgment on the Pleadings ([Doc. No. 81](#)), and even claim it establishes "the law of the case." This is incorrect in that a motion for Judgment on the Pleadings is decided using the same standard as a motion to dismiss and every reasonable

4

inference in the Plaintiffs' complaint must be accepted as proven fact. The Court made clear it was accepting the claims in the complaint on that prior motion. On summary judgment, the parties are free to cite to depositions and affidavits and other admissible evidence. Defendants have shown by discovery and affidavits that many of the "alleged facts," that the Court had to rely upon in the prior motion, are incorrect based upon the undisputed facts taken from depositions and declarations. Therefore, this Court is not bound by "the law of the case" doctrine in deciding this motion for summary judgment.

## I.     Plaintiffs still Cannot Show Municipal Liability.

### A.     Plaintiffs Have not Shown Standing.

Plaintiffs make several broad and vague statements and cite to the court's order on motion for judgment on the pleadings in arguing in favor of standing. They further attempt to play down the fact that Weber County did not "literally hand Plaintiffs the Injunctions or specifically advise that Plaintiffs should be served and arrested." ([Doc. No. 167 at 10](Doc. No. 167 at 10)). However, these facts are crucial to standing and liability.

Weber County was not involved in who was served and who was arrested and more specifically, did not arrest or serve Plaintiffs. Further, Weber County never owned, possessed, or controlled the Ogden City gang database. Plaintiffs act as if these undisputed facts have no bearing on standing, yet they fail to cite to any authority for this proposition. Defendants freely admit that the threshold for proving standing is much easier than proving whether Defendants are liable for federal violations. However, Plaintiffs' complaint for all claims is contingent upon the fact that the terms of the injunction were made to apply to them because they were served by Ogden City.

If they had not been served, none of the terms would have applied to them and they could not have been prosecuted. This causal connection is a standing issue as well as a liability issue.

"A party has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision." *Skrzypczak v. Kauger*, 92 F.3d 1050, 1052 (10th Cir. 1996) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). The injury additionally, requires an "invasion of a legally-protected interest." *Skrzypczak*, 92 F.3d at 1053. If we assume that Plaintiffs were injured, that injury was "caused" by Ogden City who served the injunction upon them and then arrested them and prosecuted Plaintiffs for violations. Under general Fourth Amendment law, if an officer arrests a defendant without probable cause, the officer and not the prosecutor is liable for that act. In this instance, Ogden has already settled with both Plaintiffs and they have been fully compensated.

Moreover, Weber NEVER prosecuted the injunction as a stand-alone offense, but always brought additional higher charges and sought concurrent sentencing as it did for the Plaintiffs, when they were prosecuted. Therefore, Weber never caused Plaintiffs to suffer an actual injury from being prosecuted for the injunction. It is also normal that the prosecutor does not have actual or personal knowledge regarding most of the cases they prosecute because the officer or other witnesses that they call to testify possess that information. Plaintiffs act as if it is strange that the prosecutors do not know the particular facts about Plaintiffs when they were prosecuted, but this is fairly normal. Weber County had no knowledge of any claims by Plaintiffs that they were not gang members or that McCubbin was "jumped out" when they were prosecuting them. They cannot be held to possess such knowledge merely because they are prosecutors.

Plaintiffs are admittedly NOT attacking the general constitutionality of the gang injunction in their lawsuit, but how it was applied to them and how it curtailed their rights and how it led to them being prosecuted. Weber County was not involved in causing them to be served and, therefore, causing the injunction to apply to them. Weber was acting solely as attorneys in representing the state in a state law prosecution that was brought by Ogden City. This Court should not hold the attorneys responsible for acting as attorneys.

**B. Prospective Relief Claims are Moot.**

Plaintiffs claim they ask for injunctive relief "in the form of Weber no longer listing them as gang members in their files. Although Plaintiffs are not entitled to such an order regarding existing files, there is no evidence that they are so listed at this point in time. However, the mere listing of Plaintiffs as gang members is not part of the Plaintiffs' claims in the pleadings. They claim there is a "gang database" and that that database was used to identify them as Trece members and caused them to be served. Weber never possessed such a database and does not now. Mootness is really not the correct word for this situation because they never had a gang database. Even the Ogden Officers freely admitted that the gang database was owned, possessed, and kept secured by Ogden Police Department. In fact, not even all members of Ogden P.D. had access to it.

