IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LELAND KIM McCUBBIN, JR. and DANIEL JOSEPH LUCERO,<br><br>         Plaintiffs,<br><br>v.<br><br>WEBER COUNTY, OGDEN CITY, and CHRISTOPHER ALLRED, in his official capacity,<br><br>         Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY JUDGE<br><br><br>Case No. 1:15-CV-132 CW-CMR<br><br>District Judge Ted Stewart |

This matter is before the Court on a Motion to Disqualify Judge filed by Defendants Weber County and Christopher Allred (collectively, "Defendants"). This Motion has been referred to the undersigned by Chief Judge Robert J. Shelby. For the reasons discussed below, the Court will deny Defendants' Motion.

I.  BACKGROUND

Plaintiffs brought this civil rights suit after having been subjected to a gang injunction. Among other things, Plaintiff requested declaratory judgment that any attempt to serve them with an identical injunction would violate their civil rights. Plaintiffs also requested removal from the gang database allegedly maintained by Weber County and Ogden City.

In response, Defendants moved for summary judgment. Relevant here, Defendants argued that Plaintiffs' claims for prospective relief were moot because: (1) Weber County does not possess a gang database; and (2) Weber County would not seek an identical injunction.

1

Support for these arguments came from the Declarations of current Weber County Attorney Christopher Allred and former Weber County Attorney Dee Smith. Both Mr. Allred and Mr. Smith stated: "Weber County has never kept a database or any sort of list of Ogden Trece gang members nor has Weber County ever had the ability to put a person on the Ogden Trece Database or remove a person from the list."[1] In his Second Declaration, Mr. Allred stated that Weber County would not seek a gang injunction order that is exactly like the previous injunction.[2] While Weber County continued to contemplate a potential future injunction, "no definite plans, actions, or steps have been taken toward actually filing and obtaining an injunctive order of any kind against any gang."[3] Finally, in his Third Declaration, Mr. Allred stated that, to his knowledge, there was not an "official or unofficial list, database, or handwritten notes related to gang membership that Weber County owns, possesses, or controls."[4] Additionally, Mr. Allred stated that "[n]obody at the Weber County Attorney's Office ever used any gang information, from a database or otherwise, that was owned or controlled by Weber County, *for any purpose*, including in deciding who to serve with the Injunction."[5]

In a Memorandum Decision and Order dated September 27, 2019 ("Memorandum Decision and Order"), Judge Waddoups rejected Defendants' mootness arguments. With respect to the existence of a gang database, Judge Waddoups found, based on the testimony of a Weber

---

[1] Docket No. 115 ¶ 10; Docket No. 116 ¶ 7.
[2] Docket No. 157 ¶ 27.
[3] *Id.* ¶ 29.
[4] Docket No. 178 ¶ 40.
[5] *Id.* ¶ 41 (emphasis added).

2

county jail investigator who testified that he started gang files, that there was a dispute of fact as to whether Weber County possesses files regarding gang membership.[6]

Judge Waddoups then went further, stating that there were additional reasons to deny Defendants' motion on this issue. Specifically, Judge Waddoups stated that he had "reason to question Mr. Allred's representations" concerning the existence of a gang database.[7] These questions arose from two sources. The first was an evidentiary hearing Judge Waddoups conducted in an unrelated criminal case. There, a Weber County corrections officer testified that he "worked on establishing the gang unit inside of the jail where we would document all of the gang members inside the jail and create a -- basically a hierarchy of the different gangs."[8]

After hearing this testimony, Judge Waddoups "performed a search on Google, using the search term 'weber county jail gang unit.' The first result from that search yielded a webpage maintained by Weber County Sheriff's Office titled 'Jail investigations.'"[9] That webpage stated, in pertinent part, that jail investigators "use jail intelligence information to document inmates as gang members."[10] That information is then provided to various state and federal agencies, including the Weber County Attorney's Office, and has been useful to agencies investigating and prosecuting criminal activity committed by gang members.[11]

This information made it hard for Judge Waddoups "to understand how Mr. Allred could have submitted a declaration in 2018, under penalty of perjury, representing to this court that

---

[6] Docket No. 199, at 18–19.

[7] *Id.* at 20.

[8] Docket No. 208 Ex. 3, at 12.

[9] Docket No. 199, at 22.

[10] *Id.*; *see also* Docket No. 208 Ex. 4.

[11] Docket No. 199, at 22; *see also* Docket No. 208 Ex. 4.