Plaintiffs again try and claim that the media quotes regarding a future injunction are set in stone and can never change and were the truth when they were placed in the newspaper. Defendants have called into questions those quotes as not completely accurate and that the media is not completely accurate in their reporting. So as to avoid any misunderstanding, Weber denies any media quote to the extent that it suggests or states that Weber County would ever implement

7

the exact same injunction. This was never intended by the Statements as seen from Chris Allred's Declarations and from his deposition statements that clarify those quotes. Weber County expressly repudiates any statement from any source that it would ever implement the same or a substantially similar gang injunction in the future. Defendants stated this in depositions and declarations, but Plaintiffs refuse to accept these statements or contradict them with admissible evidence. The Statements made by Chris Allred are more substantive then the mere "no-file letter" that has been upheld as supporting a claim of mootness in other cases. *See* [Bronson v. Swenson, 500 F.3d 1099, 1108 (10th Cir. 2007)](#) (*citing* [Mink v. Suthers, 482 F.3d 1244, 1253-55 (10th Cir. 2007)](#)).

It is undisputed that no injunction is currently in place or being enforced and that a substantially similar injunction will not be implemented in the future. Plaintiffs fail to overcome the admissible evidence on these issues. The Court must conclude that all claims for injunctive relief are moot and must be dismissed at this time.

### C. Plaintiffs must show "deliberate indifference" for County Liability.

Plaintiffs claim that they do not need to show deliberate indifference on the part of any person at the County for the Court to find liability. Plaintiffs misunderstand the Court's prior ruling on Motion for Judgment on the Pleadings again as it applies to the municipal liability claims. The Court was not forever stating that "deliberate indifference" need not be proved by Plaintiffs as part of their municipal claims.[1] Rather, based upon the pleadings, the Court ruled that Plaintiffs did not need to show deliberate indifference based upon the alleged policy that Plaintiffs alleged

---

[1] Defendants assert that it is legal error for a court to conclude that a situation could exist that would not require proof that the municipality acted with "deliberate indifference" in that all of the Supreme Court precedents over the years have stated that it is a necessary element to any Section 1983 claim against a municipality. *See* [Connick v. Thompson, 563 U.S. 51, 60-61 (2011)](#).

8

that Weber had relating to the injunction. Weber, however, through discovery and declarations, has proved that the policy and training is not as alleged in the complaint.

It is undisputed that Weber only helped conduct some joint trainings with other agencies about the gang injunction and Weber did not relate to specific cases. The legal counsel they gave was that they had to prove beyond a reasonable doubt that the person being served and/or prosecuted for an injunction violation had to be an active Trece member. Plaintiffs even provided an example where they had to prove a defendant was an active gang member. (Doc. No. 113 at 6-7). As in almost all prosecutions by a governmental entity, the prosecutors obtained factual information from the local police departments to determine if the evidence the officers presented to them was sufficient to obtain a conviction. Weber never swore out any affidavits of probable cause or arrest warrants and they never investigated whether a person was a gang member or any other aspect of the case. The injunction applied to a section of Ogden City and Ogden P.D. was the law enforcement authority over that area of the injunction and so Ogden P.D. naturally conducted the investigations, arrests, and provided witnesses to Weber as the prosecutors.

The policy or practice of Weber was also that they did not serve the injunction, did not arrest persons violating it, and never prosecuted the injunction as a stand-alone offense. They made the injunction almost irrelevant in terms of legal harm by only prosecuting violations of the injunction with higher level crimes such as felonies and by seeking concurrent rather than consecutive sentencing. They further never objected to a defendant who wanted to opt out of the gang because they wanted people to leave the gang. Plaintiffs go to great lengths to show that Weber County Jail Deputy Gary Worthen served a few people in Jail, although admittedly, he never served the Plaintiffs. However, Worthen stated he only served them as an "agency assist."

9

(Worthen Depo. 21:3-21, previously filed with the Court). This meant that he was merely assisting another agency. The agency he assisted was Ogden P.D. and he completed a form to show that the service was for Ogden P.D., not Weber.