3

'there is not any official or unofficial list, database, or handwritten notes related to gang membership that Weber County owns, possesses, or controls.'"[12] Judge Waddoups also stated that this evidence "appears to contradict Chris Allred's representation that '[n]obody at the Weber County Attorney's Office ever used any gang information from a database or otherwise, that was owned or controlled by Weber County, for any purpose . . . .'"[13]

Judge Waddoups pointed to the same evidence in rejecting Defendants' arguments related to voluntary cessation. In doing so, Judge Waddoups sought to distinguish this case from *Brown v. Buhman*.[14] In *Brown*, the Tenth Circuit found that an action was moot where a county prosecutor declared under penalty of perjury that the plaintiffs would not be prosecuted for bigamy.[15] With no credible threat of prosecution, the plaintiffs' claims were moot. The court stated that it had "no basis to question [the prosecutor's] bona fides" and, in order to find that the voluntary cessation was a sham, "we would have to conclude the highest-ranking law enforcement official in Utah County had engaged in deliberate misrepresentation to the court."[16] The court stated there "was no basis for this conclusion. Close scrutiny of the relevant facts does not suggest [the prosecutor] is attempting to deceive the court."[17]

In contrast, Judge Waddoups stated:

> But unlike the County Attorney in *Brown*, this court has a reason to question Chris Allred's bona fides. As discussed at length above, Chris Allred submitted multiple declarations under penalty of perjury representing that Weber County

---

[12] *Id.* at 23 (quoting Docket No. 178 ¶ 40).

[13] *Id.* (quoting Docket No. 178 ¶ 41).

[14] 822 F.3d 1151 (10th Cir. 2016).

[15] *Id.* at 1170.

[16] *Id.* at 1170, 1171.

[17] *Id.* at 1170.

never possessed any gang database/list. And, as discussed at length above, the court has serious reason to question that representation. "Close scrutiny of the relevant facts" may suggest that Chris Allred "is attempting to deceive the court." At this time, the court has reason to question Chris Allred's credibility. The court cannot, at this time, take Mr. Allred at his word that he will not seek a substantially similar injunction. Nor can the court, at this time, accept Mr. Allred's representation that he would not serve the plaintiffs in this case with a future injunction. At this time, the court cannot conclude that Weber County has met its heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur.[18]

Judge Waddoups went on to provide Defendants an opportunity to respond to his concerns and offered to hold an evidentiary hearing on the issue of mootness. At that hearing, Mr. Allred would be provided an opportunity to "explain the apparent contradiction between his sworn representations" and the evidence discussed above.[19]

Defendants filed the instant Motion on October 23, 2019. Defendants complaints can be summarized as follows:

> In this case, the Judge heard a witness testify on some background facts that gave the appearance that the Judge became prejudiced or biased against Defendant Weber County Attorney Chris Allred and former Weber County Attorney Dee Smith. He then took that information to perform his own "Google" research, undirected by the parties. The parties never had an opportunity to refute or respond to the information gained by the Judge. The Judge then concluded that it appeared that Chris Allred and Dee Smith submitted false declarations and denied two or more claims on summary judgment because Chris Allred's "bona fides" are now questioned by the court. However, the only reason his "bona fides" were question was because of the testimony of just one witness at a criminal motion to suppress hearing. A reasonable person could assume that Judge Waddoups has a biased view of whether Defendants will submit false testimony.[20]

---

[18] Docket No. 199, at 29 (quoting *Brown*, 822 F.3d at 1170).

[19] *Id.*

[20] Docket No. 203, at 8.

5

## II. DISCUSSION

Defendants argue that Judge Waddoups should be disqualified because of the appearance of prejudice or bias against Defendants. Defendants bring their Motion pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455(a).

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith

Under 28 U.S.C. § 144, an affidavit of bias and prejudice must be timely, sufficient, made by a party, and accompanied by a certificate of good faith of counsel.[21] Because of the possibility of abuse, strict compliance with the procedural requirements is required.[22]

Defendants have failed to strictly comply with the requirements of § 144. Specifically, Defendants' Motion and affidavits were not accompanied by a certificate of counsel. Defendants argue that the Court should construe the "Introduction" section to its Motion as a certificate of counsel. However, strict compliance with the procedural requirements of the statute is required. The Introduction to the Motion is not sufficient to be considered a certificate of counsel.

---

[21] *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987).

[22] *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988); *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993).

Defendants also argue that the Declaration of Christopher Allred satisfies the requirements of the statute. Defendants point out that Mr. Allred is an attorney and his Declaration states that the Motion is brought in good faith. However, Mr. Allred is not "counsel of record," as required by the statute. Therefore, his Declaration does not satisfy the requirements of the statute.

Defendants further argue that any failure was subsequently cured when counsel filed a Certificate of Counsel on November 6, 2019.[23] However, this was done only after Plaintiffs pointed out that Defendants had failed to comply with the requirements of § 144. Moreover, the statute requires the affidavit be *accompanied* by the certificate of counsel. Defendants' late filing did not accompany the affidavit and the timing of it makes the Motion untimely under § 144. These procedural defects defeat Defendants' Motion under this provision. Therefore, the Court will limit its discussion to § 455(a).

Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "A judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality."[24] However, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."[25]

---

[23] Docket No. 209.

[24] *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000).

[25] *Hinman*, 831 F.2d at 939.

7

Plaintiffs argue that Defendants' Motion is untimely. "A motion to recuse under section 455(a) must be timely filed."[26] While there is no precise moment when a motion must be filed, Tenth Circuit precedent "requires a party to act promptly once it knows of the facts on which it relies in its motion."[27] "A promptly filed motion conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process."[28]

The Court need not decide whether Defendants' Motion is timely under § 455 because it fails on the merits. Defendants' Motion is largely based on conclusions reached by Judge Waddoups' in his Memorandum Decision and Order. The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[29] "Unfavorable judicial rulings do not in themselves call into question the impartiality of a judge."[30] Such rulings can "only in the rarest circumstances evidence the degree of favoritism or antagonism required."[31]

Judge Waddoups' rulings do not evidence the degree of favoritism or antagonism required for recusal. Instead, Defendants largely take issue with the correctness of these rulings, including whether Judge Waddoups should have taken judicial notice of the evidence that

---

[26] *Wilmer v. Univ. of Kan.*, 848 F.2d 1023, 1028 (10th Cir. 1988).

[27] *Pearson*, 203 F.3d at 1276.

[28] *Id.*

[29] *Liteky v. United States*, 510 U.S. 540, 555 (1994).

[30] *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006).

[31] *Liteky*, 510 U.S. at 555.

provided the basis for his conclusions.  However, the proper vehicle to address erroneous rulings is appeal, not recusal.[32]

Defendants also argue that Judge Waddoups' statements demonstrate that he has formed an opinion that Mr. Allred and Mr. Smith have been untruthful.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[33]

"[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient.[34]  "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."[35]

Having carefully reviewed the Memorandum Decision and Order, the Court cannot conclude that Judge Waddoups' comments "display a deep-seated antagonism that would make fair judgment impossible."[36]  The context in which these statements were made is important. Judge Waddoups was ruling on a motion for summary judgment filed by Defendants.  In doing so, he was required to construe all facts and reasonable inferences in the light most favorable to

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 555–56.

[35] *Id.* at 556.

[36] *Pearson*, 203 F.3d at 1277.

9

Plaintiffs as the nonmoving party.[37] In reaching the conclusions he did, Judge Waddoups was doing what judges do every day. Moreover, many of the alleged offending statements were made in an effort to distinguish the facts of this case from those in *Brown*.

Defendants also overstate their case. They argue that Judge Waddoups: "assumed that the current and former Weber County Attorneys were lying under oath and adopted that belief in his memorandum decision,"[38] "is seemingly trying to embarrass or defame these County Attorneys,"[39] "assumes in his decision that they have submitted false affidavits and that their word cannot be trusted,"[40] is "convinced that Allred and Smith have lied in their declarations,"[41] and "has established that he believes he cannot trust the word of two material witnesses in Defendants' case."[42]

Defendants hyperbolic statements are not a fair or accurate reflection of Judge Waddoups' decision. Judge Waddoups made no finding that Mr. Allred or Mr. Smith lied or that they cannot be trusted. Instead, he pointed out evidence that he believed contradicted statements they had made, thereby creating a dispute of fact precluding summary judgment. This is unremarkable. Judge Waddoups then provided Defendants the opportunity to respond to his concerns by holding an evidentiary hearing on mootness. Had Judge Waddoups truly determined

---

[37] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[38] Docket No. 203, at 2.

[39] *Id.* at 4.

[40] *Id.*

[41] *Id.* at 5.

[42] *Id.*

10

that Mr. Allred and Mr. Smith could not be trusted, it seems unlikely that he would provide them this opportunity.

To be sure, the accusation that anyone may have submitted false testimony to the Court is a serious one. However, Defendants have failed to demonstrate that a reasonable person, knowing all the relevant facts, would harbor doubts about Judge Waddoups' impartiality. Rather, Judge Waddoups' actions reflect a desire to maintain the integrity of this proceeding. To the extent Defendants believe that Judge Waddoups' decision was incorrect, there are other avenues available to them.

Defendants make two other arguments, neither of which justifies disqualification. Defendants point out that Plaintiffs' counsel was once a law clerk for Judge Waddoups. However, they do not suggest that this prior relationship has in any way affected these proceedings. Next, Defendants make the spurious accusation that "there is a reasonable likelihood that it could be perceived that the Judge was trying to defame the elected Weber County Attorney, knowing that his words would be published in the media."[43] Defendants offer nothing to support this claim. "A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation."[44]

### III. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Disqualify Judge (Docket No. 203) is DENIED.

---

[43] Docket No. 203, at 6.

[44] *Hinman*, 831 F.2d at 939.

DATED this 7th day of January, 2020.

BY THE COURT:

Ted Stewart
United States District Judge