Weber's policies and practices relating to the injunction when it was in force against the Plaintiffs can only be characterized as one of restraint and caution. They reasonably relied upon that Ogden P.D. would only be serving and arresting active gang members. Since Weber did not serve Plaintiffs they could not have violated their procedural due process rights by not giving them a pre-deprivation hearing. They did not provide any counsel into whether Plaintiffs should be served, but when they were asked about other defendants, they sometimes said there was not enough evidence that the defendant was a gang member and, therefore, should not be served or prosecuted. Weber never told Ogden that they should serve anyone. Ogden came to Weber on a few occasions and asked if there is enough evidence to go forward with either serving or prosecuting an individual. Weber's actions or counsel only served to reduce the numbers of persons served or prosecuted, but never to increase the list that Ogden P.D. used. Plaintiffs have no admissible evidence to contradict these facts.

Because Weber County submitted admissible evidence of its policy and practice as to what is alleged in the complaint, this Court now must require that Plaintiffs show deliberate indifference. They have the burden of proving deliberate indifference for the final policymaker and for an underlying constitutional violation by a Weber employee. Ogden applied its own polices to its own employees and Ogden cannot be said to have ever acted under Weber's policies.

Because Weber's policy and practice at the time of the injunction was not to act arbitrarily and capriciously with regards to who was served, who to arrest, and who to classify as a Trece

member, and for the reasons stated above, Plaintiffs must show (1) An underlying constitutional violation by a County employee, (2) a constitutionally defective policy, (3) that the final policymaker implemented the policy and acted with "deliberate indifference to the constitutionally rights of plaintiff, and (4) that the policy "directly caused" and was the "moving force" behind the underlying constitutional violation. *See generally* Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997). Plaintiffs have failed to even provide an argument against these elements of their municipal claim in their opposition memorandum. For these reasons and based upon the deemed admitted facts, the Court should grant this motion.

## II. Plaintiffs' State Constitutional Claims are not cognizable.

Again, with the State Constitutional claims, Plaintiffs rely upon the prior Order on Judgment on the Pleadings which does not apply at the summary judgment stage. Plaintiffs further misunderstand *Spackman v. Bd. of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, ¶ 7. Plaintiffs bear the burden at trial to prove the *Spackman* elements and now that Defendants have submitted admissible evidence showing that they cannot win those claims, the burden shifted to Plaintiffs to show disputed issues of fact on all of the elements of their claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Plaintiff failed to introduce any facts that would show a disputed issue of fact on all of the elements of their state claims. For this reason, summary judgment should issue on these claims.

Plaintiffs have not shown a flagrant violation of an enforceable Utah Constitutional provision. "[A] plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights." *Spackman*, 2000 UT 87, ¶ 23. "In essence, this means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have

known.'" *Id.* (*quoting* *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The requirement that the unconstitutional conduct be 'flagrant' ensures that a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation.'" *Id.* (*quoting* *Bott v. DeLand*, 922 P.2d 732, 739-40 (Utah 1996)).

There is no case law on point that is precedent in Utah that would show that the actions of Weber could be considered a "flagrant violation" of the Utah Constitution. Plaintiffs do not even address whether all of their state constitutional claims are self-executing, so Weber should win these unopposed claims. Plaintiffs further claim it is Weber's burden to prove the *Spackman* elements. This is incorrect per *Spackman*. Plaintiffs bear this burden but have failed to satisfy it. *Spackman v. Bd. of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, 16 P.3d 533. For this reason alone, all Utah Constitutional claims must be dismissed with prejudice. In addition, according to *Peak Alarm Co., Inc. v. Howe*, 2013 UT 8, 297 P.3d 592 (Utah 2013), Plaintiffs failed to timely file their state Constitutional claim within one year of when the cause of action arose and for this reason all state claims are time barred.

**WHEREFORE:** The Court should dismiss Plaintiffs' suit against Weber County Defendants. The Court should further schedule a hearing for this matter.

Dated this 11th day of May, 2018.

/s/ *Frank D. Mylar*

---

Frank D. Mylar
Attorney for Weber County Defendants